**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

MAR 1 4 2013

IES W. McCORMACK, CLERK

_____
DEP CLERK

**WILLIAM MASTERSON**                                        **PLAINTIFF**

**VS.**                          NO. 3:13 cv 79 BRW

**STARR INDEMNITY & LIABILITY COMPANY**                      **DEFENDANT**

<u>**NOTICE OF REMOVAL**</u>

Defendant Starr Indemnity & Liability Company ("Starr"), by and through its undersigned counsel, and pursuant to 28 U.S.C. 1332, 1441, and 1446, hereby gives notice of the removal of this action to the United States District Court, Eastern District of Arkansas, Jonesboro Division. As grounds for this removal, Starr provides as follows:

### I. PROCEDURAL BACKGROUND

1.      On or about February 8, 2013, Plaintiff William Masterson ("Plaintiff") filed an action in the state court, which is captioned *William Masterson v. Starr Indemnity & Liability Company*, the Circuit Court for the Chickasawba District, Mississippi County, Arkansas, General Civil Division, Case No. CV 2013-25(JF) (the "State Court Action").

2.      A Letter, Summons, Complaint with Exhibits, Interrogatories and Requests for Production of Documents and Things, and Requests for Admission were served upon Starr on February 15, 2013.

3.      In the State Court Action, Plaintiff alleges the following claims against Defendant: Declaratory Judgment, Claim for Damages and Attorney Fees, and Bad Faith.

This case assigned to District Judge Wilson
and to Magistrate Judge Kearney

## II. JURISDICTIONAL REQUIREMENTS

4.      The State Court Action is a civil action over which this Court has original jurisdiction pursuant to 28 U.S.C. 1332.  The amount in controversy exceeds $75,000 and there is complete diversity of citizenship between Plaintiff and Starr.

5.      Upon information and belief, Plaintiff is domiciled in Blytheville, Arkansas and is a citizen of the State of Arkansas.  In his Complaint, Plaintiffs states, "Plaintiff is now and was at all times pertinent to this action a resident of the Chickasawba District of Mississippi County, Arkansas."  Complaint ¶ 1.

6.      Starr is an insurance company incorporated in Texas with a principal place of business in New York, New York.  Starr is a citizen of the states of Texas and New York pursuant to 28 U.S.C. 1332(c)(1).  Starr is the only defendant in this action.

7.      It is clear that the amount in controversy exceeds the requisite $75,000.  The Complaint, attached within all the pleadings from the State Court Action as **Exhibit A**, provides, in pertinent part, as follows:

- "Plaintiff is entitled to recover damages in the amount of $306,920.75 less the deductible of $2,500, the co-insurance limit of $5,000, and a deduction of $150 in co-pays for a total of $7,650.00 in deductions from the $306,920.75, leaving a balance due from the Defendant of $299,270.75."  Complaint ¶ 26.

- "...Plaintiff prays that he be granted the following relief:  (a) declaratory judgment... along with a statutory attorney fee... compensatory damages... in the amount of $299,270.75 with interest at the maximum rate permitted by law along with a twelve percent (12%) statutory penalty and attorneys fees... compensatory and punitive damages

for bad faith in amounts *in excess of that required federal court jurisdiction in diversity of citizenship cases…*"

8.      Given the scope of the claimed damages in the Complaint filed by Plaintiff, there is no doubt that the amount in controversy is in excess of $75,000.

9.      Venue is proper in the United States District Court, Eastern District of Arkansas because this District embraces the location where the State Court Action is pending.  28 U.S.C. 1446(c).

10.     Accordingly, this Court has original jurisdiction over this action pursuant to 28 U.S.C. 1332.  The parties are completely diverse, the amount in controversy exceeds $75,000, and venue is proper in this Court.

### III. COMPLIANCE WITH RULES

11.     Starr is filing this Notice of Removal within thirty (30) days after its receipt, through service or otherwise, of a copy of the initial pleading from which it may be ascertained that this action is removable.  28 U.S.C. 1446(b).  Starr was served on February 15, 2013, with a Complaint in the State Court Action.

12.     Starr will file a Notice of Filing of Notice of Removal in the pending State Court Action, which will also be served on Plaintiff and all other parties.

13.     Starr is filing concurrently with this Notice of Removal, a true and correct copy of all pleadings filed in the State Court Action, attached as **Exhibit A**.

### IV. ADOPTION AND RESERVATION OF DEFENSES

14.     Starr specifically reserves its rights to file a motion to dismiss, and/or assert any and all defenses and affirmative matters in this case, including, but not limited to, any defenses

available under Rule 12(b) of the Federal Rules of Civil Procedure.  Nothing in this Notice of

Removal is intended as a waiver or relinquishment of such rights.

### V.  CONCLUSION

WHEREFORE, Defendant Starr respectfully requests that the pending State Court Action

now be removed to this Court and that all further proceedings be had in this Court.

Respectfully submitted,

FRIDAY, ELDREDGE & CLARK, LLP
400 West Capitol Avenue, Suite 2000
Little Rock, AR  72201-3522
Telephone:   501-370-1564
Facsimile:   501-244-5380
Email:       wilson@fridayfirm.com

Attorneys for Defendant

By:_____
DAVID D. WILSON, #90112


### CERTIFICATE OF SERVICE

I, David D. Wilson, certify that a copy of the foregoing pleading has been mailed, postage prepaid, to:

Robert L. Coleman, Esq.
Reid, Burge, Prevallet & Coleman
417 North Broadway Street
P.O. Box 107
Blytheville, AR  72316-0107

on this __14__ day of March, 2013.

_____
DAVID D. WILSON

# EXHIBIT A

RLC/lw
5539

**FILED**

**IN THE CIRCUIT COURT FOR THE CHICKASAWBA DISTRICT**
**MISSISSIPPI COUNTY, ARKANSAS**
**GENERAL CIVIL DIVISION**

FEB - 8 2013
10:45 Am
DONNA HART
CLERK

WILLIAM MASTERSON                                                           PLAINTIFF

VS.                          NO. CV 2013 -25 (JF)

STARR INDEMNITY & LIABILITY COMPANY                                      DEFENDANT

**COMPLAINT**

Comes now the Plaintiff, William Masterson, by and through his attorneys, Reid, Burge,

Prevallet & Coleman, and for his Complaint against the Defendant, Starr Indemnity & Liability

Company ("Starr"), states:

1.       This Court has jurisdiction over the parties and subject matter in this case and venue

is proper in this Court because Plaintiff is now and was at all times pertinent to this action a resident

of the Chickasawba District of Mississippi County, Arkansas.

2.       At all times pertinent to this action the Defendant, Starr Indemnity & Liability

Company, was and is an insurance company authorized to do business within the State of Arkansas.

Starr Indemnity & Liability Company ("Starr") issued the policy which is the subject matter of this

action.

3.       On January 17, 2012, the Plaintiff, William Masterson and his wife, Tracy Duncan,

filled out an online application over the internet for health insurance underwritten by Starr Indemnity

& Liability Company of Dallas, Texas.  A copy of that online application dated January 17, 2012,

is attached to this Complaint as **Exhibit "1"**.

4.       At the time the application **(Exhibit "1")** was completed, all statements set forth in

the application for insurance were true and correct to the best of the knowledge, information, and

belief of the Plaintiff, and his wife, Tracy Duncan.

5.      Thereafter, the Defendant issued a document entitled Certificate Schedule naming the certificate holder as Tracy Duncan with a Certificate Number of STT7985900 and showing an effective date of January 26, 2012, and an expiration date of January 25, 2013.  A copy of that Certificate Schedule is attached to this Complaint as **Exhibit "2"**.

6.      Although William Masterson is not specifically named as a "certificate holder" or "policy holder" under the Certificate Schedule referred to above, the documents provided by the Defendant on its website through the internet show that William Masterson is, in fact, a covered insured person under the subject policy.

7.      In this regard, the documents downloaded from the internet with regard to the subject policy include a "Thank You" letter with an insurance card listing William Masterson as an insured under Certificate/Policy #: STT7985901 with an effective date of 01/26/2012.  A copy of that letter is attached hereto as **Exhibit "3"**.

8.      William Masterson was also provided through a download from the website on the internet a twenty-seven (27) page document entitled Short Term Medical Insurance Policy, which is attached to the this Complaint as **Exhibit "4"** and a four (4) page document entitled "Outline of Coverage," which is attached as **Exhibit "5."**

9.      During the policy period, William Masterson was diagnosed with throat cancer which has required William Masterson to undergo extensive medical treatment causing William Masterson to incur significant medical expenses in connection with that treatment.

10.      Plaintiff, William Masterson,  has done everything required of him under the policy in the submission of medical expense claims for payment, but the Defendant has failed and refused to make any payments toward Plaintiff's medical expenses.

11.      Plaintiff, William Masterson, has  received explanation of benefit forms (EOBs) up

through the date of the filing of this Complaint showing total medical expenses in connection with

his treatment for throat cancer totaling $306,920.75. Copies of those EOBs are not being attached

to this Complaint because those documents are voluminous and the Defendant either has copies of

those EOB forms in its possession or has access to those forms.

12.     Plaintiff, William Masterson, has complied with all requests made by the Defendant

and its claims administrator, Coordinated Benefit Plans, LLC, with regard to the handling of his

claims for health insurance benefits, but, to the knowledge of Plaintiff, no claims have been paid for

any medical treatment provided to William Masterson during the policy period in connection with

his treatment for cancer.

13.     Plaintiff recently received a letter dated January 4, 2013, on the letterhead of Co-

ordinated Benefit Plans, LLC. which reads as follows:

> *Dear Tracy & William:*
>
> *Co-ordinated Benefit Plans, LLC is the claims administrator on behalf of the carrier, Starr Indemnity & Liability Company. We recently received notification of treatment at Dr. Landry on February 8, 2011 & March 23, 2011. As the claim administrator, we have reviewed the information received during the investigation of the claims in conjunction with the information submitted on the enrollment application in an effort to determine the eligibility for coverage under the plan.*
>
> *On the enrollment application received, the answers to medical history questions one thru seven indicated none of the mentioned conditions currently existed or were previously treated during the specified time period. Medical information received by our office indicates that question five was answered erroneously. Regrettably, we must inform you that based upon this information the carrier has elected to rescind the policy issued and any premiums paid will be refunded minus any claim payments issued.*
>
> *We apologize for any inconvenience this may have caused you.*

A copy of the actual letter quoted above is attached to this Complaint as **Exhibit "6"**.

14.     As noted above, a copy of the online application submitted to Defendant on January

17, 2012, is attached as **Exhibit "1"**.  Question number 5 from that application, which is referred to in the second full paragraph of the January 4, 2013 letter from Co-ordinated Benefit Plans, LLC, reads as follows:

> **5.**     *Within the past 5 years, have you or any person to be insured been aware of, diagnosed, treated by a member of the medical profession, or taken medication for cancer or a tumor, stroke, heart disease including heart attack, had heart surgery, COPD (Chronic Obstructive Pulmonary Disease) or emphysema, kidney disorder or disease, liver disorder or disease, neurological disorder, <u>degenerative disc disease or herniation/bulge</u>, rheumatoid arthritis, degenerative joint disease of the knee or hip, diabetes, alcohol abuse or chemical dependency, or does anyone listed on the application currently weigh over 250 pounds (women) over 300 pounds (men)?*

> **[Underlining added.]**

15.     Plaintiff states that the "Dr. Landry" referred to in the material quoted above from the January 4, 2013, letter from Co-ordinated Benefit Plans, LLC. is an orthopedic surgeon in Kennett, Missouri from whom William Masterson sought treatment in 2011 for a back injury sustained at work.

16.     Plaintiff states that, although he was aware at the time the application for insurance was submitted on January 17, 2012, that William Masterson had been treated in the past for a back injury he sustained at work, neither William Masterson nor Tracy Duncan were ever told by any physician and have not seen any medical records indicating that William Masterson or Tracy Duncan have ever been diagnosed, treated by a member of the medical profession, or taken medication for any of the conditions referenced in Paragraph Number 5 including, but not limited to, "degenerative disc disease or herniation/bulge".

17.     Plaintiff denies the assertion set forth in the letter dated January 4, 2013, from the Defendant's claim administrator, Co-ordinated Benefit Plans, LLC, **"that question 5 was answered**

**erroneously."** However, even if we were to pretend that question 5 had been answered erroneously; as claimed,  there is still no factual or legal basis for the Defendant to deny coverage for the treatment William Masterson received for his unrelated throat cancer condition because there is no causal relationship between the back injury condition for which he obtained treatment by Dr. Landry and the throat cancer, which was diagnosed after the Starr Policy was issued.

18.     At the time the subject policy was issued, Arkansas Code Annotated § 23-79-107 provided as follows:

> **(a) A statement in an application or in negotiations for a life or accident and health insurance policy or annuity contract by or in behalf of the insured or annuitant are representations and not warranties.   Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless:**
>
> > **(1) Fraudulent; or**
> > **(2) Material either to the acceptance of the risk or to the hazard assumed by the insurer.**
>
> **(b) In any action to rescind any policy or contract or to recover thereon, if any misrepresentation with respect to a medical impairment is proved by the insurer and the insured or any other person having or claiming a right under the contract shall prevent full disclosure and proof of the nature of the medical impairment, then the misrepresentation shall be presumed to have been material.**
>
> **(c) In any action to rescind any policy or contract or to recover thereon, a misrepresentation is material if there is a causal relationship between the misrepresentation and the hazard resulting in a loss under the policy or contract.**

A copy of that Code Section is attached to this Complaint as **Exhibit "7"**.

19.     As set forth above, Arkansas Code Annotated § 23-79-107 prohibits an insurance company from denying recovery under a health insurance policy for any statement made in an application or in negotiations for a health insurance policy unless there is a causal relationship between the alleged misrepresentation and the hazard resulting in a loss under the policy or contract.

20.   There is no causal relationship between the back injury condition for which William Masterson was treated by Dr. Landry in 2011, and the throat cancer diagnosed in 2012, for which he made claim under the policy issued by Starr.

21.   Accordingly, the Defendant's purported rescission of the policy and denial of the claims submitted for William Masterson's cancer treatment is unlawful.

## COUNT I- DECLARATORY JUDGMENT

22.   Plaintiff restates and incorporates by reference each and every statement set forth above in this Complaint as though repeated word-for-word herein.

23.   Plaintiff states that this Court should enter a declaratory judgment pursuant to Arkansas Code Annotated §§ 16-111-101 through16-111-111 and Rule 57 of the Arkansas Rules of Civil Procedure.  The declaratory judgment of this Court should declare that the Defendant's purported rescission of the subject policy and denial of Plaintiff's claims arising out of his unrelated throat cancer condition were unlawful; that the purported rescission is void; that the policy must be reinstated; and, that the Defendant is obligated to make payment of claims arising out of the treatment for William Masterson's throat cancer under the terms and provisions of the subject policy.

24.   Plaintiff further states that this Court should order the Defendant to pay Plaintiff, William Masterson, his reasonable attorney's fees pursuant to Arkansas Code Annotated § 23-79-209.

## COUNT II - CLAIM FOR DAMAGES AND ATTORNEY FEES

25.   Plaintiff restates and incorporates by reference herein all statements set forth above in this Complaint as though repeated word-for-word herein.

26.   The Plaintiff states that the actions of the Defendant in denying his claim and purporting to rescind the subject policy constitute a breach of contract for which Plaintiff is entitled

to recover damages in the amount of $306,920.75 less the deductible of $2,500.00, the co-insurance limit of $5,000.00, and a deduction of $150.00 in co-pays for a total of $7,650.00 in deductions from the $306,920.75, leaving a balance due from the Defendant of $299,270.75.

27.   Plaintiff, William Masterson, further states that this Court should assess a twelve percent (12%) penalty upon the total amount of the loss, together with reasonable attorney fees for the prosecution and collection of the loss pursuant to Arkansas Code Annotated § 23-79-208.

## COUNT III - BAD FAITH

28.   Plaintiff restates and incorporates by reference each and every statement set forth above in his Complaint and incorporates those statements within this count of the Complaint as though repeated word-for-word herein.

29.   Plaintiff further states that the unlawful actions of the Defendant in denying his claim for cancer treatment and attempting to rescind the subject policy constitute bad faith inasmuch as the Defendant knew or should have known at the time it issued the policy that the law of Arkansas, as set forth at Arkansas Code Annotated § 23-79-207, prohibits a health insurance company from denying a claim or seeking rescission of a health insurance policy unless there is a causal relationship between the matter allegedly misrepresented and the hazard resulting in the loss under the policy or contract.

30.   Further, the Defendant's actions in stalling and delaying the payment of the claim for months before finally denying the claim constitutes additional affirmative, dishonest, and oppressive conduct which constitutes further evidence that the Defendant acted in bad faith.

31.   As a proximate result of the Defendant's bad faith denial of his claim and its bad faith attempt to rescind the subject policy, Plaintiff has sustained damages and should be awarded an amount a jury finds to be fair and just for mental anguish, pain, and suffering and damage to his

credit rating by reason of the Defendant's tactics in stalling and delaying payment of the claim.

32.     In addition to compensatory damages for any actual loss Plaintiff may have sustained as a result of the Defendant's bad faith, he asks for punitive damages from the Defendant in the amount a jury determines to be fair and reasonable to punish the Defendant and to deter the Defendant and others from similar conduct inasmuch as the Defendant knew or aught to have known in light of the surrounding circumstances that the Defendant's conduct would naturally and probably result in injury and damage to the Plaintiff, and, that the Defendant continue such conduct either with malice or in reckless disregard of the consequences, from which malice may be inferred.

## DEMAND FOR JURY TRIAL

33.     Plaintiff respectfully demand trial by jury in this case.

34.     Plaintiff requests that he be granted leave to file amended and supplemental pleadings herein after further investigation and discovery.

WHEREFORE, Plaintiff prays that he be granted the following relief: (a) declaratory judgment as requested above in Count I along with a statutory attorney fee pursuant to Arkansas Code Annotated § 23-79-209; (b) that he be awarded compensatory damages under Count II in the amount of $299,270.75 with interest at the maximum rate permitted by law along with a twelve percent (12%) statutory penalty and attorneys fees pursuant to Arkansas Code Annotated § 23-79-208; ( c) that he be granted compensatory and punitive damages for bad faith in amounts in excess of that required federal court jurisdiction in diversity of citizenship cases as requested in Count III of the Complaint; (d) that the request for trial by jury be granted; (e) that he be awarded interest at the maximum rate permitted by law; (f) that the Defendant bear the costs of this action; (g) and, that he be granted all other proper relief.

**REID, BURGE, PREVALLET & COLEMAN**
417 N. Broadway, P.O. Box 107
Blytheville, Arkansas 72316-0107
Telephone:    (870) 763-4586
Fax:          (870) 763-4642
E-mail:       rbpc@sbcglobal.net

BY: _____

ROBERT L. COLEMAN & DONALD E. PREVALLET
ATTORNEYS FOR PLAINTIFF

**Health Insurance Innovations**

(Arkansas & Montana)

## MED PLUS STM
## SHORT TERM MEDICAL INSURANCE APPLICATION
Underwritten by: Starr Indemnity & Liability Company, Dallas, Texas

# FILED

FEB - 8 2013
10:45ʌm
DONNA HART
CLERK

Applicant: Name Tracy Duncan _____ Date of Birth 08-18-1965 Age 46 Sex F Ht. 5' 7" Wt. 175 lb

Occupation podiatrist _____ Telephone (870) 763-2326 _____

Street Address 116 Chesterfield Street    City Blytheville    State AR    Zip Code 72315

Billing Address (If Different) _____ City _____ State _____ Zip Code _____

E-Mail Address trduncan13@yahoo.com _____

[COMPLETE THE FOLLOWING TO INSURE YOUR SPOUSE AND/OR CHILDREN:

Spouse: Name: William Masterson _____ Date of Birth 10-03-1953 Age 58 Sex M Ht. 5' 8" Wt. 170 lbs.

Occupation unemployed _____

Child's Name _____ Date of Birth _____ Age _____

Child's Name _____ Date of Birth _____ Age _____

Child's Name _____ Date of Birth _____ Age _____

**Complete the Following Choices:**

1- [ ] **Coverage Effective Date:**
   [ ] Day After Day received by insurance company    [✓] Later Effective Date: 01-26-2012 _____

2- [ ] **Coverage Length:**
   Prepaid: [ ] 30 days, [ ] 60 days, [ ] 90 days, [ ] 120 days, [ ] 150 days, [ ] 180 days
   List the number of days if not listed above (must be more than 30 days):

| 1-6 Months Coverage:<br>[ ] Single Prepay<br>[ ] Monthly Payments | [ ] Up to 6 Months<br>Coverage:<br>Monthly Payments<br>Available Only | [✓] Up to 12 Months<br>Coverage:<br>Monthly Payments<br>Available Only |
| --- | --- | --- |

3.- [ ] **Coinsurance Choice:**
   [✓] 80/20 of $5,000    [ ] 50/50 of $5,000    [ ] 80/20 of $10,000    [ ] 50/50 of $10,000

4- [ ] **Deductible:**
   [ ] $250    [ ] $500    [ ] $1,000    [✓] $2,500    [ ] $5,000    [ ] $7,500    [ ] $10,000

5- [ ] **Payment Method:**
   [✓] Credit Card (MasterCard or Visa accepted)    [ ] Monthly Automatic Bank Withdrawal

**Answer the Following Medical History Questions:**

*Any material misstatement or omission of information made on this form will be considered a misrepresentation and may be the basis for later rescission of my coverage and that of my dependents. In the event of rescission or termination for any reason, the Insurer shall have the right to deduct any premium due and unpaid from any claims payable to me or my dependents.*

1.   Will there be any other health insurance in force on the policy date?    [ ] Yes  [✓] No

AH-600081                                    1

EXHIBIT
1

2. Is the proposed insured, spouse, or any dependent child now pregnant, undergoing infertility treatment, or in the process of adoption?  ☐ Yes ☑ No

3. Is the proposed insured currently eligible for Medicaid?  ☐ Yes ☑ No

4. Has any person proposed for coverage been declined for health insurance in the past 12 months for a condition that is still present)?  ☐ Yes ☑ No

5. Within the past 5 years, have you or any person to be insured been aware of, diagnosed, treated by a member of the medical profession, or taken medication for cancer or a tumor, stroke, heart disease including heart attack, had heart surgery, COPD (Chronic Obstructive Pulmonary Disease) or emphysema, kidney disorder or disease, liver disorder or disease, neurological disorder, degenerative disc disease or herniation/bulge, rheumatoid arthritis, degenerative joint disease of the knee or hip, diabetes , alcohol abuse or chemical dependency, or does anyone listed on the application currently weigh over 250 pounds (women) or over 300 pounds (men)?  ☐ Yes ☑ No

6. Have you or any person to be insured been diagnosed or treated for Acquired Immune Deficiency Syndrome (AIDS), AIDS-related complex, or any other immune system disorder such as HIV?  ☐ Yes ☑ No

7. Has any other person proposed for coverage not been a legal resident of the United State for the last 12 consecutive months?  ☐ Yes ☑ No

**NOTE:  IF "YES" IS ANSWERED ON ANY QUESTION FROM 1 THROUGH 7, COVERAGE CANNOT BE ISSUED**

1. I agree that coverage will not become effective for any person whose medical history changes prior to coverage approval, such that the person's answer would be "yes" to any of the Medical History questions in this application.  If such person is the Applicant, coverage is automatically declined for all persons included in this application.

2. I hereby request coverage under the policy issued by the insurer and understand that if the coverage applied for becomes effective, I agree to all terms of the policy.  I understand that health insurance benefits are excluded for pre-existing conditions.

3. I hereby authorize any hospital, clinic, physician, surgeon, practitioner or insurance company to furnish the Insurer or its representative with any and all information concerning any sickness or injury I or my dependents may have suffered, including copies of all hospital or medical records.  A copy of this authorization shall be considered as valid as the original and remains in effect for 2 years from the date of my signature.  I understand that I may revoke this authorization at any time by sending a written revocation to the Company.  Such revocation will not affect any action taken or information released prior to the revocation, and will not affect any legal right the Company has to contest an insurance policy or to contest a claim under an insurance policy.  I understand that if I revoke this authorization, the Company may not be able to process my application, and may not be able to make any benefit payments due under any existing policy, certificate, or other binding agreement.

4. I understand that the broker who solicited this application was acting as an independent contractor and not as an agent of the Starr Indemnity & Liability Company.  I further acknowledge that the person who solicited this application and upon whose explanation or benefits, limitations or exclusions we relied, was retained by me as my agent, and that such person has no right to bind or approve coverage or alter any of the terms or conditions of the policy.

5. I have read this application and have verified that all of the information provided in it is complete, true and correct, and is all within my personal knowledge.  I agree to immediately notify the insurer of any changes in any of the information contained in this form which may occur prior to the approval of coverage.

**I understand that this coverage will not pay benefits for a disease or physical condition that I now have or have had in the past.**

Signature of Applicant: Tracy Duncan (esign)    Date: 01-17-2012

Signature of Spouse: William Masterson (esign)    Date: 01-17-2012

I certify that I have read the applicable Fraud Notice.
**Fraud Warning:  Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information may be guilty of insurance fraud**

**Arkansas Fraud Warning:  Any person who knowingly presents a false or fraudulent claim for payment of a loss of benefits or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.**

I have truly and accurately recorded the information supplied by the Applicant. Robert S. Hurley (esign)
Agent Signature





### HEALTH INSURANCE INNOVATIONS, LLC
### PAYMENT AUTHORIZATION FORM

**AUTHORIZATION FOR AUTOMATIC BANK DRAFT OR CREDIT CARD PAYMENT:**
I am signing up for an automatic payment plan. I agree Health Insurance Innovations, LLC or its authorized agent may auto-matically debit my bank account or Credit Card for the amount due on or after the payment date. I can cancel this automatic payment at any time by calling or writing to Health Insurance Innovations, LLC or its authorized agent. I agree that Health Insur-ance Innovations, LLC or my financial institution can cancel automatic payment for my account for any reason, at any time, with or without prior notice to me. I understand that $25.00 will be charged for each transaction rejected for insufficient funds. I acknowledge that the origination of these debits to my account must comply with U.S. laws. I agree that this agreement re-mains in effect until canceled by Health Insurance Innovations, LLC my financial institution or me. I have a copy of this agree-ment and I know I can also contact Health Insurance Innovations, LLC. or its agent for a copy.

**COMPLETE TO PAY MONTHLY BY AUTOMATIC BANK DRAFT**
*Note: You must attach a voided check from your checking or savings account to this enrollment):*

Print Accountholders Name : _____

_____        _____
Bank Name                          Address                                               Check Number

_____        _____
Account Number                                   Routing Number

Account Class:     Checking     Savings          Type of Account:     Personal     Business

x_____
Signature of Account Holder                    Date

**COMPLETE TO PAY MONTHLY BY CREDIT CARD:**     Indicate type of card:

☑ **VISA**        ☐ **MasterCard**
Print Accountholders Name : Tracy Duncan _____

##############6857          01/2014                              Mailing Name:
Account Number            Expiration Date          CCV#

116 Chesterfield Street              Blytheville          AR          72315
Card Holder Address                    City                    State        Zip Code

x Tracy Duncan (esign)                 01-17-2012
Signature of Account Holder             Date

---

**F. AGENT INFORMATION:**

COMPANY: _____     AGENT NAME: Robert S. Hurley   eHealth Insurance
CODE #:_____E803000000_____ -___     EMAIL: _____
PHONE:_____     FAX:_____

MGA/GA: _____     CODE:_____

*PLEASE SUBMIT THE APPLICATION ELECTRONICALLY USING YOUR AGENTS URL PRODUCT LINK.*
*You can Fax or Mail the completed Enrollment Form to your agent (if payment by monthly bank draft, include a voided check with this form.)*

**FILED**

 **Starr Indemnity & Liability Company**

FEB - 8 2013
10:45 Am
DONNA HART
CLERK

Dallas, Texas
Administrative Office: 90 Park Avenue, 7th Floor, New York, New York 10016

## CERTIFICATE SCHEDULE

**COVERAGE IS PROVIDED UNDER GROUP POLICY NUMBER:**   STM-1000001
**ISSUED TO GROUP POLICYHOLDER:**   Med-sense Guaranteed Association

**CERTIFICATEHOLDER:**   Tracy Duncan
**CERTIFICATE NUMBER:**   STT7985900
**COVERAGE PERIOD:**   12 Months
**EFFECTIVE DATE:**   01-26-2012
**EXPIRATION DATE:**   01-25-2013

---

### PRE-ADMISSION CERTIFICATION NOTICE

This plan requires a Pre-Admission Certification by a Professional Review Organization prior to in-patient Hospitalization or surgery. A Covered Person must call the Professional Review Organization:

1. For elective or non-emergency Hospitalization or surgery, at least 10-days prior to the date of proposed Hospitalization;
2. Within 48-hours from the time the person is in stable condition following an emergency admission, or as soon as reasonably possible if the person's medical condition prevents or delays such notification; or
3. Within 48-hours of delivery (96 hours for cesarean section) for complicated childbirth or as soon as reasonably possible.

Non-compliance with the Pre-Admission Certification procedure will result in a **reduction in benefits of 50%,** unless the Covered Person is incapacitated and unable to contact Us in such cases, the Covered Person must contact Us as soon as possible. You have been provided with information and procedures necessary for Pre-Admission Certification. You may obtain more information regarding Pre-Certification and its procedures from the Company.

---

### SECTION I

The Deductible, Coinsurance Percentage, Coinsurance Limit and Lifetime Maximum Amount apply to each Covered Person and for ALL benefits, unless otherwise stated for a specific benefit in SECTION II.

### THE FOLLOWING SHALL APPLY TO EACH COVERED PERSON

**DEDUCTIBLE:** $2,500

When 3 insured individuals in a family satisfy their Deductibles, the Deductibles for any remaining insured individual in the insured family are deemed satisfied for the remainder of the Coverage Period.

AH-60001C                    3

**EXHIBIT**
**2**

**COINSURANCE:**
Coinsurance Percentage: 80% / 20%                    up to the Coinsurance Limit
Coinsurance Limit: $5,000
Thereafter                                          100%
**LIFETIME MAXIMUM AMOUNT:**                        $2,000,000

---

### SECTION II

### MAXIMUM BENEFITS FOR EACH COVERED PERSON:

**HOSPITAL COVERED EXPENSES:**
**In Hospital Coinsurance Percentage  80%**

**In Hospital Intensive or Critical Care        80%**

**OTHER COVERED EXPENSES:**
**Ambulatory Surgical Center: 80%**

**Anesthetics Coinsurance Percentage:**            80% up to 20% of the surgeon's benefit

**Assistant Surgeon Coinsurance Percentage:**      80% up to 20% of the surgeon's benefit

**Surgeon's Assistant Coinsurance Percentage:**    80% up to 20% of the surgeon's benefit

**Doctor's Office and Urgent Care Center:**        100% for each visit after a $50
                                                   copayment, not to exceed a maximum of
                                                   3 visits per Coverage Period.  The first 3
                                                   visits are not subject to the Deductible.
                                                   Visits in excess of the maximum of 3 visits
                                                   per Coverage Period will be subject to the
                                                   Deductible and Coinsurance.

**Skilled Nursing Facility:**
   Maximum Benefit Amount:                         $30 per day
   Maximum Days:                                   30 days per Coverage Period

**Ambulance Ground or Air:**
   Maximum Benefit:                                $250 per trip

**Home Health Care:**
   Maximum Benefit Amount:                         $40 per visit
   Maximum Benefit Period:                         40 visits per Coverage Period

**Hospice Care:**
   Maximum Benefit:                                $5,000 per Coverage Period

**Acquired Immune Deficiency Syndrome (AIDS)**     $10,000 per Coverage Period

**Knee Injury or Disorder:**
   Lifetime Maximum Benefit:                       $2,500 per Covered Person for both left
                                                   knee and right knee

**Gallbladder Surgery:**
   Lifetime Maximum Benefit:                       $2,500 per Covered Person

AH-60001C                          4

**Organ, Tissue Transplants:**
    Lifetime Maximum Benefit for all Covered
    Expenses                         $50,000 per Covered Person

**Foreign Travel:**
    Foreign Travel Deductible:             $250 per Covered Person
    Lifetime Maximum Benefit:            $25,000 per Covered Person

**Temporomandibular Joint Disorder (TMJ):**
    Lifetime Maximum Benefit for authorized     $3,500 per Covered Person
    therapeutic procedures and Procedures for
    non-surgical treatment for TMJ:

*Health Insurance Innovations*

**Health Insurance Innovations**
218 Bearss Ave., Suite 325
Tampa, FL 33613
Toll Free Telephone: 1-877-376-5831
Toll Free Fax: 1-877-376-5832
www.hiiquotecustomers.com

William Masterson
116 Chesterfield Street
Blytheville, AR, 72315

# FILED

FEB - 8 2013
10:15 Am
DONNA HART
CLERK

Dear Insured:

Thank you for purchasing the Med Plus Short Term Medical Insurance Plan through Health Insurance Innovations (HII). You have shown excellent judgment in applying for this insurance plan.

If your payment is received by HII, your Med Plus Short Term Medical coverage will go into effect on your requested effective date at 12:01 am. If your payment is not received, your Short Term Medical coverage will be considered null and void and it will not be issued.

For your convenience, your insurance ID card is below. Please present your card upon each visit and have it available for verification purposes when calling to make an appointment.

You can access your insurance documents at www.hiiquotecustomers.com with your secure login listed below:

User name: *bfh31*         Password: *TWHFI31*

Please be sure to download and print insurance documents, MedCare Rx Card & Med-Sense Guarantee Association booklet. If you cannot download and print these important documents, call HII Customer Service at **1-877-376-5831** to have them mailed to you. Med-Sense Guaranteed Association membership is not required in the states of AR, CO, LA, ME, MT, NV, ND, OR and SD.

Please feel free to contact us, use the quick reference guide below to determine whom, to call:

- **Benefits, Premium Billing and Enrollment: 1-877-376-5831**
- **File a Claim or Pending Claims:1-866-282-3991**
- **Hospital Confinement Pre-Certification: 1-800-544-2273**

**Sincerely,**

**Customer Service**
**Health Insurance Innovations**

---

*Health Insurance Innovations*

Med Plus Short Term Medical Insurance
Identification Card
Insured by: Starr Indemnity and Liability Company

Insured Name:  **William Masterson**
Certificate / Policy#: **STT7985901**
User I.D.: *bfh31*
Effective Date: *01-26-2012*

THIS CARD DOES NOT GUARANTEE COVERAGE OR BENEFITS
The Beech Street Network is a Hospital Services Only Program.

Beech Street   [First Choice Health]  RAN  AMN  HMN

Outlook

**Who to Contact for Service or with Questions:**
- Hospital Confinement Pre-certification: **1-800-544-2273**
  **FAILURE TO PRE-CERTIFY MAY RESULT IN REDUCED BENEFITS.**
- Benefits, Premium Billing and Enrollment Inquiries: **1-877-376-5831**
- Claims – Filing or Pending call CBP: **1-866-282-3991**
- Mail Claims to: CBP, Inc.
  P.O. Box 21575, Eagan, MN 55121
  EDI Payor ID - 14829
- Mail Hospital Bills for re-pricing to: Beech Street Corporation
  P.O. Box 853925, Richardson, TX 75085

**Non-insurance benefits contacts:**
- Med-Sense Guaranteed Association 1-920-347-4400
- Travel Club 1-214-728-1207
- Global Fitness 1-800-294-1500 www.Gymamerica.com/NAC
- Vitamins 1-877-777-7944 mention code "NAC"
- Outlook Vision help desk: 1-800-342-7188 for the location nearest you
(Please go to www.hiiquotecustomers.com for a copy of your Certificate/ Policy,
Schedule of Benefits and other important insurance documents.)

---

**EXHIBIT**

**3**

**FILED**

FEB - 8 2013
10:45 Am
DONNA HART
CLERK

 **Starr Indemnity & Liability Company**

Dallas, Texas
Administrative Office: 399 Park Avenue, 8th Floor, New York, New York 10022
(hereafter referred to as "we," "us," and "our")

### SHORT TERM MEDICAL INSURANCE POLICY

**POLICYHOLDER:**               See Attached
**POLICY NUMBER:**              See Attached
**COVERAGE PERIOD:**            See Attached
**EFFECTIVE DATE:**             See Attached
**EXPIRATION DATE:**            See Attached

### SCOPE OF COVERAGE

**POLICY ISSUED TO THE POLICYHOLDER IN THE STATE OF ARKANSAS.**

This Policy is issued and delivered in the State shown above and shall be governed by its laws.

This Policy is the contract between the Policyholder and Starr Indemnity & Liability Company. This Policy contains the terms under which we agree to insure eligible persons and pay benefits, subject to the terms and conditions herein.  References to Covered Dependents insurance apply only if You have elected such coverage. Coverage under this Policy is provided in consideration of payment of the initial premium and continued payment of premiums when due and that the answers in Your application are correct and complete.

### 10 DAY RIGHT TO RETURN THE POLICY

If for any reason you are not satisfied with this Policy, you may return it to us within 10 days after you receive it.  We will refund any premium paid and the Policy will be deemed void, just as though it had not been issued.

**THIS POLICY IS NON-RENEWABLE TERM INSURANCE.**
**IT WILL NOT BE RENEWED AT THE END OF THE COVERAGE PERIOD.**
**READ IT CAREFULLY.**

Signed for Starr Indemnity & Liability Company By:

Honora M. Keane, General Counsel                Charles H. Dangelo, President

**Policyholder Service Office of Company:** Starr Indemnity & Liability Company
**Address:** 399 Park Avenue, 8th Floor, New York, NY 10022
**Telephone:** (646)-227-6342

If we at Starr Indemnity & Liability Company fail to provide you with reasonable and adequate service, you should feel free to contact:

Arkansas Insurance Department
Consumer Services Division
1200 West Third Street, Little Rock, Arkansas 72201-1904
Telephone:  (501) 371-2640 or Toll-Free: 800-852-5494

**EXHIBIT**
**4**

# TABLE OF CONTENTS

The following provisions appear within this Policy in the following order:

DEFINITIONS ................................................................................................................5
ELIGIBILITY................................................................................................................9
    I.    YOU    9
    II.  ELIGIBLE DEPENDENTS    9
    III. ENROLLMENT REQUIREMENTS    10
    IV.   UNDERWRITING REQUIREMENTS    11
    V. ADDITIONAL CONDITIONS    11
EFFECTIVE DATES................................................................................................11
    I.  YOU AND ELIGIBLE DEPENDENTS    11
    II. NEWLY ACQUIRED DEPENDENT CHILDREN    11
TERMINATION OF INSURANCE ........................................................................11
    I.  TERMINATION OF YOUR INSURANCE    11
    II. TERMINATION OF A COVERED DEPENDENT'S INSURANCE    12
HOSPITAL PRECERTIFICATION ......................................................................12
DESCRIPTION OF BENEFITS .........................................................................13
    I.  WHAT IS COVERED    13
    II. COVERED EXPENSES    14
    A) HOSPITAL COVERED EXPENSES.................................................................14
    B) COVERED EXPENSES FOR TREATMENT.................................................14
    C) OTHER COVERED EXPENSES.....................................................................14
    III.   ALLOCATION AND APPORTIONMENT OF BENEFITS    21
    IV.   EXTENSION OF COVERAGE    21
LIMITATIONS AND EXCLUSIONS...................................................................21
PRE-EXISTING CONDITIONS LIMITATION....................................................24
CLAIM PROVISIONS .........................................................................................24
GENERAL PROVISIONS ...................................................................................25

**SCHEDULE**

**See Attached**

# DEFINITIONS

This section provides the meaning of special terms used in this Policy. Whenever the following terms appear capitalized in this Policy, these definitions apply:

**Ambulatory Surgical Center** means a licensed health care facility whose main purpose is the diagnosis or treatment of patients by surgery it must: (1) admit and discharge the patient within the same working day; (2) be supervised by a Doctor; (3) require a licensed anesthesiologist or licensed Certified Registered Nurse Anesthetist to administer anesthesia and remain during the surgery; (4) provide a post-anesthesia recovery room; and (5) have a written agreement with at least one Hospital for immediate acceptance of patients who develop complications.

Ambulatory surgical center does not include: (1) a facility whose main purpose is performing terminations of pregnancy; (2) an office maintained by a Doctor for the practice of medicine; or (3) an office maintained for the practice of dentistry.

**Chemical Dependency** is the pathological use or abuse of alcohol and/or other drugs in a manner or to a degree that produces an impairment in personal, social or occupational functioning and which may, but need not, include a pattern of tolerance and withdrawal.

**Clinical Trials** means Phase II, Phase III, and Phase IV patient research studies designated to evaluate new treatments, including prescription drugs, and that: (1) involve the treatment of life-threatening medical conditions; (2) are medically indicated and preferable for that patient compared to available non-investigational treatment alternatives; and (3) have clinical and preclinical data that shows the trial will likely be more effective for that patient than available non-investigational alternatives. Covered clinical trials must also meet the following requirements:
1. Must involve determinations by treating physicians, relevant scientific data, and opinions of experts in relevant medical specialties;
2. Must be trials approved by centers or cooperative groups that are funded by the National Institutes of Health, the Food and Drug Administration, the Centers for Disease Control, the Agency for Health Care Research and Quality, the Department of Defense, or the Department of Veterans Affairs. The health benefit plan may also cover clinical trials sponsored by other entities; and
3. Must be conducted in a setting and by personnel that maintain a high level of expertise because of their training, experience, and volume of patients.

**Coinsurance Percentage** is the applicable percentage specified in the Schedule that We will use in computing the amount payable for a benefit.

**Complications of Pregnancy** means: (1) Conditions (when pregnancy is not terminated) whose diagnoses are distinct from pregnancy but are adversely affected by or caused by pregnancy, such as acute nephritis, nephrosis, cardiac decompensation, HELLP syndrome, uterine rupture, amniotic fluid embolism, chorioamnionitis, fatty liver in pregnancy, septic abortion, placenta accrete, gestational hypertension, puerperal sepsis, peripartum cardiomyopathy, cholestasis in pregnancy, thrombocytopenia in pregnancy, placenta previa, placental abruption, acute cholecystitis and pancreatitis in pregnancy, post hemorrhage, septic pelvic thromboplebitis, retained placenta, venous air embolus associated with pregnancy, miscarriage, or an emergency Cesarean section required because of: (a) fetal or maternal distress during labor, (b) severe pre-eclampsia, (c) arrest of descent or dilitation, (d) obstruction of the birth canal by fibroids or ovarian tumors, or (e) necessary because of the sudden onset of a medical condition manifesting itself by acute symptoms of sufficient severity that, in the absence of immediate medical attention, will result in placing the life of the mother or fetus in jeopardy. For purposes of this paragraph, a Cesarean section delivery is not considered to be an emergency Cesarean section if it is merely for the convenience of the patient and/or Doctor solely due to a previous Cesarean section.

(2) Treatment, diagnosis or care for conditions, including the following, in a pregnant female when the condition was caused by, necessary because of, or aggravated by the pregnancy: hyperthyroidism, hepatitis B or C; HIV; Human papilloma virus; abnormal PAP; syphilis; Chlamydia; herpes; urinary tract infections; thromboembolism; appendicitis; hypothyroidism; pulmonary embolism; sickle cell disease; tuberculosis; migraine headaches; depression; acute myocarditis; asthma; maternal cytomegalovirus; urolithiasis; DVT prophylaxis; ovarian dermoid tumors; biliary atresia and/or cirrhosis; first trimester adnexal mass; hyditidiform mole; or ectopic pregnancy.

"Complications of Pregnancy" does not include false labor, occasional spotting, Doctor-prescribed rest during the period of pregnancy, morning Sickness, elective Cesarean section, and similar conditions associated with the management of a difficult pregnancy but not constituting a nosologically distinct complication of pregnancy.

**Confined/Confinement** means the time in which a Covered Person is a Registered Bed Patient in a Hospital on the order of a Doctor, for Medically Necessary medical treatment.

**Covered Dependent** means Eligible Dependents who have become Covered Person(s) under this Policy.

**Covered Expenses** means: (1) Costs of treatments, services and supplies which a Doctor recommends as Medically Necessary to treat a Sickness or Injury and which in the geographical area where rendered are the Usual, Reasonable and Customary services, supplies and treatment provided for the condition being treated; (2) charges which are Usual, Reasonable and Customary and which the person incurs while he is covered; (3) charges which You or Your Covered Dependent are legally required to pay; and (4) any other charges which are identified as Covered Expenses under the Schedule of Benefits.

**Coverage Period** means the maximum length of time coverage is in force under this Policy. The Coverage Period is shown in the Schedule.

**Covered Person(s)** means You and Your Covered Dependents.  See the provision entitled Eligibility.

**Deductible** means the amount of Covered Expenses that each Covered Person must pay before benefits will be payable. The Deductible is shown in the Schedule.

**Doctor** means a licensed practitioner of the healing arts who is practicing and treating within the scope and limitations of that license, including a Doctor's assistant and a licensed marriage and family therapist. "Doctor" does not include You, a Covered Dependent, Immediate Family, or a Covered Person's employer.

**Effective Date** means the date coverage under the Policy begins for a Covered Person. The Effective Date is shown in the Schedule.

**Emergency Services** means health care items and services furnished or required to screen for or treat an emergency medical condition until the condition is stabilized, including prehospital care and ancillary services routinely available to the emergency department.

**Policy** means the contract issued to the Policyholder providing the benefits described herein.

**Home Health Agency** means a public agency or private organization, or a sub-division of such an agency or organization, which:
1. Is primarily engaged in providing skilled nursing services and other therapeutic services;
2. Has policies established by a group of professional personnel (associated with the agency or organization), including one or more Doctors and one or more Nurses, to

govern the services which it provides, and provides for supervision of such services by a Doctor or Nurse;
3.   Maintains clinical records on all patients;
4.   In the case of an agency or organization in any State, in which State or applicable local law provides for the licensing of agencies or organizations of this nature:
    a.   Is licensed pursuant to such law; or
    b.   Is approved by the agency of such State or locality responsible for licensing agencies or organizations of this nature, as meeting the standards established for such licensing; and
5.   Meets such other conditions of participation as are established under the Medicare program in the interest of the health and safety of individuals who are furnished services by such agency or organization.

**Home Health Aide** means a person who (1) provides care of a medical or therapeutic nature; and (2) reports to and is directly supervised by a Home Health Agency.

**Home Health Care Plan** means a plan of home-based care which meets these standards: (1) A Doctor has established and approved the plan in writing; and (2) the plan covers a condition which would otherwise require Confinement in a Hospital or convalescent nursing home.

**Home Health Care Visit** means any visit by a member of a home health care team. Each visit by a member of the home health care team other than a Home Health Aide counts as one home health care visit. One visit up to a maximum of four hours of service by a Home Health Aide counts as one home health care visit.

**Hospital** means an institution which is legally constituted and operated in accordance with the laws pertaining to Hospitals in the Jurisdiction where it is located, which meets all of the following requirements:
1.   It is engaged primarily in providing medical care and treatment to sick and injured persons on an inpatient basis at the patient's expense;
2.   It provides 24-hour-a-day nursing service by a Nurse;
3.   It is under the supervision of a staff of duly-licensed Doctors; and
4.   It provides organized facilities for diagnosis and for major operative surgery either on its premises or in facilities available on a prearranged basis.

"Hospital" does not mean primarily a clinic, nursing home, rest or convalescent home, extended care facility, Hospice or similar establishment nor other than incidentally, a place providing care for persons with Mental Illness or Nervous Disorders; the aged, or those suffering from alcoholism or drug addiction.

Confinement in a special unit of a Hospital used primarily as a nursing, rest, or convalescent home shall be deemed to be Confinement in an institution other than a Hospital. A State tax-supported institution will not be excluded, even though it may not have an operating room and related equipment for surgery.

**Immediate Family** means: (1) the parent, spouse, brother, sister or children of a Covered Person (2) a resident in a Covered Person's household; or (3) any person related to a Covered Person by blood, marriage or legal adoption.

**Injury** means bodily harm caused by an accident directly and independently of Sickness or bodily infirmity resulting in unforeseen trauma requiring immediate medical attention The Injury must occur after the Covered Person's Effective Date of coverage and while such person's coverage is in force. All injuries to the same Covered Person sustained in one accident, including all related conditions and recurring symptoms of the Injuries, shall be considered one injury.

**Intensive Care Unit** means a section, ward or wing within a Hospital which is separated from other Hospital facilities and: (1) is operated exclusively for the purpose of providing professional care and treatment for critically ill patients; (2) has special supplies and equipment necessary for such care and treatment which are available on a standby basis for immediate use; (3) provides room and board and constant observation by a Nurse or other specially-trained Hospital personnel; and (4) is not maintained for the purpose of providing normal postoperative recovery treatment or service.

**Lifetime Maximum Amount** is the total aggregate amount of benefits payable under this Policy for all Covered Expenses which are incurred for Sickness or Injury by each Covered Person during such person's lifetime, except as otherwise provided. The Lifetime Maximum Benefit applies to all Covered Expenses, unless indicated otherwise for a specific benefit, and is shown in Your Schedule.

**Medically Necessary** means that the services or supplies are provided for the diagnosis or treatment or relief of a condition, illness, injury or disease; and except as allowed under the Coverage for Clinical Trials, not for experimental, investigation, or cosmetic purposes; are necessary for and appropriate to the diagnosis or treatment and within the accepted community standards of medical care and are not solely for the convenience of the insured, the insured's family or the provider.

**Mental Illness or Nervous Disorder** means a psychoneurosis, psychosis, eating or personality disorder or panic disorder as defined in the Diagnostic and Statistical Manual of Mental Disorders of the American Psychiatric Association, and determined by the manifestation of symptoms regardless of whether such Mental Illness or Nervous Disorder has a physical or organic basis or origin.

**Nurse** means a licensed registered graduate professional Nurse (R.N.) or a licensed practical Nurse (L.P.N.) who is under the direction of a Doctor. Nurse does not include the Immediate Family of a Covered Person.

**Prescription or Legend Drugs** means: (1) a Legend Drug; (2) injectable insulin prescribed by a Doctor; (3) a compounded drug of which at least one part is a Legend Drug; or (4) any other drug that, under state law, may only be dispensed upon the written prescription of a Doctor. "Prescription or Legend Drugs" do not include oral contraceptives for prevention of pregnancy.

**Professional Review Organization** means an organization we select to provide a program of medical review services under Doctors, Nurses and record technicians.

**Registered Bed Patient** means an individual who, while Confined to a Hospital or Skilled Nursing Facility, is assigned to a bed in any department of the Hospital, and for whom a charge for room and board is made by the Hospital.

**Sickness** means an Illness, disease, or infection which begins while coverage is in force under this Policy for the Covered Person. All related conditions and recurring symptoms of sickness to the same person will be considered one sickness. Sickness includes Complications of Pregnancy. With respect to Dependent Children who automatically become insured under the Policy at birth, the term "Sickness" shall also include medically diagnosed congenital defects and birth abnormalities.

**Skilled Nursing Facility** means an institution, or a distinct part of an institution, which is licensed pursuant to state and local laws and is operated primarily for the purpose of providing skilled nursing care and treatment for persons convalescing from Injury or Sickness, and: (1) is approved by and is a participating Skilled Nursing Facility of Medicare; (2) has organized facilities for medical treatment and provides 24-hour a day nursing service under the full-time supervision of a licensed Doctor or Nurse; (3) maintains daily clinical records on each patient and has available

the services of a licensed Doctor under an established agreement; (4) provides appropriate methods for dispensing and administering drugs and medicines; (5) has transfer arrangements with one or more Hospitals, a utilization review plan in effect and operational policies developed with the advice of, and reviewed by, a professional group including at least one licensed Doctor; and (6) is not, other than incidentally, a rest home for the aged, or a place for the treatment of mental disease, drug addiction or alcoholism.

**Total Disability or Totally Disabled** means that You are prevented from engaging in Your own occupation for wage or profit or any occupation to which You are suited by talent or education by reason of Injury or Sickness. A Covered Person other than You is considered to be Totally Disabled when he is prevented by reason of Injury or Sickness from engaging in all normal activities of a person of like age and sex in good health.

**Urgent Care Center** means a medical facility separate from a hospital emergency department where ambulatory patients can be treated on a walk-in basis without an appointment and receive immediate, non-routine urgent care for an Injury or Sickness presented on an episodic basis.

**Usual, Reasonable and Customary** means:
1. With respect to fees or charges, fees for medical services or supplies which are:
   a. Usually charged by the provider for the service or supply given; and
   b. The average charged for the service or supply in the locality in which the service or supply is received, whichever is less; or
2. With respect to treatment or medical services, treatment which is reasonable in relationship to the service or supply given and the severity of the condition.

**We, Us, Our or Company** means Starr Indemnity & Liability Company.

**You or Your** (also, **Policyholder**) means the primary insured person who is named in the Schedule as the Policyholder.

**ELIGIBILITY**

**I.   YOU**

You will be eligible for insurance provided:
1. You are at least 2 years old but under 65 years of age;
2. You are not covered as a dependent under the Policy;
3. You are not pregnant at the time of application;
4. You have a social security number (this does not apply to a minor);
5. You are not an active member of the armed forces;
6. You submit a written application for insurance, provide evidence of insurability, if evidence is required, and meet our enrollment and underwriting requirements; and
7. You pay all required premiums when due.

**II.   ELIGIBLE DEPENDENTS**

**Spouse**: You will be eligible to apply for insurance for Your lawful spouse who:
1. Is under age 65;
2. Is not pregnant at the time of application;
3. Is not an active member of the armed forces;
4. Has a social security number; and
5. Has provided a written application for insurance and evidence of insurability, if evidence is required, has been approved, and meets our enrollment and underwriting requirements.

**Dependent Children**: You will be eligible to apply for insurance for your dependent children who:
1. Are unmarried children primarily dependent upon You for support and maintenance; and
2.     a. Are less than 19 years or age;
      b. Are at least 19 years of age but less than 25 years and enrolled and attending as a full-time student at an accredited college, university, vocational or technical school;
3. Are not pregnant at the time of application;
4. Are not active members of the armed forces; and
5. Have provided a written application for insurance and evidence of insurability, if evidence is required, have been Approved, and meet Our enrollment and underwriting requirements.

**"Children"** means natural children stepchildren, legally-adopted children, children placed with You for the purpose of adoption, children subject to Your legal guardianship, and a foster child placed in the foster home.

**"Foster child"** means a minor (i) over whom a guardian has been appointed by a court; or (ii) the primary or sole custody of whom has been assigned by order of a court of competent jurisdiction.

**"Placement in the foster home"** means physically residing with a person appointed as guardian or custodian of a foster child as long as that guardian or custodian has assumed the legal obligation for total or partial support of the foster child with the intent that the foster child reside with the guardian or custodian on more than a temporary or short-term basis.

**"Adopted Children"** means, in connection with any adoption or placement for adoption of the child, an individual who has not attained 18 years of age as of the date of the adoption or placement for adoption.

**"Placement for adoption"** means the assumption and retention by a person of a legal obligation for total or partial support of a child in anticipation of the adoption of the child. The child's placement with a person terminates upon the termination of such legal obligations.

If You and Your spouse are both Covered Persons, only one parent will be eligible for insurance on any Covered Dependent children You may have.

## III. ENROLLMENT REQUIREMENTS

You and Your eligible Dependents who desire coverage must complete and submit an application for the plan and complete or provide any other documents (including evidence of insurability) as we deem necessary. You must submit the required premium with Your application form. Any misrepresentation or omission of Information in Your application or any documents submitted to Us may result in rescission of all coverage for all Covered Persons.

If You are an Insuring Parent, the Company will not deny the enrollment of a child, under this plan, because the child:
1. Was born out of wedlock;
2. Is not a dependent claimed on Your federal income tax; or
3. Does not live with You.

The Company will provide the Noninsuring Parent with claim forms and any other information needed to obtain benefits for the child. The Company will process claims and reimburse the Noninsuring Parent, provider of care, or the appropriate government agency if applicable when the Noninsuring Parent incurs an expense covered by the Policy.

**Insuring Parent** means a parent who is required by court order or administrative order to provide health insurance coverage for a child. **Noninsuring Parent** means a parent other than the Insuring Parent.

## IV.  UNDERWRITING REQUIREMENTS

You and Your Eligible Dependents are subject to our underwriting requirements.  We reserve the right to decline or rate any person at Our discretion.

## V.  ADDITIONAL CONDITIONS

Insurance will not be effective unless all eligibility requirements are met and You receive written acceptance from Us.  Insurance on a Covered Person will not be effective unless premium is paid and accepted by Us for such insurance.  Issuance of a Policy is not a waiver of any of the above conditions.

## EFFECTIVE DATES

## I.   YOU AND ELIGIBLE DEPENDENTS

Coverage is effective as of the Effective Date for You and any Eligible Dependents who were included in Your initial application, provided that You meet Our eligibility, underwriting and enrollment requirements.   Coverage will not become effective for any person whose medical history changes prior to coverage approval, such that the person's answer would be "Yes" to any of the medical history questions in the Application.  If such person is the Applicant, coverage is automatically declined for all persons included in Your Application.

## II.  NEWLY ACQUIRED DEPENDENT CHILDREN

Coverage for your child or children born after the Effective Date of this Policy will be effective from the moment of birth.  Coverage for that child will end 90 days after this automatic Effective Date unless you have made a written request directing us to add the child or children to your coverage.  We must receive this notice within 90 days after the child's date of birth.

Coverage for a child whom a petition for adoption ahs been filed, will become effective the the date the petition is filed, if coverage is applied for within 60 days of such filing.  Coverage for an adopted newborn child is from the moment of birth, if coverage is applied for within the 60-days after birth.  Coverage ceases upon the dismissal or denial of a petition for adoption.

Any required additional premium must accompany Your notice.  A claim form or Hospital bill does not constitute written notice.

Coverage for your child or children will be for Injury or Sickness, including congenital defects, premature birth and tests for hypothyroidism, phenylketonuria, galactosemia, and sickle-cell anemia for a non-Caucasian newborn child.

## TERMINATION OF INSURANCE

## I.   TERMINATION OF YOUR INSURANCE

Your insurance will automatically terminate on the earliest of the following dates:
1. The due date of a premium payment that is not paid when due, if such payment has not been made within 31-days following such premium due date;
2. The date that insurance under the Policy is discontinued provided the Policyholder received 30 day advance written notice;
3. The date that We determine fraudulent statements or a material misrepresentation has been made by You or with Your knowledge in filing a claim for benefits;
4. The date that You enter full-time active duty in the armed forces of any country or international organization;
5. The date You become eligible for Medicare;
6. The earlier of: (1) the Expiration Date of Your coverage; or (2) 12-months from the Effective Date of Your insurance, whichever occurs first.

## II. TERMINATION OF A COVERED DEPENDENT'S INSURANCE

A Covered Dependent's insurance will automatically terminate on the earliest of the following dates:

1. The due date of a premium payment that is not paid when due if such premium payment has not been made within 31-days following such premium due date;
2. The date that insurance under the Policy is discontinued provided the Policyholder received 30 day advance written notice;
3. The date that we determine fraud or material misrepresentation has been made by You or a Covered Dependent or with Your or a Covered Dependent's knowledge in filing a claim for benefits;
4. The date that Your insurance terminates. However, if termination is due to Your death, a Covered Dependent may elect to continue coverage beyond the original Expiration Date by making written request for such coverage and by continuing payments toward the cost of that insurance. When such an election is made, Your Covered Dependent spouse will be considered the primary insured;
5. The date You or a Covered Dependent becomes eligible for Medicare;
6. The date the Covered Dependent ceases to be eligible. However if, upon attaining any limiting age, a Covered Dependent has a handicapped condition rendering such person incapable of earning his own living and is chiefly dependent upon You or other care providers for lifetime care and supervision because of a handicapped condition that occurred before attainment of the limiting age, benefits with respect to such person may be continued on a premium-paying basis during the continuance of such dependency. During the first 2-years that insurance is being continued, we have the right to have the dependent examined at any time by Doctors designated by us. Thereafter, we will not require examination more than once each year. The continuance of insurance as described will cease in the event of:
   a. The termination of the Policy; or
   b. The termination of Your insurance; or
   c. The discontinuance of insurance under the Policy; or
8. The earlier of (i) the Expiration Date shown in the Schedule; or (ii) 12-months from the Effective Date of Your insurance, whichever occurs first.

## III. Termination of the Policy: The Policy will terminate on the earliest of the following dates:

1. The date the Policyholder elects to terminate the Policy, provided that the Policyholder gives us at least 60 days advance written notice; or
2. The date there are no Covered Persons under the Policy.

We may terminate the Policy on the first day of any policy month the anniversary of any premium due date by giving the Policyholder at least 30 days advance written notice.

## HOSPITAL PRECERTIFICATION

Hospital admissions and lengths of stay are subject to certification by a Professional Review Organization, as stated below:

1. You must notify the Professional Review Organization on behalf of a Covered Person:
   a. Ten (10) days prior to non-emergency admission of the Covered Person to a Hospital;
   b. Within 48-hours from the time the Covered Person is in stable condition following an emergency admission*, or as soon thereafter as is reasonably possible if the Covered Person's medical condition prevents or delays such notification; or
   c. Within 48-hours of normal delivery (96 hours for cesarean section) for complicated birth or as soon as reasonably possible.

   *A person is covered for Emergency Medical Conditions and may receive medical services to treat an Emergency Medical Condition without prior authorization if a prudent

layperson acting reasonably would have believed that an Emergency Medical Condition existed. In order to ensure that a person receives proper care for their condition, the person should call the Professional Review Organization and inform them of their condition and the services they are receiving.

When prior authorization has been given for Emergency Services, the Company will cover the services and will not retract the authorization after the services have been provided unless the authorization was based on material misrepresentation about the Covered Person's health condition.

**Emergency Medical Condition** means a medical condition manifesting itself by acute symptoms of sufficient severity, including, but not limited to, severe pain, or by acute symptoms developing from a chronic condition that would lead a prudent layperson possessing an average knowledge of health and medicine, to reasonably expect the absence of immediate medical attention to result in any of the following:
   a. Placing the health of an individual or with respect to a pregnant woman, the health of the woman or her unborn child in serious jeopardy;
   b. Serious impairment to bodily functions; or
   c. Serious dysfunction of any body organ or part.

2. The Professional Review Organization, after reviewing the applicable information, will certify:
   a. If the Hospital admission is Medically Necessary;
   b. The appropriate length of stay; and
   c. Appropriate extensions beyond the initially-certified length of stay.

3. **REDUCTION OF BENEFITS:** If Covered Expenses for the Hospital admission, length of stay, or extensions of stay are not certified by the Professional Review Organization, We will only pay 50% of the benefits which would otherwise have been payable for Covered Expenses, unless the Covered Person is incapacitated and unable to contact us. In such cases, the Covered Person must contact us as soon as possible. No benefits will be payable in the event such Hospital admission, length of stay or extension of stay is not Medically Necessary.

## DESCRIPTION OF BENEFITS

**I.   WHAT IS COVERED**

Subject to the Hospital Precertification provision, if You or a Covered Dependent incurs Covered Expenses for medical treatment supplies or services as a result of a Sickness or Injury which occurs while coverage is in force, and after satisfaction of the Deductible, We will pay the Coinsurance Percentage for Covered Expenses incurred in excess of the Deductible. We will pay this amount for all Covered Expenses unless otherwise noted for a specific benefit or specified as limited or excluded in the Limitations and Exclusions provision.

After Covered Expenses for which benefits are payable at the Coinsurance Percentage have equaled the Coinsurance Limit for a Covered Person, We will pay Covered Expenses in excess of the Coinsurance Limit at the amount shown in the Schedule for each such person while coverage is in force, but not to exceed the Lifetime Maximum Amount payable for each Covered Person.

The Deductible, Coinsurance Percentage, Coinsurance Limit and Lifetime Maximum Amount are shown in Section I of the Schedule and apply to each Covered Person and for all benefits, unless otherwise stated for a specific benefit in Section II of the Schedule.

## II.  COVERED EXPENSES

**Covered Expenses** mean the Usual, Reasonable and Customary charges for the following Medically Necessary services, supplies, or treatment prescribed or provided by a Doctor for a covered Injury or Sickness while coverage is in force for a Covered Person.  The Company reserves the right to interpret and determine coverage for Covered Expenses.  The fact that a Doctor has prescribed, recommended, approved, or provided a treatment, service or supply does not, in itself, make such treatment, service or supply a Medically Necessary covered expense.

### A)  HOSPITAL COVERED EXPENSES

1.  **Hospital Room, Board and General Nursing Care:**  While Confined in a Hospital, the Coinsurance Percentage for the average daily charge for room and board in a semiprivate room with at least two beds.  If the Hospital does not have semiprivate rooms available, the Coinsurance percentage will be based on the daily charge for room and board for the Hospital's lowest rate private room.  If a facility contains only private rooms, coverage will be limited to the Coinsurance Percentage shown in the Schedule for a private room.

2.  **Intensive or Specialized Care Unit:**  Provided four or more hours of nursing care is being provided each day, the Coinsurance Percentage for each day of Confinement, up to 3 times the average semi-private room rate.  If the Hospital does not have semiprivate rooms available, the amount payable will be 3 times the daily charge for room and board at the Hospital's lowest rate private room.

3.  **Emergency Room Treatment**:  The Coinsurance percentage for services, supplies and treatment.

4.  **Miscellaneous Medical Services:**  The Coinsurance Percentage for services and supplies provided on an inpatient basis in a Hospital. Miscellaneous charges do not include charges for a telephone, radio, television, extra beds or cots, meals for guests, take home items, or other items of convenience.

5.  **Outpatient Hospital Services:**  The Coinsurance Percentage for charges made by a Hospital when received on an outpatient basis, excluding professional services.

### B)  COVERED EXPENSES FOR TREATMENT

1.  **Doctor Services:**  The Coinsurance Percentage for treatment provided by a Doctor.  This benefit is not payable for treatment provided by a member of your Immediate Family.

2.  **Therapist Services:**  The Coinsurance Percentage for treatment provided by a therapist for diagnosis and rehabilitative treatment.  This benefit is not payable for treatment provided by a member of your immediate family.

### C)  OTHER COVERED EXPENSES

1.  **Ambulatory Surgical Center:**  The Coinsurance Percentage for treatment or services in a state-approved freestanding Ambulatory Surgical Center that is not part of a Hospital.

2.  **Anesthetics:**  The Coinsurance Percentage of the amount payable to the Doctor performing the surgery for anesthetics and their administration.  The Coinsurance Percentage specific to this benefit is shown in the Schedule.  This includes coverage for payment of anesthesia and Hospital or facility charges for services

AH-60001-AR                                        14                                 Essential Plus

performed in a Hospital or ambulatory surgical facility in connection with dental procedures for children below the age of nine years, persons with serious mental or physical conditions, and persons with significant behavioral problems, where the provider treating the patient involved certifies that, because of the patient's age, condition or problem, hospitalization or general anesthesia is required in order to safely and effectively perform the procedures.

3. **Assistant Surgeon:** The Coinsurance Percentage of the amount payable to the Doctor performing the surgery for a Doctor assisting in the performance of a surgery. The Coinsurance Percentage specific to this benefit is shown in the Schedule.

4. **Surgeon's Assistant:** The Coinsurance Percentage of the amount payable to the Doctor performing the surgery for a Doctor assisting such Doctor. The Coinsurance Percentage specific to this benefit is shown in the Schedule.

5. **Blood or Blood Plasma:** The Coinsurance Percentage, if not replaced.

6. **Artificial Limbs or Eyes:** The Coinsurance Percentage.

7. **Casts, Non-Dental Splints, Trusses, Crutches, or Non-Orthodontic Braces:** The Coinsurance Percentage.

8. **Equipment Rental:** The Coinsurance Percentage for a wheelchair, hospital-type bed or similar durable medical equipment, not to exceed the purchase price of such equipment.

9. **Oxygen:** The Coinsurance Percentage for oxygen and rental of equipment for the administration of oxygen, not to exceed the purchase price of such equipment.

10. **Complications of Pregnancy:** Treatment for Complications of Pregnancy on the same basis as any other Sickness.

11. **X-Ray and Laboratory Tests:** The Coinsurance Percentage for X-Ray and laboratory on an outpatient basis.

12. **Prescription or Legend Drugs:** The Coinsurance Percentage when prescribed on an inpatient basis for a Covered Injury or Sickness.

13. **Dental Treatment:** The Coinsurance Percentage for treatment or care required as a result of a Covered Injury to a tooth that is natural, free of disease, and vital where the major portion of the tooth is present regardless of fillings or caps.

14. **Cosmetic or Reconstructive Surgery (Except Breast Reconstructive Surgery):** The Coinsurance Percentage for cosmetic or reconstructive surgery and complications of cosmetic procedures when services and treatment are:

   a. Incidental to or follows a Covered Injury or Sickness occurring while this coverage is in force; or

   b. Performed due to a congenital defect or birth anomaly of a Covered Person born while this coverage is in force, including but not limited to the necessary care and treatment needed for individuals born with a cleft lip and cleft palate, of a newborn child, foster child or adopted child.

15. **Breast Reconstructive Surgery:** The Coinsurance Percentage for a female Covered Person who undergoes a covered mastectomy surgery while such person's coverage under this Policy is in force. Benefits payable include:

a.  Reconstructive surgery of the breast on which the mastectomy has  been performed;

b.  Surgery and reconstruction of the other breast for the purpose of obtaining a symmetrical appearance; and

c.  Prostheses and for treatment for physical complications related to the mastectomy.

16. **Mammography:**   The  Coinsurance  Percentage  for  low-dose  screening mammography as follows, not to exceed the Maximum Benefit Amount shown  in the Schedule:

a.  One or more mammograms a year, as recommended by a Doctor, for any woman who is at risk for breast cancer.  For purposes of this subdivision, a woman is at risk for breast cancer if any one or more of the following is true:

   i.   The woman has a personal history of breast cancer;

   ii.  The woman has a personal history of biopsy-proven benign breast disease;

   iii. The woman's mother, sister, or daughter has or has had breast cancer; or

   iv.  The woman has not given birth prior to age 30;

b.  One baseline mammogram for any woman 35 through 39 years of age, inclusive;

c.  A mammogram every other year for any woman 40 through 49 years of age, inclusive, or more frequently upon recommendation of a Doctor; and

d.  A mammogram every year for any woman 50 years of age or older.

e.  diagnostic mammography at any age when prescribed by the woman's Doctor.

Insurance coverage for screening mammograms will not prejudice coverage for diagnostic mammograms as recommended by the woman's Doctor.

"Diagnostic mammography" means a problem-solving radiologic procedure of higher intensity than screening mammography provided to women who are suspected to have breast pathology.   Patients are usually referred for analysis of palpable abnormalities or for further evaluation of mammographically detected abnormalities. All images are immediately reviewed by the Doctor interpreting the study, and additional views are obtained as needed.   Physical exam of the breast by the interpreting Doctor to correlate the radiologic findings is often performed as part of the study.

These charges are not subject to the Deductible.

17. **Clinical Trials:**  Charges for participation in Phase II, Phase III, and Phase IV-covered Clinical Trials who meet protocol requirements of the trials and provide informed consent.  Only Medically Necessary costs associated with participation in a covered clinical trial, including those related health care services typically provided absent a clinical trial, the diagnosis and treatment of complications, and medically necessary monitoring will be covered and only to the extent that such costs have not been or are not funded by the national agencies, commercial manufacturers, distributors, or other research sponsors of participants in Clinical

Trials. This provision will not cover: (a) non-FDA approved drugs provided or made available to an insured who received the drug during a covered clinical trial after the clinical trial has been discontinued; (b) services that are not health care services; (c) services provided solely to satisfy data collection and analysis needs; (d) services related to investigational drugs and devices; and (e) services that are not provided for the direct clinical management of the patient. The Company can deny any claim where covered services under this provision and non-covered services are not separated.

18. **Temporomandibular:** The Coinsurance Percentage for procedures involving any bone or joint of the jaw, face, or head, so long as the procedure is Medically Necessary to treat a condition which prevents normal functioning of the particular bone or joint involved and the condition is caused by congenital deformity, disease, or traumatic Injury. Authorized therapeutic procedures include splinting and the use of intraoral prosthetic applies to reposition the bones. However, this does not include coverage for orthodontic braces, crowns, dentures, treatment for periodontal disease, dental root form implants or root canals.

19. **Diabetic Benefit:** The Coinsurance Percentage for medical coverage for Medically Necessary equipment, supplies, and services for the treatment of Type I, Type II, and gestational diabetes, when prescribed by a Doctor.

Self-management training shall include coverage for one (1) per lifetime training program per insured for diabetes self-management training when Medically Necessary as determined by a Doctor and when provided by an appropriately licensed health care professional upon certification by the health care professional providing the training that the insured patient has successfully completed the training. In addition to the one (1) lifetime training program, additional diabetes self-management training may be provided in the event that a Doctor prescribes additional diabetes self-management training and it is Medically Necessary because of a significant change in the insured's symptoms or conditions. A licensed health care professional shall only provide diabetes self-management training within his or her scope of practice after having demonstrated expertise in diabetes care and treatment and after having completed an educational program required by his or her licensing board when that program is in compliance with the National Standards for Diabetes Self-Management Education Program as developed by the American Diabetes Association. Diabetes self-management training shall be provided only upon prescription by a Doctor.

Diabetes Self-Management Training means instruction in an inpatient or outpatient setting, including medical nutrition therapy, relating to diet, caloric intake and diabetes management but excluding programs which the primary purpose is weight reduction, when the instruction is provided in accordance with a program in compliance with the National Standards for Diabetes Self-Management Education Program developed by the American Diabetes Association.

20. **Ambulance:** Up to the Maximum Benefit amount shown in the Schedule for this benefit for local licensed ground ambulance service or air ambulance service within the 48 contiguous states to the nearest Hospital qualified to treat the covered Injury or Sickness. Such service must be Medically Necessary due to a sudden and unexpected Injury or Sickness that involves a life-threatening element.

21. **Routine Child Health Care:** The Coinsurance Percentage for 20 visits at the approximate age intervals of: birth; 2 weeks; 2 months, 4 months, 6 months, 9 months, 12 months, 15 months, and 18 months; 2 years, 3 years, 4 years, 5 years,

6 years, 8 years, 10 years, 12 years, 14 years, 16 years, and 18 years, that include a history, a physical examination, a development assessment, anticipatory guidance and appropriate immunizations and laboratory tests consistent with the Recommendations of Preventative Pediatric Health Care of the American Academy of Pediatrics from the moment of birth to age 18. These charges, with the exception of immunizations, are subject to the Deductible.

22. **Organ or Tissue Transplants:** The Coinsurance Percentage for an organ or tissue transplant, up to the Lifetime Maximum Amount shown in the Schedule for this benefit. This benefit shall include all expenses related to the transplant before the transplant is performed, for the procurement of the donor organ or tissue, including the Hospital expenses of the donor, and for follow-up care, including any complications while this coverage is in force.

Covered Expenses do not include organ or tissue transplants which:

a. Are animal-to-human transplants;

b. Use artificial or mechanical organs;

c. Are Experimental or Investigative; or

d. Are not generally accepted by the medical community as an effective treatment for a covered Injury or Sickness.

23. **Home Health Care:** Charges for home health care, up to the Maximum Benefit Amount and for the Maximum Benefit Period shown in the Schedule for this benefit, for the following:

a. Part-time or intermittent home nursing care by, or under the direction of, a graduate registered Nurse (RN);

b. Part-time or intermittent Home Health Aide services that consist only of care for the Covered Person and which are Medically Necessary, as part of the Home Health Care Plan. The services must be under the direction of a Nurse or social worker;

c. Physical, respiratory, occupational, or speech therapy performed by a licensed therapist for rehabilitative treatment;

d. Nutrition counseling provided by or under the direction of a registered dietician as part of the Home Health Care Plan; or

e. The evaluation of the need for and development of a plan by a Doctor, Nurse or social worker. Such services must be requested by the Doctor and approved by us. Review of Medical Necessity may be periodically required.

24. **Skilled Nursing Facility Confinement:** Daily charges for room and board while a Covered Person is confined as a registered bed patient in the facility. The Maximum Benefit Amount and Maximum Days for this benefit are shown in the Schedule. Such Confinement must: (i) start within 14 days after the end of a covered Hospital Confinement of at least 3 continuous days; and (ii) be ordered by a Doctor to convalesce from an Injury or Sickness that caused the prior Hospital Confinement.

25. **Hospice Care:** Hospice care and services incurred for a terminally ill Covered Person with a life expectancy of 6 months or less, up to the Maximum Benefit Amount shown in the Schedule for this benefit. Covered Expenses include charges incurred for care and services when provided by an agency licensed or

certified to provide hospice services, including the following:

a. Part-time or intermittent home nursing care by, or under the direction of a Nurse;

b. Physical, respiratory or speech therapy performed by a licensed therapist;

c. Nutrition counseling provided by or under the direction of a registered dietitian; and

d. Counseling by a licensed social worker, pastoral counselor for the Covered Person or a member of the Immediate Family, the primary care giver and individuals with significant personal ties to a Covered Person who is terminally ill.

Hospice services must be:

a. Under active management through an agency licensed or certified to provide hospice services and which is responsible for coordinating all such services; and

b. Provided only if the Doctor submits written certification to Us that the Covered Person is terminally ill with a life expectancy of 6 months or less. Review of Medically Necessity may be periodically required.

This benefit does not include the services of volunteers or persons who do not regularly charge for their services.

26. **AIDS:** The Coinsurance Percentage for the treatment of Acquired Immune Deficiency Syndrome (AIDS) or any complication or condition caused by, resulting from or related to AIDS or HIV, up to the Lifetime Maximum Amount shown in the Schedule for this benefit.

27. **Foreign Travel:** After satisfying the Deductible specific to this benefit, We will pay the Coinsurance Percentage for medical care while in a foreign country, up to the Lifetime Maximum Amount shown in the Schedule for this benefit. The Covered Person's primary residence must be in the United States and treatment rendered for an Injury or the sudden and unexpected onset of a Sickness requiring immediate medical attention and be provided within the first 90 days of the Covered Person's trip outside the United States. The Deductible for this benefit is shown in the Schedule.

28. **Knee Injury or Disorder**: The Coinsurance Percentage payable for the treatment of Knee Injury or disorder. This does not include charges incurred to diagnose or treat an Injury or disorder of the knee including surgery in excess of the Knee Injury or Disorder Maximum shown in the Schedule. The knee consists of the bones, muscles, cartilage, ligaments, membranes and menisci of the anterior aspect of the leg at the articulation of the femur and tibia.

29. **Gallbladder Surgery**: The Coinsurance Percentage for surgery for cholecystectomy and any type of surgical procedure to diagnose or treat a disorder of the gallbladder, including any condition related to or caused by a gallstone(s) in the bile duct. Surgery includes the pre-operative and post-operative visits, testing, the services of the surgeon, assistance surgeon, anesthesiologist, radiologist, pathologist, the Hospital or outpatient facility charges, and any other charges related to the surgery or complications therefrom. Expenses do not include charges incurred in excess of the Gallbladder Surgery Maximum shown in the Schedule.

30. **Loss or Impairment of Speech or Hearing:** The Coinsurance Percentage for the Medically Necessary diagnosis and treatment of loss or impairment of speech or hearing. Covered Expenses for such treatment will be paid as they would for any other Sickness. No benefits will be paid for hearing instruments or devices. Loss or impairment of speech or hearing includes those communicative disorders generally treated by a speech pathologist or audiologist licensed by the State Board of Examiners in Speech Pathology and Audiology that fall within the scope of his area of certification.

31. **Colorectal Cancer Exams and Lab Tests:** The Coinsurance Percentage for the following colorectal cancer examinations and laboratory tests: (1) an annual fecal ocular blood test utilizing the take-home multiple sample method, or an annual fecal immunochemical test in conjunction with a flexible sigmoidoscopy every five years; (2) a double-contrast barium enema every five years; (3) a colonoscopy every ten years; and (4) any additional medically recognized screening tests for colorectal cancer required by the Director of the Department of Health, subject to the guidelines for the management or subsequent need for follow-up colonoscopy.

   These benefits will be covered for a Covered Person who is: (1) fifty years of age or older; (2) less than fifty years of age and a high risk for colorectal cancer according to the current American Cancer Society colorectal cancer screening guidelines; and (3) experiencing the following symptoms of colorectal cancer as determined by a Doctor: (a) bleeding from the rectum or blood in the stool; or (b) a change in bowel habits, such as diarrhea, constipation, or narrowing of the stool, that lasts more than five days.

32. **Medically Necessary Foods:** The Coinsurance Percentage for medical foods and low protein modified food products for the treatment of a Covered Person inflicted with phenylketonuria, galactosemia, organic acidemias, and disorders of amino acid metabolism if:
   a. The medical food or low protein modified food products are prescribed as Medically Necessary for the therapeutic treatment of phenylketonuria, galactosemia, organic acidemias, and disorders of amino acid metabolism;
   b. The products are administered under the direction of a Doctor;
   c. The cost of the medical food or low protein modified food products for an individual or a family with a dependent person or persons exceeds the income tax credit of two thousand four hundred dollars ($2,400) per year per person allowed under Arkansas law.

   This includes coverage for amino acid modified preparations, low protein modified food products, and any other special dietary products and formulas prescribed under the direction of a Doctor for the therapeutic treatment of phenylketonuria, galactosemia, organic acidemias, and disorders of amino acid metabolism.

33. **Prostate Cancer Screening:** The Coinsurance Percentage for screening for the early detection of prostate cancer in men forty (40) years of age and older according to the National Comprehensive Cancer Network guidelines and performed by a qualified medical professional. If a medical practitioner recommends that an insured, undergo a prostate specific antigen blood test, coverage may not be denied on the ground that the insured has already had a digital rectal examination and the examination result was negative. These charges are not subject to the Deductible.

34. **Hearing Aids:** The Coinsurance Percentage for coverage for a hearing aid or hearing instrument sold by a professional licensed by the state to dispense a

hearing aid or hearing instrument, not to exceed one thousand four hundred dollars ($1,400) per beginning on the first day of coverage. These charges are not subject to the deductibles or any copayment requirements.

35. **In Vitro Fertilization**:   The Coinsurance Percentage for in vitro fertilization services performed at a medical facility certified by the Department of Health, or a facility certified as conforming to the American College of Obstetricians and Gynecologists Guidelines for In Vitro Fertilization, or which meets the American Fertility Society standards.

36. **Hospital Newborn Coverage:** The Coinsurance Percentage for routine nursery care and pediatric charges for up to five (5) full days in a Hospital nursery or until discharge of the mother of the newborn from the Hospital following the birth of the child, whichever is the later; and any testing of a newborn child hereafter mandated by law.

## III. ALLOCATION AND APPORTIONMENT OF BENEFITS

We reserve the right to allocate the Deductible to any Covered Expenses and to apportion the payment of benefits between You and any person designated by You.   Such allocation and apportionment shall be conclusive and shall be binding upon You and all assignees.

## IV. EXTENSION OF COVERAGE

If You or Your Covered Dependent are Totally Disabled and receiving benefits for a Hospital Confinement on the date that this Policy terminates or such dependents coverage under this Policy terminates, benefits will continue in accordance with the terms of this Policy for as long as that Confinement remains continuous and You or Your Covered Dependent are Totally Disabled by reason of such Injury or Sickness.   However, in no event will coverage continue beyond the end of the 60 days following the date coverage ends or the Expiration Date of the Covered Person's coverage.   Benefits payable after the Expiration Date or when a Covered Person's coverage ends are subject to a new Deductible and satisfaction of the Coinsurance Limit.

## LIMITATIONS AND EXCLUSIONS

We will not pay for loss or expense caused by or resulting from any of the following:

1. Expenses for the treatment of Preexisting Conditions, as defined in the Preexisting Conditions Limitation provision;

2. Expenses incurred prior to the Effective Date of a Covered Person's coverage or incurred after the Expiration Date, regardless of when the condition originated. except in accordance with the Extension of Benefits provision;

3. Expenses to treat complications resulting from treatment of conditions which are not covered under the Policy.  This does not include Emergency Services as defined;

4. Experimental or Investigative services or treatment.   "Experimental or Investigative" means services, supplies, devices, treatments, procedures, or drugs that have no been recognized as generally accepted medical treatments.   Our determination of what constitutes Experimental or Investigative treatment will be based on, but not limited to, the approval of treatments from the American Medical Association, the U.S. Food and Drug Administration, and the Administrative Procedure Act.  Experimental or Investigative includes treatments that have not been demonstrated through sufficient peer-reviewed medical literature to be safe and effective for the proposed use;

5. Expenses for purposes determined by Us to be educational, except when specifically

covered;

6. Amounts in excess of the Usual, Reasonable and Customary charges made for covered services or supplies;

7. Expenses You or Your Covered Dependent are not required to pay, or which would not have been billed, if no insurance existed;

8. Expenses to the extent that they are paid or payable under other valid or collectible group insurance or medical prepayment plan;

9. Charges that are eligible for payment by Medicare or any other government program except Medicaid;

10. Costs for care in government institutions unless You or Your Covered Dependent are obligated to pay for such care;

11. Expenses for the treatment of an occupational Injury or Sickness which are paid under any Workers' Compensation Act only to the extent such services or supplies are the liability of the employee, employer, or workers' compensation insurance carrier according to a final adjudication under any Workers' Compensation ;

12. Medical expenses which are payable under any automobile insurance policy without regard to fault (does not apply in any state where prohibited);

13. Charges incurred by a Covered Person while on active duty in the armed forces.  Upon written notice to Us of entry into such active duty, the unused premium will be returned to You on a pro rated basis;

14. Expenses resulting from a declared or undeclared war, or from voluntary participation in a riot or insurrection;

15. Expenses incurred while engaging in an illegal act or occupation or during the commission, or the attempted commission, of a felony or assault;

16. Expenses for the treatment of normal pregnancy or childbirth, except for Complications of Pregnancy;

17. Charges for a Covered Dependent  who is a newborn child not yet discharged from the Hospital except as specifically covered under the Policy, This does not apply to charges that are Medically Necessary to treat premature  birth, congenital Injury or Sickness, or Sickness or Injury sustained during or after birth;

18. Charges for voluntary termination of normal pregnancy, normal childbirth or elective cesarean section;

19. The cost of any drug, including birth control pills, supply, treatment or procedure that prevents conception or childbirth;

20. Expenses for the diagnosis and treatment of infertility, including but not limited to any attempt to induce fertilization by any method, artificial insemination or similar procedures, whether the Covered Person is a donor, recipient or surrogate;

21. Expenses for sterilization or reversal of sterilization;

22. Services, supplies or treatment related to sex transformation or sex dysfunction or inadequacies;

23. Costs for physical exams or other services not needed for medical treatment, except as specifically covered;

24. Expenses for prophylactic treatment, including surgery or diagnostic testing, except as specifically covered;

25. Expenses for the treatment of Mental Illness or Nervous Disorders, including, but not limited to, neurosis, psychoneurosis, psychopathy, psychosis, attention deficit disorder,

autism, hyperactivity, or mental or emotional disease or disorder of any kind, unless specifically covered;

26. The costs of treatment of alcoholism or alcohol abuse, chemical dependency, substance abuse or drug addiction, unless specifically covered;

27. Expenses incurred in the treatment of Injury or Sickness sustained by voluntary use of alcohol, illegal drugs or hallucinogenics;

28. The cost of programs, treatment, or procedures for tobacco use cessation;

29. Expenses resulting from suicide or attempted suicide or intentionally self-inflicted Injury, whether while sane or insane;

30. The cost of dental treatment or care or orthodontia or other treatment involving the teeth or supporting structures, except as specifically covered;

31. Expenses incurred in the treatment by any method for jaw joint problems including temporomandibular joint dysfunction (TMJ), TMJ pain syndromes, craniomandibular disorders, myofacial pain dysfunction or other conditions of the joint linking the jaw bone and skull and the complex of muscles, nerves and other tissues related to the joint, except as specifically covered;

32. Expenses of radial keratotomy or correction of refractive error, eye refractions, vision therapy, routine vision exams to asses the initial need for, or changes to prescription eyeglasses or contact lenses, the purchase, fitting or adjustment of eyeglasses or contact lenses, or treatment of cataracts;

33. The costs for routine hearing exams to assess the need for or change to hearing aids, or the purchase, fittings or adjustments of hearing aids except as specifically covered;

34. The costs of cosmetic or reconstructive procedures, services or supplies, except as specifically covered;

35. Charges for breast reduction or augmentation or complications arising from these procedures;

36. Outpatient Prescription or Legend Drugs, medications, vitamins and mineral or food supplements, including pre-natal vitamins, or any over-the-counter medicines, whether or not ordered by a Doctor;

37. The cost of any drug or other item used to treat hair loss;

38. Expenses incurred in the treatment of weak, strained, flat, unstable or unbalanced feet, metatarsalgia, bunions, spurs, or the removal of corns, calluses or toenails, unless specifically for the treatment of a metabolic or peripheral vascular disease or for the prompt repair of an Injury sustained while coverage is in force for the Covered Person;

39. Expenses incurred in the treatment of acne or varicose veins;

40. The costs of weight loss programs, diets, or treatment of obesity;

41. Transportation charges, except as specifically covered;

42. Expenses for rest or recuperation cures or care in an extended care facility, convalescent nursing home, a facility providing rehabilitative treatment, Skilled Nursing Facility, or home for the aged, whether or not part of a Hospital, unless specifically covered;

43. Costs of services or supplies for personal comfort or convenience, including homemaker services or supportive services focusing on activities of daily life that do not require the skills of qualified technical or professional personnel, including but not limited to bathing, dressing, feeding, routine skin care, bladder care and administration of oral medications or eye drops, except as specifically covered;

44. Costs of services or supplies furnished or provided by a member of Your Immediate Family;

45. Expenses for diagnosis or treatment of a sleeping disorder;

46. Expenses incurred in the treatment of Injury or Sickness resulting from participation in skydiving, scuba diving, hang or ultra light gliding, riding an all-terrain vehicle such as a dirt bike, snowmobile or go-cart, racing with a motorcycle, boat or any form of aircraft, any participation in sports for pay or profit, or participation in rodeo contests;

47. Expenses for the purchase of a noninvasive osteogenesis stimulator (bone stimulator);

48. The costs of services or supplies of a common household use, such as exercise cycles, air or water purifiers, air conditioners, allergenic mattresses, and blood pressure kits;

49. Expenses for surgery during the first 6 months after the Effective Date of Coverage for a Covered Person for a total or partial hysterectomy, unless it is Medically Necessary due to a diagnosis or carcinoma (subject to all other coverage provisions, including but not limited to, the Pre-Existing Conditions exclusion); tonsillectomy, adenoidectomy, repair of deviated nasal septum or any type of surgery involving the sinus, myringotomy, tympanotomy, herniorraphy, or cholecystectomies;

50. Knee Injury or Disorder: Expenses do not include charges incurred to diagnose or treat an Injury or disorder of the knee including surgery in excess of the Knee Injury or Disorder Maximum shown in the schedule;

51. Gallbladder Surgery: Expenses do not include charges incurred in excess of the Gallbladder Surgery Maximum shown in the Schedule;

52. Participating in Interscholastic Intercollegiate Organized Competitive Sports;

53. Medical care, treatment, services, or supplies received outside of the United States or its possessions;

## PRE-EXISTING CONDITIONS LIMITATION

We will not provide benefits for any loss caused by or resulting from, a Pre-Existing Condition.

**"Pre-Existing Conditions"** mean any medical condition or Sickness for which medical advice, care, diagnosis, treatment, consultation, or medication was recommended by or received from a Doctor within the 5 years immediately prior to a Covered Person's Effective Date of Coverage. This does not apply to congenital birth defects or anomalies of newborn infants, foster children and adopted children when you have paid the additional premium within 30 days of acquiring such dependent.

**"Consultation"** means evaluation, diagnosis or medical advice was given with or without the necessity of a personal examination or visit.

## CLAIM PROVISIONS

**Notice of Claim:** When a claim arises, the claimant should notify Us or Our authorized administrator or Our authorized agent of the Loss in writing. This written notice of claim must be given within 20 days after commencement of any Loss, or as soon as reasonably possible.

**Claim Forms:** After receiving notice of claim, We or Our authorized administrator will furnish the claimant with a claim form for filing proof of Loss. If this form is not received within 15 days after notice has been given, the claimant should submit written proof which covers the occurrence, the character, and the extent of the Loss for which claim is made.

**Proof of Loss:** The claimant must furnish Us or Our authorized administrator with written proof of Loss within 180 days of the Loss. Where this Policy provides for payments contingent upon a period of Confinement, these 180 days shall begin at the end of the period for which We are liable. If the claimant does not furnish proof within 180 days as required, benefits shall still be paid for that loss if: (1) it was not reasonably possible to give proof within those 180 days; and (2) proof is furnished as soon as reasonably possible and, except in the absence of legal capacity no later than 1 year after the end of those 180 days.

**Time of Payment of Claims:** We will make payment within 30 days upon receipt of due written proof of loss.

**Payment of Claims:** Payment will be made directly to You or the provider of the service, as directed by You in writing at the time of submitting proof of Loss. If You are deceased or, in Our opinion, are Incapable of giving a valid receipt for payment and if no claim has been made by a duly-appointed legal representative, We shall have the option of making payment to either: (1) the Hospital or the person who actually incurred the loss for which payment is due; or (2) Your surviving relative. Such a payment shall discharge Us from all further liability to the extent of the payment made. If any payment payable to Your estate or to a beneficiary who is a minor or otherwise not competent to give a valid release, the Company may pay an amount not exceeding $3,000 to any relative by blood or connection by marriage of the Insured or beneficiary deemed to be equitably entitled. Such a payment shall discharge the Company for all further liability to the extent of the payment made.

**Appeal of Claim Denial:** If a claim is denied, You will receive written notice giving the reason for the denial. If You wish to appeal the denial of the claim, such appeal must be submitted to us in writing within 60 days from the date of notice. You must clearly state the reason You believe the claim decision is incorrect.

**Right of Reimbursement:** If a Covered Person receives a benefit payment from a third party by judgment, settlement, compromise, or otherwise for an Injury or Sickness and we have paid benefits for the same Injury or Sickness, we reserve the right to be reimbursed from the third party in an amount equal to the amount we paid to the Covered Person, the Covered Person's parents (if the Covered Person is a minor), or the Covered Person's legal representative.

You must agree to furnish any information and assistance, or provide any documents that we may reasonably require in order for us to exercise our right of recovery, regardless of whether or not the third party admits liability, Any payment we make by mistake for a work-related Injury must be reimbursed to us when the Covered Person receives payment for such Injury from another source.

It will be assumed that the Covered Person is in receipt of the benefit payment unless such person gives us proof that payment of benefits was denied.

## GENERAL PROVISIONS

**Amendment:** We may amend or change the Policy at any time by giving written notification to the Policyholder. Insurance provided by the Policy may be amended changed or canceled without the consent of any Covered Person.

**Assignment and Claims of Creditors:** Except as provided below, benefits are not assignable. Except as otherwise provided by law, benefit payments may be exempt from legal process for debts or liabilities of a Covered Person. You may direct us to pay benefits to the person or

institution on whose charges any claim is based.  Any such payment that We make will fully discharge Us to the extent of the payment.

**Changes in Benefits:**  Changes in the benefits of a Covered Person will apply only to Covered Expenses or losses incurred after the effective date of the change.

**Clerical Error:**  Clerical errors that We or Our authorized administrator make in Your Schedule of benefits, the issuance of a Policy, or in record keeping will not afford You benefits or validate insurance for which You have not applied and paid the appropriate premium and been approved by Us.  We have the right to offset or recover from You any overpayment of benefits made due to such errors.

**Conformity With Statutes:**  Any provision of this Policy that is in conflict with the statutes of the jurisdiction in which the Policyholder is located on such date is hereby amended to conform to the minimum requirements of such statutes.

**Contract/Changes:** The effective time for any dates used shall be 12:01 A M. Standard Time at the address of the Policyholder.

**Entire Contract:** The entire contract consists of the Policy, Your application form and any other documents requested and accepted by Us.  No change in the Policy or Your coverage is valid unless approved by Our Executive Officer. Such approval must be signed by Our Executive Officer and attached to the Policy.  No broker, agent or producer can change or waive any provision of the entire contract or any of Our requirements.

**Grace Period:**  You have a 31-day Grace Period for the payment of each premium due after the first premium.  Your coverage will continue in force during the Grace Period unless You have given Us prior written notice of termination.  If such a premium is not paid by the end of the Grace Period, all such insurance will end as of the due date of such premiums, and no expenses incurred during the Grace Period will be considered for benefits.

**Incontestability:**   All statements You make will, in the absence of fraud, be deemed representations and not warranties.  No such statement will be used in defense of any claim or in a contest unless You have been given a copy.  Any misstatement or omission of information made on Your application form or on any other materials on which We relied to issue, change or increase coverage will be considered a misrepresentation and may be the basis for later rescission of coverage.  After coverage for a Covered Person has been in force for 3 years during the Covered Person's lifetime, We do not have the right to contest coverage, except for fraud or non-payment of premium.

**Legal Proceedings:**  No proceedings to obtain benefits may be brought against Us until 60 days after We have received proper written proof of Loss and any other documentation necessary to establish the benefits due.  No proceedings may be brought more than 3 years after proof is required to be filed.

**Physical Exam and Autopsy:**  We may require, at Our expense, medical examinations of any person for whom claim is made when and as often as it may reasonably require during the pendency of a claim.  We may also make an autopsy. if not forbidden by law.

**Premium Payments:**  All premiums are paid to Us, or, if We direct, to Our authorized administrator. The first premium is due on the Effective Date.  Subsequent premiums are due monthly, in advance, on the anniversary day and month of the Effective Date. Except as otherwise provided herein, all such insurance will terminate on the premium due date, except as provided in the Grace Period provision, if premiums are not paid when due.

**Premium Changes:** We will determine the premium for each Covered Person. We have the right to change premium rates on any premium due date by giving You 45 days advance written notice of such change. The premium rates will not be changed more often than once every 12 months after the first Policy anniversary date.

**Pronouns:** Whenever a personal pronoun in the masculine gender is used, it will be deemed to include the feminine also unless the context clearly indicates to the contrary.

**Rescission:** A misrepresentation or omission in the application form or other documents provided to Us may be the basis for later rescission of all coverage of all persons covered under the Policy. Rescission voids all coverage as of the Effective Date and means that no benefits will be paid to any person for any claim submitted, whether or not such claim relates to the condition about which information was misrepresented or omitted. We will refund to You premiums paid after deduction for any claims We paid.

**Workers' Compensation:** This Policy is not a substitute for Workers' Compensation insurance and does not affect any requirement for Workers' Compensation coverage.

**Misstatement of Age:** If a Covered Person's age has been misstated, premiums will be subject to an equitable adjustment. If the amount of the benefit depends upon age, then the benefit will be that which would have been payable, based upon the person's correct age.

**Reinstatement:** If any renewal premium is not paid within the time granted the Covered Person for payment, a subsequent acceptance of premium by the Company without requiring in connection therewith an application for reinstatement, shall reinstate the policy; provided, however, that if the Company requires an application for reinstatement and issues a conditional receipt for the premium tendered, the policy will be reinstated upon approval of such application by the Company or, lacking such approval, upon the forty-fifth day following the date of such conditional receipt unless the Company has previously notified the Covered Person in writing of its disapproval of such application. The reinstated policy shall cover only loss resulting from such accidental injury as may be sustained after the date of reinstatement and loss due to such sickness as may begin more than ten (10) days after such date. In all other respects, the Covered Person and the Company shall have the same rights thereunder as they had under the policy immediately before the due date of the defaulted premium, subject to any provisions endorsed hereon or attached hereto in connection with the reinstatement.

**Refund of unearned premiums upon death of insured.** Upon the death of the Covered Person, the proceeds payable to the insured or his or her estate under the Policy shall include premiums paid for any period beyond the end of the Policy month in which the death occurred. The unearned premiums shall be paid in lump sum on a date no later than thirty (30) days after the proof of the Covered Person's death has been furnished to the Company.

**FILED**

**Starr Indemnity & Liability Company**

Dallas, Texas
Administrative Office: 399 Park Avenue, 8th Floor, New York, NY 10022

FEB - 8 2013
10:45am
DONNA HART
CLERK

## AH-60001-AR-OOC INDIVIDUAL SHORT TERM MEDICAL EXPENSE COVERAGE

### OUTLINE OF COVERAGE

**Read Your Policy Carefully.** This outline of coverage provides a very brief description of the important features of your policy. This is not the insurance contract and only the actual policy provisions will control. The policy itself sets forth in detail the rights and obligations of both you and your insurance company. It is, therefore, important that you READ YOUR POLICY CAREFULLY!

Individual short term medical expense coverage is designed to provide limited duration for hospital, medical, and surgical expenses incurred as a result of a covered accident or sickness. Coverage is provided for daily hospital room and board, miscellaneous hospital services, surgical services, anesthesia services, in-hospital medical services, and out-of-hospital care, subject to any deductibles, copayment provisions, or other limitations that may be set forth in the policy. Basic hospital or basic medical insurance coverage is not provided.

This Policy limits Covered Expenses to Usual, Reasonable and Customary charges which may be less than the billed charges. This means that if a provider charges more than the Usual, Reasonable and Customary charge, you may be responsible for the difference. This plan pays an overall lifetime maximum of $2,000,000 for each insured. However certain benefits have individual limitations as shown below and in the Policy, which are included in the overall lifetime maximum.

The following is a brief description of the Usual, Reasonable and Customary charges for Covered Expenses covered under the Policy. You are responsible for your deductible and any coinsurance percentages up to an out of pocket maximum of $5,000. See your Policy for a complete list of all benefits.
- Hospital Charges —medical care and treatment.
- Ambulatory Surgical Center charges.
- Intensive Care — up to three times the average semi-private room rate.
- Physicians Services for diagnosis, treatment and surgery.
- Anesthesia, oxygen, casts, splints, crutches, braces, surgical dressings, artificial limbs or eyes, rental of necessary medical supplies.
- Blood or blood derivatives and their administration.
- X-ray exams, laboratory tests and analyses.
- X-ray and radioactive isotope therapy.
- Ambulance Services — $250 per trip
- Acquired Immune Deficiency Syndrome (AIDS), up to $10,000.
- Home Health Care
- Hospice .
- Mammography/Pap Smear screens and exams
- Breast Reconstructive Surgery

**Usual, Reasonable and Customary** means:
1. With respect to fees or charges, fees for medical services or supplies which are:
   a. Usually charged by the provider for the service or supply given; and
   b. The average charged for the service or supply in the locality in which the service or supply is received, whichever is less; or
2. With respect to treatment or medical services, treatment which is reasonable in relationship to the service or supply given and the severity of the condition.

## PRE-ADMISSION CERTIFICATION NOTICE
This plan requires a Pre-Admission Certification by a Professional Review Organization prior to in-patient Hospitalization or surgery. A Covered Person must call the Professional Review Organization:
1. For elective or non-emergency Hospitalization or surgery, at least 10-days prior to the date of proposed

AH-60001-AR-OOC                    1                         Essential Plus

EXHIBIT
5

'Hospitalization;

2. Within 48-hours from the time the person is in stable condition following an emergency admission, or as soon as reasonably possible if the person's medical condition prevents or delays such notification; or

3. Within 48-hours of delivery (96 hours for cesarean section) for complicated childbirth or as soon as reasonably possible.

Non-compliance with the Pre-Admission Certification procedure will result in a **reduction in benefits of 50%**, unless the Covered Person is incapacitated and unable to contact Us in such cases, the Covered Person must contact Us as soon as possible.

**Exclusions and Limitations.**
We will not pay for loss or expense caused by or resulting from any of the following:

1. Expenses for the treatment of Preexisting Conditions, as defined in the Preexisting Conditions Limitation provision;

2. Expenses incurred prior to the Effective Date of a Covered Person's coverage or incurred after the Expiration Date, regardless of when the condition originated. except in accordance with the Extension of Benefits provision;

3. Expenses to treat complications resulting from treatment of conditions which are not covered under the Policy. This does not include Emergency Services as defined;

4. Experimental or Investigative services or treatment. "Experimental or Investigative" means services, supplies, devices, treatments, procedures, or drugs that have no been recognized as generally accepted medical treatments. Our determination of what constitutes Experimental or Investigative treatment will be based on, but not limited to, the approval of treatments from the American Medical Association, the U.S. Food and Drug Administration, and the Administrative Procedure Act.  Experimental or Investigative includes treatments that have not been demonstrated through sufficient peer-reviewed medical literature to be safe and effective for the proposed use;

5. Expenses for purposes determined by Us to be educational, except when specifically covered;

6. Amounts in excess of the Usual, Reasonable and Customary charges made for covered services or supplies;

7. Expenses You or Your Covered Dependent are not required to pay, or which would not have been billed, if no insurance existed;

8. Expenses to the extent that they are paid or payable under other valid or collectible group insurance or medical prepayment plan;

9. Charges that are eligible for payment by Medicare or any other government program except Medicaid;

10. Costs for care in government institutions unless You or Your Covered Dependent are obligated to pay for such care;

11. Expenses for the treatment of an occupational Injury or Sickness which are paid under any Workers' Compensation Act only to the extent such services or supplies are the liability of the employee, employer, or workers' compensation insurance carrier according to a final adjudication under any Workers' Compensation ;

12. Medical expenses which are payable under any automobile insurance policy without regard to fault (does not apply in any state where prohibited);

13. Charges incurred by a Covered Person while on active duty in the armed forces.  Upon written notice to Us of entry into such active duty, the unused premium will be returned to You on a pro rated basis;

14. Expenses resulting from a declared or undeclared war, or from voluntary participation in a riot or insurrection;

15. Expenses incurred while engaging in an illegal act or occupation or during the commission, or the attempted commission, of a felony or assault;

16. Expenses for the treatment of normal pregnancy or childbirth, except for Complications of Pregnancy;

17. Charges for a Covered Dependent  who is a newborn child not yet discharged from the Hospital except as specifically covered under the Policy, This does not apply to charges that are Medically Necessary to treat premature birth, congenital Injury or Sickness, or Sickness or Injury sustained during or after birth;

18. Charges for voluntary termination of normal pregnancy, normal childbirth or elective cesarean section;

19. The cost of any drug, including birth control pills, supply, treatment or procedure that prevents conception or childbirth;

20. Expenses for the diagnosis and treatment of infertility, including but not limited to any attempt to induce fertilization by any method, artificial insemination or similar procedures, whether the Covered Person is a donor, recipient or surrogate;

21. Expenses for sterilization or reversal of sterilization;

22. Services, supplies or treatment related to sex transformation or sex dysfunction or inadequacies;

23. Costs for physical exams or other services not needed for medical treatment, except as specifically covered;

24. Expenses for prophylactic treatment, including surgery or diagnostic testing, except as specifically covered;

25. Expenses for the treatment of Mental Illness or Nervous Disorders, including, but not limited to, neurosis, psychoneurosis, psychopathy, psychosis, attention deficit disorder, autism, hyperactivity, or mental or emotional disease or disorder of any kind, unless specifically covered;

26. The costs of treatment of alcoholism or alcohol abuse, chemical dependency, substance abuse or drug addiction, unless specifically covered;

27. Expenses incurred in the treatment of Injury or Sickness sustained by voluntary use of alcohol, illegal drugs or hallucinogenics;

28. The cost of programs, treatment, or procedures for tobacco use cessation;

29. Expenses resulting from suicide or attempted suicide or intentionally self-inflicted Injury, whether while sane or insane;

30. The cost of dental treatment or care or orthodontia or other treatment involving the teeth or supporting structures, except as specifically covered;

31. Expenses incurred in the treatment by any method for jaw joint problems including temporomandibular joint dysfunction (TMJ), TMJ pain syndromes, craniomandibular disorders, myofacial pain dysfunction or other conditions of the joint linking the jaw bone and skull and the complex of muscles, nerves and other tissues related to the joint, except as specifically covered;

32. Expenses of radial keratotomy or correction of refractive error, eye refractions, vision therapy, routine vision exams to asses the initial need for, or changes to prescription eyeglasses or contact lenses, the purchase, fitting or adjustment of eyeglasses or contact lenses, or treatment of cataracts;

33. The costs for routine hearing exams to assess the need for or change to hearing aids, or the purchase, fittings or adjustments of hearing aids except as specifically covered;

34. The costs of cosmetic or reconstructive procedures, services or supplies, except as specifically covered;

35. Charges for breast reduction or augmentation or complications arising from these procedures;

36. Outpatient Prescription or Legend Drugs, medications, vitamins and mineral or food supplements, including pre-natal vitamins, or any over-the-counter medicines, whether or not ordered by a Doctor;

37. The cost of any drug or other item used to treat hair loss;

38. Expenses incurred in the treatment of weak, strained, flat, unstable or unbalanced feet, metatarsalgia, bunions, spurs, or the removal of corns, calluses or toenails, unless specifically for the treatment of a metabolic or peripheral vascular disease or for the prompt repair of an Injury sustained while coverage is in force for the Covered Person;

39. Expenses incurred in the treatment of acne or varicose veins;

40. The costs of weight loss programs, diets, or treatment of obesity;

41. Transportation charges, except as specifically covered;

42. Expenses for rest or recuperation cures or care in an extended care facility, convalescent nursing home, a facility providing rehabilitative treatment, Skilled Nursing Facility, or home for the aged, whether or not part of a Hospital, unless specifically covered;

43. Costs of services or supplies for personal comfort or convenience, including homemaker services or supportive services focusing on activities of daily life that do not require the skills of qualified technical or professional personnel, including but not limited to bathing, dressing, feeding, routine skin care, bladder care and administration of oral medications or eye drops, except as specifically covered;

44. Costs of services or supplies furnished or provided by a member of Your Immediate Family;

45. Expenses for diagnosis or treatment of a sleeping disorder;

46. Expenses incurred in the treatment of Injury or Sickness resulting from participation in skydiving, scuba diving, hang or ultra light gliding, riding an all-terrain vehicle such as a dirt bike, snowmobile or go-cart, racing with a motorcycle, boat or any form of aircraft, any participation in sports for pay or profit, or participation in rodeo contests;

47. Expenses for the purchase of a noninvasive osteogenesis stimulator (bone stimulator);

48. The costs of services or supplies of a common household use, such as exercise cycles, air or water purifiers. air conditioners, allergenic mattresses, and blood pressure kits;

49. Expenses for surgery during the first 6 months after the Effective Date of Coverage for a Covered Person for a total or partial hysterectomy, unless it is Medically Necessary due to a diagnosis or carcinoma (subject to all other coverage provisions, including but not limited to, the Pre-Existing Conditions exclusion); tonsillectomy, adenoidectomy, repair of deviated nasal septum or any type of surgery involving the sinus, myringotomy, tympanotomy, herniorraphy, or cholecystectomies;

50. Knee Injury or Disorder: Expenses do not include charges incurred to diagnose or treat an Injury or disorder of the knee including surgery in excess of the Knee Injury or Disorder Maximum shown in the schedule;

51. Gallbladder Surgery: Expenses do not include charges incurred in excess of the Gallbladder Surgery Maximum shown in the Schedule;

52. Participating in Interscholastic Intercollegiate Organized Competitive Sports;

53. Medical care, treatment, services, or supplies received outside of the United States or its possessions;

## PRE-EXISTING CONDITIONS LIMITATION

We will not provide benefits for any loss caused by or resulting from, a Pre-Existing Condition.

**"Pre-Existing Conditions"** mean any medical condition or Sickness for which medical advice, care, diagnosis, treatment, consultation, or medication was recommended by or received from a Doctor within the 5 years immediately prior to a Covered Person's Effective Date of Coverage.  This does not apply to congenital birth defects or anomalies of newborn infants, foster children and adopted children when you have paid the additional premium within 30 days of acquiring such dependent.

**"Consultation"** means evaluation, diagnosis or medical advice was given with or without the necessity of a personal examination or visit.

**Renewability**
THIS IS NON-RENEWABLE SHORT-TERM INSURANCE AND MAY NOT BE RENEWED AT THE END OF THE COVERAGE PERIOD.

**Premium**
The first premium is due on the Effective Date.  Subsequent premiums are due monthly, in advance, on the anniversary date and month of the Effective Date. Except as otherwise provided herein, all such insurance will terminate on the premium due date, except as provided in the Grace Period provision, if premiums are not paid when due.

The Company will determine the premium for each Covered Person. We have the right to change premium rates on any premium due date by giving you 45-days advance written notice of such change. The premium rates may also be changed at any time the terms of the Policy are changed.

 **Co-ordinated Benefit Plans, LLC.**

4111-1493 & STT7985900

January 4, 2013

TRACY DUNCAN & WILLIAM MASTERSON
116 CHESTERFIELD STREET

BLYTHEVILLE, AR  72315

**FILED**

FEB - 8 2013
10:45 pm
DONNA HART
CLERK

RE: Med Plus Short Term Medical Policy
Policy #: STS7525500 & STT7985900

Dear Tracy & William

Co-ordinated Benefit Plans, LLC is the claims administrator on behalf of the carrier, Starr Indemnity & Liability Company. We recently received notification of treatment at Dr. Landry on February 8, 2011 & March 23, 2011.  As the claim administrator, we have reviewed the information received during the investigation of the claims in conjunction with the information submitted on the enrollment application in an effort to determine the eligibility for coverage under the plan.

On the enrollment application received, the answers to medical history questions one thru seven indicated none of the mentioned conditions currently existed or were previously treated during the specified time period.  Medical information received by our office indicates that question five was answered erroneously.  Regrettably, we must inform you that based upon this information the carrier has elected to rescind the policy issued and any premiums paid will be refunded minus any claim payments issued.

We apologize for any inconvenience this may have caused you.

For questions:

- Regarding the status of your premium refund, please contact Health Insurance Innovations at 877-376-5831.

- Regarding questions about this letter, please contact our Customer Care Team at 877-794-6912.

Sincerely,

Co-ordinated Benefit Plans, LLC
Claims Department

cc:     Health Insurance Innovations

**EXHIBIT**
tabbies
**6**

*C B P     •     P.O. Box 26222     •     Tampa, FL 33623-6222*

West's Arkansas Code Annotated
Title 23. Public Utilities and Regulated Industries
Subtitle 3. Insurance (Chapters 60 to 109) (Refs & Annos)
Chapter 79. Insurance Policies Generally
Subchapter 1. General Provisions (Refs & Annos)

**FILED**

FEB - 8 2013

10:45 AM

DONNA HART
CLERK

A.C.A. § 23-79-107

§ 23-79-107. Misrepresentations, omissions, concealments, etc.

Currentness

(a) A statement in an application or in negotiations for a life or accident and health insurance policy or annuity contract by or in behalf of the insured or annuitant are representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless:

(1) Fraudulent; or

(2) Material either to the acceptance of the risk or to the hazard assumed by the insurer.

(b) In any action to rescind any policy or contract or to recover thereon, if any misrepresentation with respect to a medical impairment is proved by the insurer and the insured or any other person having or claiming a right under the contract shall prevent full disclosure and proof of the nature of the medical impairment, then the misrepresentation shall be presumed to have been material.

(c) In any action to rescind any policy or contract or to recover thereon, a misrepresentation is material if there is a causal relationship between the misrepresentation and the hazard resulting in a loss under the policy or contract.

**Credits**

Acts of 1989, Act 662, § 1; Acts of 2001, Act 1604, § 82, eff. Aug. 13, 2001; Acts of 2011, Act 1054, § 1, eff. July 27, 2011.

Notes of Decisions (179)

Current through end of 2011 Regular Sess., including changes made by Ark. Code Rev. Comm. received through 12/1/11.

End of Document



EXHIBIT
7

RLC/lw
5539

**FILED**

# IN THE CIRCUIT COURT FOR THE CHICKASAWBA DISTRICT
## MISSISSIPPI COUNTY, ARKANSAS
### GENERAL CIVIL DIVISION

FEB - 8 2013

10:45 Am

DONNA HART
CLERK

WILLIAM MASTERSON and
TRACY DUNCAN , husband and wife                                          **PLAINTIFFS**

VS.                          NO. CV 2013 - _25 (JF)_

STARR INDEMNITY & LIABILITY COMPANY                          *DEFENDANT*

## REQUEST FOR ADMISSIONS

Comes now the Plaintiffs, William Masterson and Tracy Duncan, husband and wife, and propounds the following Request for Admissions to be answered by the Defendant within the time and in the manner required by law.  You are requested to admit or deny the truth of each of the following statements:

1.      Each statement set forth in the Complaint is true.

2.      That each of the Exhibits attached to the Complaint is a true and accurate copy of the document it purports to be.

3.      The Defendant has no proof that there is any causal relationship between the throat cancer condition, for which claim is made in this case, and any condition referenced in question number 5 of the application for insurance.

4.      The Defendant has no proof that there is any causal relationship between William Masterson's throat cancer condition which is the subject of Plaintiff's Complaint and any condition for which Dr. Landry provided treatment to William Masterson in 2011.

5.      There is no factual basis to support the recision of the subject policy as to William Masterson.

6.      There is no factual basis to support the recision of the policy as to Tracy Duncan

7.      There is no legal basis to support the recision of the policy as to Tracy Duncan.

8.      The Defendant was aware of the provisions of Arkansas Code Annotated § 23-79-107 at the time it issued the policy in favor of William Masterson.

9.      The Defendant was aware of the provisions of Arkansas Code Annotated § 23-79-107 at the time it issued the policy in favor of Tracy Duncan.

10.     The Defendant was aware of the provisions of Arkansas Code Annotated § 23-79-107 on January 4, 2012.

                              **REID, BURGE, PREVALLET & COLEMAN**
                              **417 N. Broadway, P.O. Box 107**
                              **Blytheville, Arkansas 72316-0107**
                              **Telephone:**  (870) 763-4586
                              **Fax:**        (870) 763-4642
                              **E-mail:**     rbpc@sbcglobal.net

                              _____
                              **ROBERT L. COLEMAN, NO. 80031**
                              **ATTORNEYS FOR PLAINTIFF**

RLC/lw
#5539

Effective 7/1/2012

**IN THE CIRCUIT COURT OF MISSISSIPPI COUNTY, ARKANSAS**
**CHICKASAWBA DISTRICT**
**GENERAL CIVIL DIVISION**

Plaintiff:      **WILLIAM MASTERSON**

VS.

Defendant:    **STARR INDEMNITY & LIABILITY COMPANY**      NO.  CV-2013-25 (JF)

# SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

**Starr Indemnity & Liability Company by serving its agent for service of process, the Corporation Company, 124 West Capitol Ave, Suite 1900, Little Rock, Arkansas 72201**

A lawsuit has been filed against you.  The relief demanded is stated in the attached complaint. Within 30 days after service of this summons on you (not counting the day you received it) – or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas – you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

> **Robert L. Coleman**
> **Reid, Burge, Prevallet & Coleman**
> **P.O. Box 107, 417 North Broadway**
> **Blytheville, AR  72316-0107**
> **Telephone: 870-763-4586, Fax: 870-763-4642**

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional Notice: Also attached you will find a set of Request for Admissions, and a set of Interrogatories and Request for Production of Documents and Things which must be answered within the time and in the manner required under the Arkansas Rules of Civil Procedure.

CLERK OF COURT

Address of Clerk's Office
Post Office Box 1498
Blytheville, AR 72316-1498

**DONNA HART, Clerk**

By: _____, D.C.

Date: _2-8-2013     10:45 Am_

No. *CV-2013-____* This summons is for *State Indemnity And Liability Company* _____ [Defendant].

FILED

# PROOF OF SERVICE

☐ I personally delivered the summons and complaint to the individual at: _____
_____ [place] on _____ [date]; or

☐ I left the summons and complaint in the proximity of the individual by _____
_____ after he/she refused to receive it when I offered it to him/her; or

☐ I left the summons and complaint at the individual's dwelling house or usual place of abode at
_____ [address] with _____ [name],
a person at least 14 years of age who resides there, on _____ [date]; or

☐ I delivered the summons and complaint to _____ [name of individual], an agent
authorized by appointment or by law to receive service of summons on behalf of
_____ [name of defendant] on _____ [date]; or.

*RJC* ☑ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons and
complaint on the defendant by certified mail, return receipt requested, ~~restricted delivery,~~ as shown by the
attached signed return receipt, *dated February 15, 2013.   RJC.*

☐ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons
and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and
received the attached notice and acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]: _____

☐ I was unable to execute service because: _____

My fee is: $ _____

[To be completed if service by person other than sheriff or deputy]

By: *Robert L. Colgran*
[Signature of Server]

*Robert L. Colgran*   *2-20-13*
[Printed Name of Server]   Date

*417 N. Broadway St., Blytheville AR 72315*
Address of Server

Phone: *870-763-4586*

[To be completed if service is by a Sheriff or Deputy Sheriff]

Sheriff of _____ County, Arkansas

By: _____
[Signature of Server]

_____
[Printed Name, Title & Badge No.]   Date

Phone: _____

SUBSCRIBED AND SWORN to before me, this date:
*2/20/13*

*Linda Elliott*
Notary Public

My Commission Expires: *3/1/13*

LINDA ELLIOTT
Mississippi County
My Commission Expires
March 1, 2013

Additional information regarding service or attempted service:
_____
_____

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☐ Agent ☐ Addressee

B. Received by ( *Printed Name* )   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

FEB 22 2013

1. Article Addressed to:

The Corporation Company
Agent for Service of Process for
Starr Indemnity & Liability Co

124 W. Capitol Ave., Ste 1900
Little Rock, AR 72201

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered       ☐ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)*   ☐ Yes

2. Article Number
   *(Transfer from service label)*   7007 2680 0000 0318 7407

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

FILED

FEB 22 2013

DONNA HART
CLERK

**FILED**

IN THE CIRCUIT COURT FOR THE CHICKASAWBA DISTRICT
MISSISSIPPI COUNTY, ARKANSAS
GENERAL CIVIL DIVISION

MAR 1 3 2013

DONNA HART
CLERK

WILLIAM MASTERSON                                          PLAINTIFF

VS.                          NO. CV 2013-25 (JF)

STARR INDEMNITY & LIABILITY COMPANY                        DEFENDANT

## DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES
## TO PLAINTIFF'S COMPLAINT

Defendant Starr Indemnity & Liability Company ("Defendant") states and alleges as follows for its answers to Plaintiff William Masterson's (the "Plaintiff's") Complaint:

1.      Defendant is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 1 of the Complaint and therefore denies those allegations.

2.      With respect to the allegations contained in paragraph 2 of the Complaint, Defendant admits that it issued the policy which is the subject matter of this litigation (the "Policy") based upon inaccurate statements made by the Plaintiff and which it would not have issued had the Plaintiff's application been forthright.    Defendant admits the remaining allegations contained in paragraph 2.    *See* Application, attached as **Exhibit A** (redacted for confidential information) and Policy, attached as **Exhibit B**.

3.      Defendant admits the online application for insurance submitted as an exhibit to Plaintiff's Complaint is dated January 17, 2012. Defendant is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 3 of the Complaint and therefore denies those allegations.

4.      Defendant denies the allegations contained in paragraph 4 of the Complaint.

45351v.1

5.     With respect to the allegations contained in paragraph 5 of the Complaint, Defendant admits that it issued a document entitled Certificate Schedule naming the certificate holder as Tracy Duncan with a Certificate Number of STT7985900 and showing an effective date of January 26, 2012, and an expiration date of January 25, 2013. Yet, Defendant would not have issued the Certificate Schedule had the information contained in the application been accurate. *See* Exhibit A.

6.     Plaintiff does not identify "the documents provided by the Defendant on its website through the internet" to which Plaintiff refers in paragraph 6. As a result, Defendant is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 6 of the Complaint and therefore denies those allegations. Further, Defendant would not have issued any insurance related documents to Plaintiff had the information contained in the application been accurate. *See* Exhibit A.

7.     With respect to the allegations contained in paragraph 7 of the Complaint, Defendant admits that it issued a letter with an insurance card listing William Masterson as an insured under Certificate/Policy No. STT7985901 with an effective date of January 26, 2012, which Plaintiff attached to his Complaint. Yet, Defendant would not have issued the letter with an insurance card had the information contained in the application been accurate. *See* Exhibit A.

8.     With respect to the allegations contained in paragraph 8 of the Complaint, Defendant admits that Plaintiff may have downloaded a document entitled Short Term Medical Insurance Policy, which Plaintiff attached to his Complaint. Yet, Defendant would not have issued the Policy had the information contained in the application been accurate. *See* Exhibit A.

9.     With respect to the allegations contained in paragraph 9 of the Complaint, Defendant admits that its third-party claims administrator, Co-ordinated Benefit Plans, LLC,

received medical information from the Plaintiff regarding his claim but is without knowledge or information sufficient to admit or deny the remaining allegations contained in this paragraph and therefore denies those allegations.

10.     In response to the allegations contained in paragraph 10 of the Complaint, Defendant states that the Policy would not have been issued had the Plaintiff's application been accurate, denies it has any obligations to Plaintiff, and denies all allegations contained in paragraph 10 of the Complaint.  *See* the Policy, attached as **Exhibit B**.

11.     Defendant is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 11 of the Complaint and therefore denies those allegations.

12.     In response to paragraph 12 of the Complaint, Defendant states that the subject Policy would not have been issued had the Plaintiff's application been accurate, denies that Plaintiff has complied with requests made by Defendant and its claims administrator, and denies all allegations contained in paragraph 12 of the Complaint.  *See* Exhibit A.

13.     With respect to the allegations contained in paragraph 13 of the Complaint, Defendant admits that Coordinated Benefits Plans LLC sent a letter to Plaintiff dated January 4, 2013.  The letter speaks for itself, and Defendant denies all allegations that are inconsistent therewith.

14.     In response to the allegations contained in paragraph 14 of the Complaint, the Application (Exhibit A) and the January 4, 2013 letter speak for themselves.  Defendant denies all allegations inconsistent with such documents.  Defendant is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 14 of the Complaint and therefore denies those allegations.

15.     With respect to the allegations contained in paragraph 15 of the complaint, Defendant admits that Dr. Edmund Landry is an orthopedic surgeon in Kennett, Missouri from whom Plaintiff sought treatment for a back injury on various occasions months before the Plaintiff submitted his application in 2011, but is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 15 and therefore denies the same.

16.     Defendant denies the allegations contained in paragraph 16 of the Complaint. *See* Medical Records, attached as **Exhibit C** (the medical records have been redacted for purposes of protecting confidential information, but these unredacted records will be provided to opposing counsel and filed under seal at the appropriate time).

17.     Defendant denies the allegations contained in paragraph 17 of the Complaint.

18.     The allegations contained in paragraph 18 of the Complaint contain legal conclusions to which no response is required.  To the extent, if any, that a response is required, Defendant states that Arkansas Code Annotated § 23-79-107 speaks for itself.

19.     The allegations contained in paragraph 19 of the Complaint contain legal conclusions to which no response is required.  Defendant states that Arkansas Code Annotated § 23-79-107 speaks for itself.  To the extent, if any, that a response is required, Defendant denies the allegations contained in paragraph 19.

20.     With respect to the allegations contained in paragraph 20 of the Complaint, Defendant responds that it is not a medical expert, but admits that Defendant is not asserting that Plaintiff's back injury condition caused Plaintiff to have throat cancer.  Defendant denies that such lack of causal connection precludes its right to rescind the Policy and denies the remaining allegations contained in paragraph 20.

21.     Defendant denies the allegations contained in paragraph 21 of the Complaint.

45351v.1

## COUNT I – DECLARATORY JUDGMENT

22.     In response to paragraph 22 of the Complaint, Defendant incorporates herein by reference its responses to paragraphs 1 through 21 of the Complaint as if fully set forth herein.

23.     The allegations contained in paragraph 23 of the Complaint contain legal conclusions to which no response is required.  Further, Defendant states that Arkansas Code Annotated § 16-111-101 through 16-111-111 and Rule 57 of the Arkansas Rules of Civil Procedure speak for themselves.  To the extent any further response is required, Defendant denies the allegations contained in paragraph 23 of the Complaint.

24.     The allegations contained in paragraph 24 of the Complaint contain legal conclusions to which no response is required.  In addition, Defendant asserts that Arkansas Code Annotated § 23-79-209 speaks for itself.  To the extent that any further response is required, Defendant denies the allegations contained in paragraph 24 of the Complaint.

## COUNT II – CLAIM FOR DAMAGES AND ATTORNEY FEES

25.     In response to paragraph 25 of the Complaint, Defendant incorporates herein by reference its responses to paragraphs 1 through 24 of the Complaint as if fully set forth herein.

26.     Defendant denies the allegations contained in paragraph 26 of the Complaint.

27.     The allegations contained in paragraph 27 of the Complaint contain legal conclusions to which no response is required.  Further, Defendant states that Arkansas Code Annotated § 23-709-208 speaks for itself.  To the extent any further response is required, Defendant denies the allegations contained in paragraph 27 of the Complaint.

## COUNT III – BAD FAITH

28.     In response to paragraph 28 of the Complaint, Defendant incorporates herein by reference its responses to paragraphs 1 through 27 of the Complaint as if fully set forth herein.

29.     Defendant denies the allegations contained in paragraph 29 of the Complaint that its actions were unlawful and that it acted in bad faith.  Defendant asserts that Arkansas Code Annotated § 23-79-207 speaks for itself, and that Defendant did not act in violation of said statute.

30.     Defendant denies the allegations contained in paragraph 30 of the Complaint.

31.     Defendant denies the allegations contained in paragraph 31 of the Complaint.

32.     Defendant denies the allegations contained in paragraph 32 of the Complaint.

## DEMAND FOR JURY TRIAL

33.     Defendant admits that Plaintiff is entitled to and has demanded a trial by jury.

34.     Defendant does not object to Plaintiff's request that he be granted leave to file amended and supplemental pleadings after further investigation and discovery as long as a good faith basis exists for amendment and as long as Defendant is provided that same opportunity.

## DEMAND FOR RELIEF

Defendant denies that Plaintiff is entitled to any relief in connection with the allegations contained in his Complaint, including, without limitation, the relief specified in the final paragraph of Plaintiff's Complaint.

To the extent any allegation contained in Plaintiff's Complaint has not been specifically admitted herein, it is hereby denied.  Defendant denies any allegation that may be implied by or inferred from the headings of Plaintiff's Complaint.

## AFFIRMATIVE DEFENSES

By way of further answer and without admitting any allegation previously denied, Defendant asserts the following affirmative defenses.  These matters are set forth to apprise Plaintiff of certain potentially applicable defenses.  However, by listing any matter as an

affirmative defense, Defendant does not assume the burden of proving any matter upon which Plaintiff bears the burden of proof.

### FIRST AFFIRMATIVE DEFENSE

Plaintiff fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims may be barred to the extent that he failed to mitigate, minimize, or avoid any damages allegedly sustained.

### THIRD AFFIRMATIVE DEFENSE

Defendant acted in good faith at all relevant times.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims may be barred, in whole or in part, to the extent any alleged loss is not covered under any term or condition of the Policy.  *See* Exhibit B.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff has improperly pled both punitive damages and a 12% penalty against Starr and cannot recover both forms of damages, even if there were a basis for such damages were valid, which is denied.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's actions or omissions in the completion of his insurance application may have constituted fraud.  See Exhibit A.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims may be barred in whole or in part because of a lack of standing, a failure to join an indispensable party, or because Plaintiff is not the real party in interest.  *See* Exhibit A.

45351v.1

### EIGHTH AFFIRMATIVE DEFENSE

To the extent Plaintiff's claims seek damages that might otherwise be covered under the terms and conditions of the Policy, coverage may be excluded pursuant to one or more Exclusions found in the Policy. *See* Exhibit B.

### NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims may be barred, in whole or in part, to the extent that he failed to fully perform all of the obligations under the Policy or to comply fully with the terms, conditions, obligations, exclusions, endorsements and limitations of the Policy. *See* Exhibit B.

### TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims should be dismissed pursuant to a motion to dismiss based upon Arkansas and/or Federal Rule of Civil Procedure 12(b)(6), and any other defenses, at law or in equity, that may now or in the future be available.

### ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims may be barred, in whole or in part, by the doctrine of estoppel. *See* Exhibits A and C.

### TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claims may be barred, in whole or in part, by the unclean hands doctrine. *See* Exhibits A and C.

### THIRTEENTH AFFIRMATIVE DEFENSE

Defendant reserves the right to raise any and all additional affirmative defenses available under Rule 8 of the Arkansas Rules of Civil Procedure, and any other defenses, at law or in equity, that may now or in the future be available.

## FOURTEENTH AFFIRMATIVE DEFENSE

To the extent that the Policy may be applicable, it applies over the deductible and coinsurance contained in the Policy, which reduces the amount recoverable under the Policy. *See* Exhibit B.

## FIFTEENTH AFFIRMATIVE DEFENSE

To the extent that it is determined that Plaintiff, Tracy Duncan, or Plaintiff's agents or representatives misrepresented, failed to disclose, or omitted material facts regarding their acts, practices, claims, losses or conditions or other material information in connection with any application for insurance or in connection with the issuance of the Policy, or any risks assumed under the Policy, Plaintiff's claims are barred insofar as Defendant relied upon such misrepresentation or omission in issuing the Policy. *See* Exhibits A and C.

## RESERVATION OF RIGHTS

Defendant reserves the right to file a motion to dismiss and/or add additional defenses and make further claims as may be warranted by discovery or otherwise. Defendant further reserves the right that jurisdiction is proper in the United States District Court, Eastern District of Arkansas.

## DEFENDANT'S PRAYER FOR RELIEF

WHEREFORE, Defendant prays the Court for the following relief:

1.     That Plaintiff take nothing by way of his Complaint or for any of the claims for relief alleged therein, and that the Complaint be dismissed with prejudice;

2.     For a declaration that Defendant fulfilled all of its obligations under the Policy and acted in good faith;

45351v.1

3.    That Defendant be allowed the costs, expenses and attorneys' fees incurred in defending this action to the fullest extent allowed by law; and

4.    For other such relief as this Court may deem just and equitable.

Respectfully submitted,

**FRIDAY, ELDREDGE & CLARK, LLP**
400 West Capitol Avenue, Suite 2000
Little Rock, AR  72201-3522
Telephone:   501-370-1564
Facsimile:   501-244-5380
Email:       wilson@fridayfirm.com

Attorneys for Defendant

By: _____
      DAVID D. WILSON, #90112

## CERTIFICATE OF SERVICE

I, David D. Wilson, certify that a copy of the foregoing pleading has been mailed, postage prepaid, to:

Robert L. Coleman, Esq.
Reid, Burge, Prevallet & Coleman
417 North Broadway Street
P.O. Box 107
Blytheville, AR  72316-0107

on this ___13___ day of March, 2013.

_____
DAVID D. WILSON

45351v.1

10

HIIQUOTE                                                    Page 1 of 2

Print   Close

# FILED

## MED PLUS STM INSURANCE APPLICATION
### Underwritten By: Starr Indemnity & Liability Company

MAR 1 3 2013

DONNA HART
CLERK

Applicant Name: Tracy Duncan
Date of Birth: ▓▓▓▓
Age: ▓▓▓
Sex (M or F): F
Height: 5ft. 7in.
Weight: 175
Billing Addrss: 116 Chesterfield Street
State: AR

Occupation: podiatrist
Day Phone:
Evening Phone: ▓▓▓2326
Email: ▓▓▓@yahoo.com
Address: 116 Chesterfield Street
City: Blytheville     Sate: AR    Zip: 72315
City: Blytheville
Zip Code: 72315

## COMPLETE THE FOLLOWING TO INSURE YOUR SPOUSE AND/OR CHILDREN:

Spouse's Name: William Masterson     Date of Birth: ▓▓▓▓     Age: ▓▓▓     Sex: M
Occupation: _____     Height: 5ft. 8in.     Weight: 170

## COMPLETE THE FOLLOWING BENEFICIARY INFORMATION FOR YOUR ACCIDENTAL DEATH & DISMEMBERMENT COVERAGE:

(If this is not answered, the benefit will automatically be paid to your estate.)

Name of Beneficiary: _____     Relationship: _____
Name of Contingent Beneficiary: _____     Relationship: _____

## COMPLETE THE FOLLOWING CHOICES:

1. Coverage Effective Date:
   ☐ Day After US Post Office Date Stamp (Or the day after the online application is submitted)
   ☑ Later Effective Date: 01-26-2012

2. Coverage Length:
   Prepaid: ☐ 30 days   ☐ 60 days   ☐ 90 days   ☐ 120 days   ☐ 150 days   ☐ 180 days
   List the number of days if not listed above (must be more than 30 days): _____

| 1-6 Months Coverage: | ☐ Up to 6 Months Coverage: | ☑ Up to 12 Months Coverage: |
|---|---|---|
| ☐ Single Prepay | Monthly Payments Available Only | Monthly Payments Available Only |
| ☑ Monthly Payments | | |

3. Coinsurance Choice:
   ☑ 80/20 of $5,000   ☐ 50/50 of $5,000   ☐ 80/20 of $10,000   ☐ 50/50 of $10,000

4. Deductible:
   ☐ $250   ☐ $500   ☐ $1,000   ☑ $2,500   ☐ $5,000   ☐ $7,500   ☐ $10,000

5. Payment Method:
   ☑ Credit Card   ☐ Monthly Automatic Bank Withdrawal

EXHIBIT
A
PENGAD 800-631-6989

## ANSWER THE FOLLOWING MEDICAL HISTORY QUESTIONS:

*Any material misstatement or omission of information made on this form will be considered a misrepresentation and may be the basis for later rescission of my coverage and that of my dependents. In the event of rescission or termination for any reason, the insurer shall have the right to deduct any premium due and unpaid from any claims payable to me or my dependents.*

Q1: Will there be any other health insurance in force on the policy date?     ☐ Yes ☑ No

Q2: Is the proposed insured, spouse, or any dependent child now pregnant, undergoing infertility treatment, or in the process of adoption?     ☐ Yes ☑ No

Q3: Is the proposed insured currently eligible for Medicaid?     ☐ Yes ☑ No

| | | |
|---|---|---|
| Q4: | Has any person proposed for coverage been declined for health insurance in the past 12 months for a condition that is still present (not applicable to MO residents)? | ☐ Yes ☑ No |
| Q5: | Within the past 5 years, have you or any person to be insured been aware of, diagnosed, treated by a member of the medical profession, or taken medication for cancer or a tumor, stroke, heart disease including heart attack, had heart surgery, COPD (Chronic Obstructive Pulmonary Disease) or emphysema, kidney disorder or disease, liver disorder or disease, neurological disorder, degenerative disc disease or herniation/bulge, rheumatoid arthritis, degenerative joint disease of the knee or hip, diabetes (not applicable to DC residents), alcohol abuse or chemical dependency, or does anyone listed on the application currently weigh over 250 pounds (women) or over 300 pounds (men)? | ☐ Yes ☑ No |
| Q6: | Have you or any person to be insured been diagnosed or treated for Acquired Immune Deficiency Syndrome (AIDS), AIDS-related complex, or any other immune system disorder such as HIV? (Residents of WI do not need to disclose HIV test results.) | ☐ Yes ☑ No |
| Q7: | Has any other person proposed for coverage not been a legal resident of the United State for the last 12 consecutive months? | ☐ Yes ☑ No |

NOTE: IF "YES" IS ANSWERED ON ANY QUESTION FROM 1 THROUGH 7, COVERAGE CANNOT BE ISSUED

1. I agree that coverage will not become effective for any person whose medical history changes prior to coverage approval, such that the person's answer would be "yes" to any of the Medical History questions in this application. If such person is the Applicant, coverage is automatically declined for all persons included in this application.

2. I hereby request coverage under the policy issued to the group policyholder by the insurer and understand that if the coverage applied for becomes effective, I agree to all terms of the group policy. I understand that health insurance benefits are excluded for pre-existing conditions.

3. I hereby authorize any hospital, clinic, physician, surgeon, practitioner or insurance company to furnish the Insurer or its representative with any and all information concerning any sickness or injury I or my dependents may have suffered, including copies of all hospital or medical records. A copy of this authorization shall be considered as valid as the original and remains in effect for 2 years from the date of my signature. I understand that I may revoke this authorization at any time by sending a written revocation to the Company. Such revocation will not affect any action taken or information released prior to the revocation, and will not affect any legal right the Company has to contest an insurance policy/certificate, or to contest a claim under an insurance policy/certificate. I understand that if I revoke this authorization, the Company may not be able to process my application, and may not be able to make any benefit payments due under any existing policy, certificate, or other binding agreement.

4. I understand that the broker who solicited this application was acting as an independent contractor and not as an agent of the Starr Indemnity & Liability Company. I further acknowledge that the person who solicited this application and upon whose explanation or benefits, limitations or exclusions we relied, was retained by me as my agent, and that such person has no right to bind or approve coverage or alter any of the terms or conditions of the policy.

5. I have read this application and have verified that all of the information provided in it is complete, true and correct, and is all within my personal knowledge. I agree to immediately notify the insurer of any changes in any of the information contained in this form which may occur prior to the approval of coverage.

I understand that this coverage will not pay benefits for a disease or physical condition that I now have or have had in the past.

Signature of Applicant: Tracy Duncan _____     Date: 01-17-2012 _____

I certify that I have read the applicable Fraud Notice

Fraud Warning: Any person who knowingly presents a false or fraudulent claim for payment of a loss of benefits or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

F. AGENT INFORMATION:

AGENT NAME: EHEALTH INSURANCE SERVICES                CODE #: E803000000

EMAIL: customerservice@ehealthinsurance.com            PHONE: 800-977-8860

Health Insurance Innovations - 218 East Bearss Ave. Ste 325, Tampa, FL 33613 - Phone (877) 376-5831 - Fax (877) 376-5832

AH-60008

[ Print ]   [ Close ]

**FILED**

MAR 1 3 2013

DONNA HART
CLERK

 **Starr Indemnity & Liability Company**

Dallas, Texas
Administrative Office: 399 Park Avenue, 8th Floor, New York, New York 10022
(hereafter referred to as "we," "us," and "our")

**FILED**

FEB - 8 2013

DONNA HART
CLERK

### SHORT TERM MEDICAL INSURANCE POLICY

| | |
|---|---|
| POLICYHOLDER: | See Attached |
| POLICY NUMBER: | See Attached |
| COVERAGE PERIOD: | See Attached |
| EFFECTIVE DATE: | See Attached |
| EXPIRATION DATE: | See Attached |

### SCOPE OF COVERAGE

**POLICY ISSUED TO THE POLICYHOLDER IN THE STATE OF ARKANSAS.**

This Policy is issued and delivered in the State shown above and shall be governed by its laws.

This Policy is the contract between the Policyholder and Starr Indemnity & Liability Company. This Policy contains the terms under which we agree to insure eligible persons and pay benefits, subject to the terms and conditions herein. References to Covered Dependents insurance apply only if You have elected such coverage. Coverage under this Policy is provided in consideration of payment of the initial premium and continued payment of premiums when due and that the answers in Your application are correct and complete.

**10 DAY RIGHT TO RETURN THE POLICY**

If for any reason you are not satisfied with this Policy, you may return it to us within 10 days after you receive it. We will refund any premium paid and the Policy will be deemed void, just as though it had not been issued.

**THIS POLICY IS NON-RENEWABLE TERM INSURANCE.**
**IT WILL NOT BE RENEWED AT THE END OF THE COVERAGE PERIOD.**
**READ IT CAREFULLY.**

Signed for Starr Indemnity & Liability Company By:

*Honora M. Keane, General Counsel*

*Charles H. Dangelo, President*

**Policyholder Service Office of Company:** Starr Indemnity & Liability Company
**Address:** 399 Park Avenue, 8th Floor, New York, NY 10022
**Telephone:** (646)-227-6342

If we at Starr Indemnity & Liability Company fail to provide you with reasonable and adequate service, you should feel free to contact:

Arkansas Insurance Department
Consumer Services Division
1200 West Third Street, Little Rock, Arkansas 72201-1904
Telephone:  (501) 371-2640 or Toll-Free: 800-852-5494

AH-60001-AR                                    1                                    Essential Plus



EXHIBIT
B

# TABLE OF CONTENTS

The following provisions appear within this Policy in the following order:

DEFINITIONS ..................................................................................................5
ELIGIBILITY....................................................................................................9
    I.    YOU        9
    II.   ELIGIBLE DEPENDENTS    9
    III. ENROLLMENT REQUIREMENTS    10
    IV.   UNDERWRITING REQUIREMENTS    11
    V. ADDITIONAL CONDITIONS    11
EFFECTIVE DATES.........................................................................................11
    I.   YOU AND ELIGIBLE DEPENDENTS    11
    II.   NEWLY ACQUIRED DEPENDENT CHILDREN    11
TERMINATION OF INSURANCE .....................................................................11
    I.   TERMINATION OF YOUR INSURANCE    11
    II.  TERMINATION OF A COVERED DEPENDENT'S INSURANCE    12
HOSPITAL PRECERTIFICATION ....................................................................12
DESCRIPTION OF BENEFITS ........................................................................13
    I.   WHAT IS COVERED    13
    II.  COVERED EXPENSES    14
    A) HOSPITAL COVERED EXPENSES.........................................................14
    B) COVERED EXPENSES FOR TREATMENT..............................................14
    C) OTHER COVERED EXPENSES.............................................................14
    III.   ALLOCATION AND APPORTIONMENT OF BENEFITS    21
    IV.   EXTENSION OF COVERAGE    21
LIMITATIONS AND EXCLUSIONS....................................................................21
PRE-EXISTING CONDITIONS LIMITATION.....................................................24
CLAIM PROVISIONS ......................................................................................24
GENERAL PROVISIONS .................................................................................25

## DEFINITIONS

This section provides the meaning of special terms used in this Policy. Whenever the following terms appear capitalized in this Policy, these definitions apply:

**Ambulatory Surgical Center** means a licensed health care facility whose main purpose is the diagnosis or treatment of patients by surgery it must: (1) admit and discharge the patient within the same working day; (2) be supervised by a Doctor; (3) require a licensed anesthesiologist or licensed Certified Registered Nurse Anesthetist to administer anesthesia and remain during the surgery; (4) provide a post-anesthesia recovery room; and (5) have a written agreement with at least one Hospital for immediate acceptance of patients who develop complications.

Ambulatory surgical center does not include: (1) a facility whose main purpose is performing terminations of pregnancy; (2) an office maintained by a Doctor for the practice of medicine; or (3) an office maintained for the practice of dentistry.

**Chemical Dependency** is the pathological use or abuse of alcohol and/or other drugs in a manner or to a degree that produces an impairment in personal, social or occupational functioning and which may, but need not, include a pattern of tolerance and withdrawal.

**Clinical Trials** means Phase II, Phase III, and Phase IV patient research studies designated to evaluate new treatments, including prescription drugs, and that: (1) involve the treatment of life-threatening medical conditions; (2) are medically indicated and preferable for that patient compared to available non-investigational treatment alternatives; and (3) have clinical and preclinical data that shows the trial will likely be more effective for that patient than available non-investigational alternatives. Covered clinical trials must also meet the following requirements:
1. Must involve determinations by treating physicians, relevant scientific data, and opinions of experts in relevant medical specialties;
2. Must be trials approved by centers or cooperative groups that are funded by the National Institutes of Health, the Food and Drug Administration, the Centers for Disease Control, the Agency for Health Care Research and Quality, the Department of Defense, or the Department of Veterans Affairs. The health benefit plan may also cover clinical trials sponsored by other entities; and
3. Must be conducted in a setting and by personnel that maintain a high level of expertise because of their training, experience, and volume of patients.

**Coinsurance Percentage** is the applicable percentage specified in the Schedule that We will use in computing the amount payable for a benefit.

**Complications of Pregnancy** means: (1) Conditions (when pregnancy is not terminated) whose diagnoses are distinct from pregnancy but are adversely affected by or caused by pregnancy, such as acute nephritis, nephrosis, cardiac decompensation, HELLP syndrome, uterine rupture, amniotic fluid embolism, chorioamnionitis, fatty liver in pregnancy, septic abortion, placenta accrete, gestational hypertension, puerperal sepsis, peripartum cardiomyopathy, cholestasis in pregnancy, thrombocytopenia in pregnancy, placenta previa, placental abruption, acute cholecystitis and pancreatitis in pregnancy, post hemorrhage, septic pelvic thrombophlebitis, retained placenta, venous air embolus associated with pregnancy, miscarriage, or an emergency Cesarean section required because of: (a) fetal or maternal distress during labor, (b) severe pre-eclampsia, (c) arrest of descent or dilitation, (d) obstruction of the birth canal by fibroids or ovarian tumors, or (e) necessary because of the sudden onset of a medical condition manifesting itself by acute symptoms of sufficient severity that, in the absence of immediate medical attention, will result in placing the life of the mother or fetus in jeopardy. For purposes of this paragraph, a Cesarean section delivery is not considered to be an emergency Cesarean section if it is merely for the convenience of the patient and/or Doctor solely due to a previous Cesarean section.

(2) Treatment, diagnosis or care for conditions, including the following, in a pregnant female when the condition was caused by, necessary because of, or aggravated by the pregnancy: hyperthyroidism, hepatitis B or C; HIV; Human papilloma virus; abnormal PAP; syphilis; Chlamydia; herpes; urinary tract infections; thromboembolism; appendicitis; hypothyroidism; pulmonary embolism; sickle cell disease; tuberculosis; migraine headaches; depression; acute myocarditis; asthma; maternal cytomegalovirus; urolithiasis; DVT prophylaxis; ovarian dermoid tumors; biliary atresia and/or cirrhosis; first trimester adnexal mass; hyditidiform mole; or ectopic pregnancy.

"Complications of Pregnancy" does not include false labor, occasional spotting, Doctor-prescribed rest during the period of pregnancy, morning Sickness, elective Cesarean section, and similar conditions associated with the management of a difficult pregnancy but not constituting a nosologically distinct complication of pregnancy.

**Confined/Confinement** means the time in which a Covered Person is a Registered Bed Patient in a Hospital on the order of a Doctor, for Medically Necessary medical treatment.

**Covered Dependent** means Eligible Dependents who have become Covered Person(s) under this Policy.

**Covered Expenses** means: (1) Costs of treatments, services and supplies which a Doctor recommends as Medically Necessary to treat a Sickness or Injury and which in the geographical area where rendered are the Usual, Reasonable and Customary services, supplies and treatment provided for the condition being treated; (2) charges which are Usual, Reasonable and Customary and which the person incurs while he is covered; (3) charges which You or Your Covered Dependent are legally required to pay; and (4) any other charges which are identified as Covered Expenses under the Schedule of Benefits.

**Coverage Period** means the maximum length of time coverage is in force under this Policy. The Coverage Period is shown in the Schedule.

**Covered Person(s)** means You and Your Covered Dependents.   See the provision entitled Eligibility.

**Deductible** means the amount of Covered Expenses that each Covered Person must pay before benefits will be payable. The Deductible is shown in the Schedule.

**Doctor** means a licensed practitioner of the healing arts who is practicing and treating within the scope and limitations of that license, including a Doctor's assistant and a licensed marriage and family therapist. "Doctor" does not include You, a Covered Dependent, Immediate Family, or a Covered Person's employer.

**Effective Date** means the date coverage under the Policy begins for a Covered Person. The Effective Date is shown in the Schedule.

**Emergency Services** means health care items and services furnished or required to screen for or treat an emergency medical condition until the condition is stabilized, including prehospital care and ancillary services routinely available to the emergency department.

**Policy** means the contract issued to the Policyholder providing the benefits described herein.

**Home Health Agency** means a public agency or private organization, or a sub-division of such an agency or organization, which:
1. Is primarily engaged in providing skilled nursing services and other therapeutic services;
2. Has policies established by a group of professional personnel (associated with the agency or organization), including one or more Doctors and one or more Nurses, to

govern the services which it provides, and provides for supervision of such services by a Doctor or Nurse;

3.  Maintains clinical records on all patients;
4.  In the case of an agency or organization in any State, in which State or applicable local law provides for the licensing of agencies or organizations of this nature:
    a.  Is licensed pursuant to such law; or
    b.  Is approved by the agency of such State or locality responsible for licensing agencies or organizations of this nature, as meeting the standards established for such licensing; and
5.  Meets such other conditions of participation as are established under the Medicare program in the interest of the health and safety of individuals who are furnished services by such agency or organization.

**Home Health Aide** means a person who (1) provides care of a medical or therapeutic nature; and (2) reports to and is directly supervised by a Home Health Agency.

**Home Health Care Plan** means a plan of home-based care which meets these standards: (1) A Doctor has established and approved the plan in writing; and (2) the plan covers a condition which would otherwise require Confinement in a Hospital or convalescent nursing home.

**Home Health Care Visit** means any visit by a member of a home health care team. Each visit by a member of the home health care team other than a Home Health Aide counts as one home health care visit. One visit up to a maximum of four hours of service by a Home Health Aide counts as one home health care visit.

**Hospital** means an institution which is legally constituted and operated in accordance with the laws pertaining to Hospitals in the Jurisdiction where it is located, which meets all of the following requirements:

1.  It is engaged primarily in providing medical care and treatment to sick and injured persons on an inpatient basis at the patient's expense;
2.  It provides 24-hour-a-day nursing service by a Nurse;
3.  It is under the supervision of a staff of duly-licensed Doctors; and
4.  It provides organized facilities for diagnosis and for major operative surgery either on its premises or in facilities available on a prearranged basis.

"Hospital" does not mean primarily a clinic, nursing home, rest or convalescent home, extended care facility, Hospice or similar establishment nor other than incidentally, a place providing care for persons with Mental Illness or Nervous Disorders; the aged, or those suffering from alcoholism or drug addiction.

Confinement in a special unit of a Hospital used primarily as a nursing, rest, or convalescent home shall be deemed to be Confinement in an institution other than a Hospital. A State tax-supported institution will not be excluded, even though it may not have an operating room and related equipment for surgery.

**Immediate Family** means: (1) the parent, spouse, brother, sister or children of a Covered Person (2) a resident in a Covered Person's household; or (3) any person related to a Covered Person by blood, marriage or legal adoption.

**Injury** means bodily harm caused by an accident directly and independently of Sickness or bodily infirmity resulting in unforeseen trauma requiring immediate medical attention. The Injury must occur after the Covered Person's Effective Date of coverage and while such person's coverage is in force. All injuries to the same Covered Person sustained in one accident, including all related conditions and recurring symptoms of the Injuries, shall be considered one injury.

**Intensive Care Unit** means a section, ward or wing within a Hospital which is separated from other Hospital facilities and: (1) is operated exclusively for the purpose of providing professional care and treatment for critically ill patients; (2) has special supplies and equipment necessary for such care and treatment which are available on a standby basis for immediate use; (3) provides room and board and constant observation by a Nurse or other specially-trained Hospital personnel; and (4) is not maintained for the purpose of providing normal postoperative recovery treatment or service.

**Lifetime Maximum Amount** is the total aggregate amount of benefits payable under this Policy for all Covered Expenses which are incurred for Sickness or Injury by each Covered Person during such person's lifetime, except as otherwise provided.  The Lifetime Maximum Benefit applies to all Covered Expenses, unless indicated otherwise for a specific benefit, and is shown in Your Schedule.

**Medically Necessary** means that the services or supplies are provided for the diagnosis or treatment or relief of a condition, illness, injury or disease; and except as allowed under the Coverage for Clinical Trials, not for experimental, investigation, or cosmetic purposes; are necessary for and appropriate to the diagnosis or treatment and within the accepted community standards of medical care and are not solely for the convenience of the insured, the insured's family or the provider.

**Mental Illness or Nervous Disorder** means a psychoneurosis, psychosis, eating or personality disorder or panic disorder as defined in the Diagnostic and Statistical Manual of Mental Disorders of the American Psychiatric Association, and determined by the manifestation of symptoms regardless of whether such Mental Illness or Nervous Disorder has a physical or organic basis or origin.

**Nurse** means a licensed registered graduate professional Nurse (R.N.) or a licensed practical Nurse (L.P.N.) who is under the direction of a Doctor. Nurse does not include the Immediate Family of a Covered Person.

**Prescription or Legend Drugs** means: (1) a Legend Drug; (2) injectable insulin prescribed by a Doctor; (3) a compounded drug of which at least one part is a Legend Drug; or (4) any other drug that, under state law, may only be dispensed upon the written prescription of a Doctor. "Prescription or Legend Drugs" do not include oral contraceptives for prevention of pregnancy.

**Professional Review Organization** means an organization we select to provide a program of medical review services under Doctors, Nurses and record technicians.

**Registered Bed Patient** means an individual who, while Confined to a Hospital or Skilled Nursing Facility, is assigned to a bed in any department of the Hospital, and for whom a charge for room and board is made by the Hospital.

**Sickness** means an illness, disease, or infection which begins while coverage is in force under this Policy for the Covered Person.  All related conditions and recurring symptoms of sickness to the same person will be considered one sickness.   Sickness includes Complications of Pregnancy.  With respect to Dependent Children who automatically become insured under the Policy at birth, the term "Sickness" shall also include medically diagnosed congenital defects and birth abnormalities.

**Skilled Nursing Facility** means an institution, or a distinct part of an institution, which is licensed pursuant to state and local laws and is operated primarily for the purpose of providing skilled nursing care and treatment for persons convalescing from Injury or Sickness, and: (1) is approved by and is a participating Skilled Nursing Facility of Medicare; (2) has organized facilities for medical treatment and provides 24-hour a day nursing service under the full-time supervision of a licensed Doctor or Nurse; (3) maintains daily clinical records on each patient and has available

the services of a licensed Doctor under an established agreement; (4) provides appropriate methods for dispensing and administering drugs and medicines; (5) has transfer arrangements with one or more Hospitals, a utilization review plan in effect and operational policies developed with the advice of, and reviewed by, a professional group including at least one licensed Doctor; and (6) is not, other than incidentally, a rest home for the aged, or a place for the treatment of mental disease, drug addiction or alcoholism.

**Total Disability or Totally Disabled** means that You are prevented from engaging in Your own occupation for wage or profit or any occupation to which You are suited by talent or education by reason of Injury or Sickness.  A Covered Person other than You is considered to be Totally Disabled when he is prevented by reason of Injury or Sickness from engaging in all normal activities of a person of like age and sex in good health.

**Urgent Care Center** means a medical facility separate from a hospital emergency department where ambulatory patients can be treated on a walk-in basis without an appointment and receive immediate, non-routine urgent care for an Injury or Sickness presented on an episodic basis.

**Usual, Reasonable and Customary** means:
1. With respect to fees or charges, fees for medical services or supplies which are:
   a. Usually charged by the provider for the service or supply given; and
   b. The average charged for the service or supply in the locality in which the service or supply is received, whichever is less; or
2. With respect to treatment or medical services, treatment which is reasonable in relationship to the service or supply given and the severity of the condition.

**We, Us, Our or Company** means Starr Indemnity & Liability Company.

**You or Your** (also, **Policyholder**) means the primary insured person who is named in the Schedule as the Policyholder.

## ELIGIBILITY

### I.   YOU

You will be eligible for insurance provided:
1. You are at least 2 years old but under 65 years of age;
2. You are not covered as a dependent under the Policy;
3. You are not pregnant at the time of application;
4. You have a social security number (this does not apply to a minor);
5. You are not an active member of the armed forces;
6. You submit a written application for insurance, provide evidence of insurability, if evidence is required, and meet our enrollment and underwriting requirements; and
7. You pay all required premiums when due.

### II.   ELIGIBLE DEPENDENTS

**Spouse:** You will be eligible to apply for insurance for Your lawful spouse who:
1. Is under age 65;
2. Is not pregnant at the time of application;
3. Is not an active member of the armed forces;
4. Has a social security number; and
5. Has provided a written application for insurance and evidence of insurability, if evidence is required, has been approved, and meets our enrollment and underwriting requirements.

AH-60001-AR                                        9                                        Essential Plus

**Dependent Children:** You will be eligible to apply for insurance for your dependent children who:
1. Are unmarried children primarily dependent upon You for support and maintenance; and
2.     a.   Are less than 19 years or age;
       b.   Are at least 19 years of age but less than 25 years and enrolled and attending as a full-time student at an accredited college, university, vocational or technical school;
3. Are not pregnant at the time of application;
4. Are not active members of the armed forces; and
5. Have provided a written application for insurance and evidence of insurability, if evidence is required, have been Approved, and meet Our enrollment and underwriting requirements.

**"Children"** means natural children stepchildren, legally-adopted children, children placed with You for the purpose of adoption, children subject to Your legal guardianship, and a foster child placed in the foster home.

**"Foster child"** means a minor (i) over whom a guardian has been appointed by a court; or (ii) the primary or sole custody of whom has been assigned by order of a court of competent jurisdiction.

**"Placement in the foster home"** means physically residing with a person appointed as guardian or custodian of a foster child as long as that guardian or custodian has assumed the legal obligation for total or partial support of the foster child with the intent that the foster child reside with the guardian or custodian on more than a temporary or short-term basis.

**"Adopted Children"** means, in connection with any adoption or placement for adoption of the child, an individual who has not attained 18 years of age as of the date of the adoption or placement for adoption.

**"Placement for adoption"** means the assumption and retention by a person of a legal obligation for total or partial support of a child in anticipation of the adoption of the child. The child's placement with a person terminates upon the termination of such legal obligations.

If You and Your spouse are both Covered Persons, only one parent will be eligible for insurance on any Covered Dependent children You may have.

## III. ENROLLMENT REQUIREMENTS

You and Your eligible Dependents who desire coverage must complete and submit an application for the plan and complete or provide any other documents (including evidence of insurability) as we deem necessary. You must submit the required premium with Your application form. Any misrepresentation or omission of information in Your application or any documents submitted to Us may result in rescission of all coverage for all Covered Persons.

If You are an Insuring Parent, the Company will not deny the enrollment of a child, under this plan, because the child:
1. Was born out of wedlock;
2. Is not a dependent claimed on Your federal income tax; or
3. Does not live with You.

The Company will provide the Noninsuring Parent with claim forms and any other information needed to obtain benefits for the child. The Company will process claims and reimburse the Noninsuring Parent, provider of care, or the appropriate government agency if applicable when the Noninsuring Parent incurs an expense covered by the Policy.

**Insuring Parent** means a parent who is required by court order or administrative order to provide health insurance coverage for a child. **Noninsuring Parent** means a parent other than the Insuring Parent.

## IV.  UNDERWRITING REQUIREMENTS

You and Your Eligible Dependents are subject to our underwriting requirements.  We reserve the right to decline or rate any person at Our discretion.

## V.  ADDITIONAL CONDITIONS

Insurance will not be effective unless all eligibility requirements are met and You receive written acceptance from Us.  Insurance on a Covered Person will not be effective unless premium is paid and accepted by Us for such insurance.  Issuance of a Policy is not a waiver of any of the above conditions.

### EFFECTIVE DATES

## I.  YOU AND ELIGIBLE DEPENDENTS

Coverage is effective as of the Effective Date for You and any Eligible Dependents who were included in Your initial application, provided that You meet Our eligibility, underwriting and enrollment requirements.  Coverage will not become effective for any person whose medical history changes prior to coverage approval, such that the person's answer would be "Yes" to any of the medical history questions in the Application.  If such person is the Applicant, coverage is automatically declined for all persons included in Your Application.

## II.  NEWLY ACQUIRED DEPENDENT CHILDREN

Coverage for your child or children born after the Effective Date of this Policy will be effective from the moment of birth.  Coverage for that child will end 90 days after this automatic Effective Date unless you have made a written request directing us to add the child or children to your coverage.  We must receive this notice within 90 days after the child's date of birth.

Coverage for a child whom a petition for adoption ahs been filed, will become effective the the date the petition is filed, if coverage is applied for within 60 days of such filing.  Coverage for an adopted newborn child is from the moment of birth, if coverage is applied for within the 60-days after birth.  Coverage ceases upon the dismissal or denial of a petition for adoption.

Any required additional premium must accompany Your notice.  A claim form or Hospital bill does not constitute written notice.

Coverage for your child or children will be for Injury or Sickness, including congenital defects, premature birth and tests for hypothyroidism, phenylketonuria, galactosemia, and sickle-cell anemia for a non-Caucasian newborn child.

### TERMINATION OF INSURANCE

## I.  TERMINATION OF YOUR INSURANCE

Your insurance will automatically terminate on the earliest of the following dates:
1.  The due date of a premium payment that is not paid when due, if such payment has not been made within 31-days following such premium due date;
2.  The date that insurance under the Policy is discontinued provided the Policyholder received 30 day advance written notice;
3.  The date that We determine fraudulent statements or a material misrepresentation has been made by You or with Your knowledge in filing a claim for benefits;
4.  The date that You enter full-time active duty in the armed forces of any country or international organization;
5.  The date You become eligible for Medicare;
6.  The earlier of: (1) the Expiration Date of Your coverage; or (2) 12-months from the Effective Date of Your insurance, whichever occurs first.

**II. TERMINATION OF A COVERED DEPENDENT'S INSURANCE**

A Covered Dependent's insurance will automatically terminate on the earliest of the following dates:

1. The due date of a premium payment that is not paid when due if such premium payment has not been made within 31-days following such premium due date;
2. The date that insurance under the Policy is discontinued provided the Policyholder received 30 day advance written notice;
3. The date that we determine fraud or material misrepresentation has been made by You or a Covered Dependent or with Your or a Covered Dependent's knowledge in filing a claim for benefits;
4. The date that Your insurance terminates. However, if termination is due to Your death, a Covered Dependent may elect to continue coverage beyond the original Expiration Date by making written request for such coverage and by continuing payments toward the cost of that insurance. When such an election is made, Your Covered Dependent spouse will be considered the primary insured;
5. The date You or a Covered Dependent becomes eligible for Medicare;
6. The date the Covered Dependent ceases to be eligible. However if, upon attaining any limiting age, a Covered Dependent has a handicapped condition rendering such person incapable of earning his own living and is chiefly dependent upon You or other care providers for lifetime care and supervision because of a handicapped condition that occurred before attainment of the limiting age, benefits with respect to such person may be continued on a premium-paying basis during the continuance of such dependency. During the first 2-years that insurance is being continued, we have the right to have the dependent examined at any time by Doctors designated by us. Thereafter, we will not require examination more than once each year. The continuance of insurance as described will cease in the event of:
   a. The termination of the Policy; or
   b. The termination of Your insurance; or
   c. The discontinuance of insurance under the Policy; or
8. The earlier of (i) the Expiration Date shown in the Schedule; or (ii) 12-months from the Effective Date of Your insurance, whichever occurs first.

**III. Termination of the Policy:** The Policy will terminate on the earliest of the following dates:

1. The date the Policyholder elects to terminate the Policy, provided that the Policyholder gives us at least 60 days advance written notice; or
2. The date there are no Covered Persons under the Policy.

We may terminate the Policy on the first day of any policy month the anniversary of any premium due date by giving the Policyholder at least 30 days advance written notice.

## HOSPITAL PRECERTIFICATION

Hospital admissions and lengths of stay are subject to certification by a Professional Review Organization, as stated below:

1. You must notify the Professional Review Organization on behalf of a Covered Person:
   a. Ten (10) days prior to non-emergency admission of the Covered Person to a Hospital;
   b. Within 48-hours from the time the Covered Person is in stable condition following an emergency admission*, or as soon thereafter as is reasonably possible if the Covered Person's medical condition prevents or delays such notification; or
   c. Within 48-hours of normal delivery (96 hours for cesarean section) for complicated birth or as soon as reasonably possible.

*A person is covered for Emergency Medical Conditions and may receive medical services to treat an Emergency Medical Condition without prior authorization if a prudent

layperson acting reasonably would have believed that an Emergency Medical Condition existed. In order to ensure that a person receives proper care for their condition, the person should call the Professional Review Organization and inform them of their condition and the services they are receiving.

When prior authorization has been given for Emergency Services, the Company will cover the services and will not retract the authorization after the services have been provided unless the authorization was based on material misrepresentation about the Covered Person's health condition.

**Emergency Medical Condition** means a medical condition manifesting itself by acute symptoms of sufficient severity, including, but not limited to, severe pain, or by acute symptoms developing from a chronic condition that would lead a prudent layperson possessing an average knowledge of health and medicine, to reasonably expect the absence of immediate medical attention to result in any of the following:

    a. Placing the health of an individual or with respect to a pregnant woman, the health of the woman or her unborn child in serious jeopardy;

    b. Serious impairment to bodily functions; or

    c. Serious dysfunction of any body organ or part.

2. The Professional Review Organization, after reviewing the applicable information, will certify:

    a. If the Hospital admission is Medically Necessary;

    b. The appropriate length of stay; and

    c. Appropriate extensions beyond the initially-certified length of stay.

3. **REDUCTION OF BENEFITS:** If Covered Expenses for the Hospital admission, length of stay, or extensions of stay are not certified by the Professional Review Organization, We will only pay 50% of the benefits which would otherwise have been payable for Covered Expenses, unless the Covered Person is incapacitated and unable to contact us. In such cases, the Covered Person must contact us as soon as possible. No benefits will be payable in the event such Hospital admission, length of stay or extension of stay is not Medically Necessary.

## DESCRIPTION OF BENEFITS

**I.   WHAT IS COVERED**

Subject to the Hospital Precertification provision, if You or a Covered Dependent incurs Covered Expenses for medical treatment supplies or services as a result of a Sickness or Injury which occurs while coverage is in force, and after satisfaction of the Deductible, We will pay the Coinsurance Percentage for Covered Expenses incurred in excess of the Deductible. We will pay this amount for all Covered Expenses unless otherwise noted for a specific benefit or specified as limited or excluded in the Limitations and Exclusions provision.

After Covered Expenses for which benefits are payable at the Coinsurance Percentage have equaled the Coinsurance Limit for a Covered Person, We will pay Covered Expenses in excess of the Coinsurance Limit at the amount shown in the Schedule for each such person while coverage is in force, but not to exceed the Lifetime Maximum Amount payable for each Covered Person.

The Deductible, Coinsurance Percentage, Coinsurance Limit and Lifetime Maximum Amount are shown in Section I of the Schedule and apply to each Covered Person and for all benefits, unless otherwise stated for a specific benefit in Section II of the Schedule.

## II.  COVERED EXPENSES

**Covered Expenses** mean the Usual, Reasonable and Customary charges for the following Medically Necessary services, supplies, or treatment prescribed or provided by a Doctor for a covered Injury or Sickness while coverage is in force for a Covered Person.  The Company reserves the right to interpret and determine coverage for Covered Expenses.  The fact that a Doctor has prescribed, recommended, approved, or provided a treatment, service or supply does not, in itself, make such treatment, service or supply a Medically Necessary covered expense.

### A)  HOSPITAL COVERED EXPENSES

1.  **Hospital Room, Board and General Nursing Care:**  While Confined in a Hospital, the Coinsurance Percentage for the average daily charge for room and board in a semiprivate room with at least two beds.  If the Hospital does not have semiprivate rooms available, the Coinsurance percentage will be based on the daily charge for room and board for the Hospital's lowest rate private room.  If a facility contains only private rooms, coverage will be limited to the Coinsurance Percentage shown in the Schedule for a private room.

2.  **Intensive or Specialized Care Unit:**  Provided four or more hours of nursing care is being provided each day, the Coinsurance Percentage for each day of Confinement, up to 3 times the average semi-private room rate.  If the Hospital does not have semiprivate rooms available, the amount payable will be 3 times the daily charge for room and board at the Hospital's lowest rate private room.

3.  **Emergency Room Treatment:**  The Coinsurance percentage for services, supplies and treatment.

4.  **Miscellaneous Medical Services:**  The Coinsurance Percentage for services and supplies provided on an inpatient basis in a Hospital. Miscellaneous charges do not include charges for a telephone, radio, television, extra beds or cots, meals for guests, take home items, or other items of convenience.

5.  **Outpatient Hospital Services:**  The Coinsurance Percentage for charges made by a Hospital when received on an outpatient basis, excluding professional services.

### B)  COVERED EXPENSES FOR TREATMENT

1.  **Doctor Services:**  The Coinsurance Percentage for treatment provided by a Doctor.  This benefit is not payable for treatment provided by a member of your Immediate Family.

2.  **Therapist Services:**  The Coinsurance Percentage for treatment provided by a therapist for diagnosis and rehabilitative treatment.  This benefit is not payable for treatment provided by a member of your immediate family.

### C)  OTHER COVERED EXPENSES

1.  **Ambulatory Surgical Center:**  The Coinsurance Percentage for treatment or services in a state-approved freestanding Ambulatory Surgical Center that is not part of a Hospital.

2.  **Anesthetics:**  The Coinsurance Percentage of the amount payable to the Doctor performing the surgery for anesthetics and their administration.  The Coinsurance Percentage specific to this benefit is shown in the Schedule.  This includes coverage for payment of anesthesia and Hospital or facility charges for services

performed in a Hospital or ambulatory surgical facility in connection with dental procedures for children below the age of nine years, persons with serious mental or physical conditions, and persons with significant behavioral problems, where the provider treating the patient involved certifies that, because of the patient's age, condition or problem, hospitalization or general anesthesia is required in order to safely and effectively perform the procedures.

3. **Assistant Surgeon:** The Coinsurance Percentage of the amount payable to the Doctor performing the surgery for a Doctor assisting in the performance of a surgery. The Coinsurance Percentage specific to this benefit is shown in the Schedule.

4. **Surgeon's Assistant:** The Coinsurance Percentage of the amount payable to the Doctor performing the surgery for a Doctor assisting such Doctor. The Coinsurance Percentage specific to this benefit is shown in the Schedule.

5. **Blood or Blood Plasma:** The Coinsurance Percentage, if not replaced.

6. **Artificial Limbs or Eyes:** The Coinsurance Percentage.

7. **Casts, Non-Dental Splints, Trusses, Crutches, or Non-Orthodontic Braces:** The Coinsurance Percentage.

8. **Equipment Rental:** The Coinsurance Percentage for a wheelchair, hospital-type bed or similar durable medical equipment, not to exceed the purchase price of such equipment.

9. **Oxygen:** The Coinsurance Percentage for oxygen and rental of equipment for the administration of oxygen, not to exceed the purchase price of such equipment.

10. **Complications of Pregnancy:** Treatment for Complications of Pregnancy on the same basis as any other Sickness.

11. **X-Ray and Laboratory Tests:** The Coinsurance Percentage for X-Ray and laboratory on an outpatient basis.

12. **Prescription or Legend Drugs:** The Coinsurance Percentage when prescribed on an inpatient basis for a Covered Injury or Sickness.

13. **Dental Treatment:** The Coinsurance Percentage for treatment or care required as a result of a Covered Injury to a tooth that is natural, free of disease, and vital where the major portion of the tooth is present regardless of fillings or caps.

14. **Cosmetic or Reconstructive Surgery (Except Breast Reconstructive Surgery):** The Coinsurance Percentage for cosmetic or reconstructive surgery and complications of cosmetic procedures when services and treatment are:

    a. Incidental to or follows a Covered Injury or Sickness occurring while this coverage is in force; or

    b. Performed due to a congenital defect or birth anomaly of a Covered Person born while this coverage is in force, including but not limited to the necessary care and treatment needed for individuals born with a cleft lip and cleft palate, of a newborn child, foster child or adopted child.

15. **Breast Reconstructive Surgery:** The Coinsurance Percentage for a female Covered Person who undergoes a covered mastectomy surgery while such person's coverage under this Policy is in force. Benefits payable include:

    a. Reconstructive surgery of the breast on which the mastectomy has been performed;

    b. Surgery and reconstruction of the other breast for the purpose of obtaining a symmetrical appearance; and

    c. Prostheses and for treatment for physical complications related to the mastectomy.

16. **Mammography:** The Coinsurance Percentage for low-dose screening mammography as follows, not to exceed the Maximum Benefit Amount shown in the Schedule:

    a. One or more mammograms a year, as recommended by a Doctor, for any woman who is at risk for breast cancer. For purposes of this subdivision, a woman is at risk for breast cancer if any one or more of the following is true:

        i. The woman has a personal history of breast cancer;

        ii. The woman has a personal history of biopsy-proven benign breast disease;

        iii. The woman's mother, sister, or daughter has or has had breast cancer; or

        iv. The woman has not given birth prior to age 30;

    b. One baseline mammogram for any woman 35 through 39 years of age, inclusive;

    c. A mammogram every other year for any woman 40 through 49 years of age, inclusive, or more frequently upon recommendation of a Doctor; and

    d. A mammogram every year for any woman 50 years of age or older.

    e. diagnostic mammography at any age when prescribed by the woman's Doctor.

Insurance coverage for screening mammograms will not prejudice coverage for diagnostic mammograms as recommended by the woman's Doctor.

"Diagnostic mammography" means a problem-solving radiologic procedure of higher intensity than screening mammography provided to women who are suspected to have breast pathology. Patients are usually referred for analysis of palpable abnormalities or for further evaluation of mammographically detected abnormalities. All images are immediately reviewed by the Doctor interpreting the study, and additional views are obtained as needed. Physical exam of the breast by the interpreting Doctor to correlate the radiologic findings is often performed as part of the study.

These charges are not subject to the Deductible.

17. **Clinical Trials:** Charges for participation in Phase II, Phase III, and Phase IV-covered Clinical Trials who meet protocol requirements of the trials and provide informed consent. Only Medically Necessary costs associated with participation in a covered clinical trial, including those related health care services typically provided absent a clinical trial, the diagnosis and treatment of complications, and medically necessary monitoring will be covered and only to the extent that such costs have not been or are not funded by the national agencies, commercial manufacturers, distributors, or other research sponsors of participants in Clinical

Trials. This provision will not cover: (a) non-FDA approved drugs provided or made available to an insured who received the drug during a covered clinical trial after the clinical trial has been discontinued; (b) services that are not health care services; (c) services provided solely to satisfy data collection and analysis needs; (d) services related to investigational drugs and devices; and (e) services that are not provided for the direct clinical management of the patient. The Company can deny any claim where covered services under this provision and non-covered services are not separated.

18. **Temporomandibular:** The Coinsurance Percentage for procedures involving any bone or joint of the jaw, face, or head, so long as the procedure is Medically Necessary to treat a condition which prevents normal functioning of the particular bone or joint involved and the condition is caused by congenital deformity, disease, or traumatic injury. Authorized therapeutic procedures include splinting and the use of intraoral prosthetic applies to reposition the bones. However, this does not include coverage for orthodontic braces, crowns, dentures; treatment for periodontal disease, dental root form implants or root canals.

19. **Diabetic Benefit:** The Coinsurance Percentage for medical coverage for Medically Necessary equipment, supplies, and services for the treatment of Type I, Type II, and gestational diabetes, when prescribed by a Doctor.

Self-management training shall include coverage for one (1) per lifetime training program per insured for diabetes self-management training when Medically Necessary as determined by a Doctor and when provided by an appropriately licensed health care professional upon certification by the health care professional providing the training that the insured patient has successfully completed the training. In addition to the one (1) lifetime training program, additional diabetes self-management training may be provided in the event that a Doctor prescribes additional diabetes self-management training and it is Medically Necessary because of a significant change in the insured's symptoms or conditions. A licensed health care professional shall only provide diabetes self-management training within his or her scope of practice after having demonstrated expertise in diabetes care and treatment and after having completed an educational program required by his or her licensing board when that program is in compliance with the National Standards for Diabetes Self-Management Education Program as developed by the American Diabetes Association. Diabetes self-management training shall be provided only upon prescription by a Doctor.

Diabetes Self-Management Training means instruction in an inpatient or outpatient setting, including medical nutrition therapy, relating to diet, caloric intake and diabetes management but excluding programs which the primary purpose is weight reduction, when the instruction is provided in accordance with a program in compliance with the National Standards for Diabetes Self-Management Education Program developed by the American Diabetes Association.

20. **Ambulance:** Up to the Maximum Benefit amount shown in the Schedule for this benefit for local licensed ground ambulance service or air ambulance service within the 48 contiguous states to the nearest Hospital qualified to treat the covered Injury or Sickness. Such service must be Medically Necessary due to a sudden and unexpected Injury or Sickness that involves a life-threatening element.

21. **Routine Child Health Care:** The Coinsurance Percentage for 20 visits at the approximate age intervals of: birth; 2 weeks; 2 months, 4 months, 6 months, 9 months, 12 months, 15 months, and 18 months; 2 years, 3 years, 4 years, 5 years,

6 years, 8 years, 10 years, 12 years, 14 years, 16 years, and 18 years, that include a history, a physical examination, a development assessment, anticipatory guidance and appropriate immunizations and laboratory tests consistent with the Recommendations of Preventative Pediatric Health Care of the American Academy of Pediatrics from the moment of birth to age 18. These charges, with the exception of immunizations, are subject to the Deductible.

22. **Organ or Tissue Transplants:** The Coinsurance Percentage for an organ or tissue transplant, up to the Lifetime Maximum Amount shown in the Schedule for this benefit. This benefit shall include all expenses related to the transplant before the transplant is performed, for the procurement of the donor organ or tissue, including the Hospital expenses of the donor, and for follow-up care, including any complications while this coverage is in force.

Covered Expenses do not include organ or tissue transplants which:

a. Are animal-to-human transplants;

b. Use artificial or mechanical organs;

c. Are Experimental or Investigative; or

d. Are not generally accepted by the medical community as an effective treatment for a covered Injury or Sickness.

23. **Home Health Care:** Charges for home health care, up to the Maximum Benefit Amount and for the Maximum Benefit Period shown in the Schedule for this benefit, for the following:

a. Part-time or intermittent home nursing care by, or under the direction of, a graduate registered Nurse (RN);

b. Part-time or intermittent Home Health Aide services that consist only of care for the Covered Person and which are Medically Necessary, as part of the Home Health Care Plan. The services must be under the direction of a Nurse or social worker;

c. Physical, respiratory, occupational, or speech therapy performed by a licensed therapist for rehabilitative treatment;

d. Nutrition counseling provided by or under the direction of a registered dietician as part of the Home Health Care Plan; or

e. The evaluation of the need for and development of a plan by a Doctor, Nurse or social worker. Such services must be requested by the Doctor and approved by us. Review of Medical Necessity may be periodically required.

24. **Skilled Nursing Facility Confinement:** Daily charges for room and board while a Covered Person is confined as a registered bed patient in the facility. The Maximum Benefit Amount and Maximum Days for this benefit are shown in the Schedule. Such Confinement must: (i) start within 14 days after the end of a covered Hospital Confinement of at least 3 continuous days; and (ii) be ordered by a Doctor to convalesce from an Injury or Sickness that caused the prior Hospital Confinement.

25. **Hospice Care:** Hospice care and services incurred for a terminally ill Covered Person with a life expectancy of 6 months or less, up to the Maximum Benefit Amount shown in the Schedule for this benefit. Covered Expenses include charges incurred for care and services when provided by an agency licensed or

certified to provide hospice services, including the following:

a.  Part-time or intermittent home nursing care by, or under the direction of a Nurse;

b.  Physical, respiratory or speech therapy performed by a licensed therapist;

c.  Nutrition counseling provided by or under the direction of a registered dietitian; and

d.  Counseling by a licensed social worker, pastoral counselor for the Covered Person or a member of the Immediate Family, the primary care giver and individuals with significant personal ties to a Covered Person who is terminally ill.

Hospice services must be:

a.  Under active management through an agency licensed or certified to provide hospice services and which is responsible for coordinating all such services; and

b.  Provided only if the Doctor submits written certification to Us that the Covered Person is terminally ill with a life expectancy of 6 months or less. Review of Medically Necessity may be periodically required.

This benefit does not include the services of volunteers or persons who do not regularly charge for their services.

26. **AIDS:** The Coinsurance Percentage for the treatment of Acquired Immune Deficiency Syndrome (AIDS) or any complication or condition caused by, resulting from or related to AIDS or HIV, up to the Lifetime Maximum Amount shown in the Schedule for this benefit.

27. **Foreign Travel:** After satisfying the Deductible specific to this benefit, We will pay the Coinsurance Percentage for medical care while in a foreign country, up to the Lifetime Maximum Amount shown in the Schedule for this benefit. The Covered Person's primary residence must be in the United States and treatment rendered for an Injury or the sudden and unexpected onset of a Sickness requiring immediate medical attention and be provided within the first 90 days of the Covered Person's trip outside the United States. The Deductible for this benefit is shown in the Schedule.

28. **Knee Injury or Disorder:** The Coinsurance Percentage payable for the treatment of Knee Injury or disorder. This does not include charges incurred to diagnose or treat an Injury or disorder of the knee including surgery in excess of the Knee Injury or Disorder Maximum shown in the Schedule. The knee consists of the bones, muscles, cartilage, ligaments, membranes and menisci of the anterior aspect of the leg at the articulation of the femur and tibia.

29. **Gallbladder Surgery:** The Coinsurance Percentage for surgery for cholecystectomy and any type of surgical procedure to diagnose or treat a disorder of the gallbladder, including any condition related to or caused by a gallstone(s) in the bile duct. Surgery includes the pre-operative and post-operative visits, testing, the services of the surgeon, assistance surgeon, anesthesiologist, radiologist, pathologist, the Hospital or outpatient facility charges, and any other charges related to the surgery or complications therefrom. Expenses do not include charges incurred in excess of the Gallbladder Surgery Maximum shown in the Schedule.

30. **Loss or Impairment of Speech or Hearing:** The Coinsurance Percentage for the Medically Necessary diagnosis and treatment of loss or impairment of speech or hearing. Covered Expenses for such treatment will be paid as they would for any other Sickness. No benefits will be paid for hearing instruments or devices. Loss or impairment of speech or hearing includes those communicative disorders generally treated by a speech pathologist or audiologist licensed by the State Board of Examiners in Speech Pathology and Audiology that fall within the scope of his area of certification.

31. **Colorectal Cancer Exams and Lab Tests:** The Coinsurance Percentage for the following colorectal cancer examinations and laboratory tests: (1) an annual fecal ocular blood test utilizing the take-home multiple sample method, or an annual fecal immunochemical test in conjunction with a flexible sigmoidoscopy every five years; (2) a double-contrast barium enema every five years; (3) a colonoscopy every ten years; and (4) any additional medically recognized screening tests for colorectal cancer required by the Director of the Department of Health, subject to the guidelines for the management or subsequent need for follow-up colonoscopy.

These benefits will be covered for a Covered Person who is: (1) fifty years of age or older; (2) less than fifty years of age and a high risk for colorectal cancer according to the current American Cancer Society colorectal cancer screening guidelines; and (3) experiencing the following symptoms of colorectal cancer as determined by a Doctor: (a) bleeding from the rectum or blood in the stool; or (b) a change in bowel habits, such as diarrhea, constipation, or narrowing of the stool, that lasts more than five days.

32. **Medically Necessary Foods:** The Coinsurance Percentage for medical foods and low protein modified food products for the treatment of a Covered Person inflicted with phenylketonuria, galactosemia, organic acidemias, and disorders of amino acid metabolism if:
   a. The medical food or low protein modified food products are prescribed as Medically Necessary for the therapeutic treatment of phenylketonuria, galactosemia, organic acidemias, and disorders of amino acid metabolism;
   b. The products are administered under the direction of a Doctor;
   c. The cost of the medical food or low protein modified food products for an individual or a family with a dependent person or persons exceeds the income tax credit of two thousand four hundred dollars ($2,400) per year per person allowed under Arkansas law.

This includes coverage for amino acid modified preparations, low protein modified food products, and any other special dietary products and formulas prescribed under the direction of a Doctor for the therapeutic treatment of phenylketonuria, galactosemia, organic acidemias, and disorders of amino acid metabolism.

33. **Prostate Cancer Screening:** The Coinsurance Percentage for screening for the early detection of prostate cancer in men forty (40) years of age and older according to the National Comprehensive Cancer Network guidelines and performed by a qualified medical professional. If a medical practitioner recommends that an insured, undergo a prostate specific antigen blood test, coverage may not be denied on the ground that the insured has already had a digital rectal examination and the examination result was negative. These charges are not subject to the Deductible.

34. **Hearing Aids:** The Coinsurance Percentage for coverage for a hearing aid or hearing instrument sold by a professional licensed by the state to dispense a

hearing aid or hearing instrument, not to exceed one thousand four hundred dollars ($1,400) per beginning on the first day of coverage. These charges are not subject to the deductibles or any copayment requirements.

35. **In Vitro Fertilization:** The Coinsurance Percentage for in vitro fertilization services performed at a medical facility certified by the Department of Health, or a facility certified as conforming to the American College of Obstetricians and Gynecologists Guidelines for In Vitro Fertilization, or which meets the American Fertility Society standards.

36. **Hospital Newborn Coverage:** The Coinsurance Percentage for routine nursery care and pediatric charges for up to five (5) full days in a Hospital nursery or until discharge of the mother of the newborn from the Hospital following the birth of the child, whichever is the later; and any testing of a newborn child hereafter mandated by law.

## III.  ALLOCATION AND APPORTIONMENT OF BENEFITS

We reserve the right to allocate the Deductible to any Covered Expenses and to apportion the payment of benefits between You and any person designated by You. Such allocation and apportionment shall be conclusive and shall be binding upon You and all assignees.

## IV.  EXTENSION OF COVERAGE

If You or Your Covered Dependent are Totally Disabled and receiving benefits for a Hospital Confinement on the date that this Policy terminates or such dependents coverage under this Policy terminates, benefits will continue in accordance with the terms of this Policy for as long as that Confinement remains continuous and You or Your Covered Dependent are Totally Disabled by reason of such Injury or Sickness. However, in no event will coverage continue beyond the end of the 60 days following the date coverage ends or the Expiration Date of the Covered Person's coverage. Benefits payable after the Expiration Date or when a Covered Person's coverage ends are subject to a new Deductible and satisfaction of the Coinsurance Limit.

## LIMITATIONS AND EXCLUSIONS

We will not pay for loss or expense caused by or resulting from any of the following:

1. Expenses for the treatment of Preexisting Conditions, as defined in the Preexisting Conditions Limitation provision;

2. Expenses incurred prior to the Effective Date of a Covered Person's coverage or incurred after the Expiration Date, regardless of when the condition originated. except in accordance with the Extension of Benefits provision;

3. Expenses to treat complications resulting from treatment of conditions which are not covered under the Policy. This does not include Emergency Services as defined;

4. Experimental or Investigative services or treatment. "Experimental or Investigative" means services, supplies, devices, treatments, procedures, or drugs that have no been recognized as generally accepted medical treatments. Our determination of what constitutes Experimental or Investigative treatment will be based on, but not limited to, the approval of treatments from the American Medical Association, the U.S. Food and Drug Administration, and the Administrative Procedure Act. Experimental or Investigative includes treatments that have not been demonstrated through sufficient peer-reviewed medical literature to be safe and effective for the proposed use;

5. Expenses for purposes determined by Us to be educational, except when specifically

covered;

6. Amounts in excess of the Usual, Reasonable and Customary charges made for covered services or supplies;

7. Expenses You or Your Covered Dependent are not required to pay, or which would not have been billed, if no insurance existed;

8. Expenses to the extent that they are paid or payable under other valid or collectible group insurance or medical prepayment plan;

9. Charges that are eligible for payment by Medicare or any other government program except Medicaid;

10. Costs for care in government institutions unless You or Your Covered Dependent are obligated to pay for such care;

11. Expenses for the treatment of an occupational Injury or Sickness which are paid under any Workers' Compensation Act only to the extent such services or supplies are the liability of the employee, employer, or workers' compensation insurance carrier according to a final adjudication under any Workers' Compensation ;

12. Medical expenses which are payable under any automobile insurance policy without regard to fault (does not apply in any state where prohibited);

13. Charges incurred by a Covered Person while on active duty in the armed forces.  Upon written notice to Us of entry into such active duty, the unused premium will be returned to You on a pro rated basis;

14. Expenses resulting from a declared or undeclared war, or from voluntary participation in a riot or insurrection;

15. Expenses incurred while engaging in an illegal act or occupation or during the commission, or the attempted commission, of a felony or assault;

16. Expenses for the treatment of normal pregnancy or childbirth, except for Complications of Pregnancy;

17. Charges for a Covered Dependent  who is a newborn child not yet discharged from the Hospital except as specifically covered under the Policy, This does not apply to charges that are Medically Necessary to treat premature  birth, congenital Injury or Sickness, or Sickness or Injury sustained during or after birth;

18. Charges for voluntary termination of normal pregnancy, normal childbirth or elective cesarean section;

19. The cost of any drug, including birth control pills, supply, treatment or procedure that prevents conception or childbirth;

20. Expenses for the diagnosis and treatment of infertility, including but not limited to any attempt to induce fertilization by any method, artificial insemination or similar procedures, whether the Covered Person is a donor, recipient or surrogate;

21. Expenses for sterilization or reversal of sterilization;

22. Services, supplies or treatment related to sex transformation or sex dysfunction or inadequacies;

23. Costs for physical exams or other services not needed for medical treatment, except as specifically covered;

24. Expenses for prophylactic treatment, including surgery or diagnostic testing, except as specifically covered;

25. Expenses for the treatment of Mental Illness or Nervous Disorders, including, but not limited to, neurosis, psychoneurosis, psychopathy, psychosis, attention deficit disorder,

autism, hyperactivity, or mental or emotional disease or disorder of any kind, unless specifically covered;

26. The costs of treatment of alcoholism or alcohol abuse, chemical dependency, substance abuse or drug addiction, unless specifically covered;

27. Expenses incurred in the treatment of Injury or Sickness sustained by voluntary use of alcohol, illegal drugs or hallucinogenics;

28. The cost of programs, treatment, or procedures for tobacco use cessation;

29. Expenses resulting from suicide or attempted suicide or intentionally self-inflicted Injury, whether while sane or insane;

30. The cost of dental treatment or care or orthodontia or other treatment involving the teeth or supporting structures, except as specifically covered;

31. Expenses incurred in the treatment by any method for jaw joint problems including temporomandibular joint dysfunction (TMJ), TMJ pain syndromes, craniomandibular disorders, myofacial pain dysfunction or other conditions of the joint linking the jaw bone and skull and the complex of muscles, nerves and other tissues related to the joint, except as specifically covered;

32. Expenses of radial keratotomy or correction of refractive error, eye refractions, vision therapy, routine vision exams to asses the initial need for, or changes to prescription eyeglasses or contact lenses, the purchase, fitting or adjustment of eyeglasses or contact lenses, or treatment of cataracts;

33. The costs for routine hearing exams to assess the need for or change to hearing aids, or the purchase, fittings or adjustments of hearing aids except as specifically covered;

34. The costs of cosmetic or reconstructive procedures, services or supplies, except as specifically covered;

35. Charges for breast reduction or augmentation or complications arising from these procedures;

36. Outpatient Prescription or Legend Drugs, medications, vitamins and mineral or food supplements, including pre-natal vitamins, or any over-the-counter medicines, whether or not ordered by a Doctor;

37. The cost of any drug or other item used to treat hair loss;

38. Expenses incurred in the treatment of weak, strained, flat, unstable or unbalanced feet, metatarsalgia, bunions, spurs, or the removal of corns, calluses or toenails, unless specifically for the treatment of a metabolic or peripheral vascular disease or for the prompt repair of an Injury sustained while coverage is in force for the Covered Person;

39. Expenses incurred in the treatment of acne or varicose veins;

40. The costs of weight loss programs, diets, or treatment of obesity;

41. Transportation charges, except as specifically covered;

42. Expenses for rest or recuperation cures or care in an extended care facility, convalescent nursing home, a facility providing rehabilitative treatment, Skilled Nursing Facility, or home for the aged, whether or not part of a Hospital, unless specifically covered;

43. Costs of services or supplies for personal comfort or convenience, including homemaker services or supportive services focusing on activities of daily life that do not require the skills of qualified technical or professional personnel, including but not limited to bathing, dressing, feeding, routine skin care, bladder care and administration of oral medications or eye drops, except as specifically covered;

44. Costs of services or supplies furnished or provided by a member of Your Immediate Family;

45. Expenses for diagnosis or treatment of a sleeping disorder;

46. Expenses incurred in the treatment of Injury or Sickness resulting from participation in skydiving, scuba diving, hang or ultra light gliding, riding an all-terrain vehicle such as a dirt bike, snowmobile or go-cart, racing with a motorcycle, boat or any form of aircraft, any participation in sports for pay or profit, or participation in rodeo contests;

47. Expenses for the purchase of a noninvasive osteogenesis stimulator (bone stimulator);

48. The costs of services or supplies of a common household use, such as exercise cycles, air or water purifiers, air conditioners, allergenic mattresses, and blood pressure kits;

49. Expenses for surgery during the first 6 months after the Effective Date of Coverage for a Covered Person for a total or partial hysterectomy, unless it is Medically Necessary due to a diagnosis or carcinoma (subject to all other coverage provisions, including but not limited to, the Pre-Existing Conditions exclusion); tonsillectomy, adenoidectomy, repair of deviated nasal septum or any type of surgery involving the sinus, myringotomy, tympanotomy, herniorraphy, or cholecystectomies;

50. Knee Injury or Disorder: Expenses do not include charges incurred to diagnose or treat an Injury or disorder of the knee including surgery in excess of the Knee Injury or Disorder Maximum shown in the schedule;

51. Gallbladder Surgery: Expenses do not include charges incurred in excess of the Gallbladder Surgery Maximum shown in the Schedule;

52. Participating in Interscholastic Intercollegiate Organized Competitive Sports;

53. Medical care, treatment, services, or supplies received outside of the United States or its possessions;

## PRE-EXISTING CONDITIONS LIMITATION

We will not provide benefits for any loss caused by or resulting from, a Pre-Existing Condition.

**"Pre-Existing Conditions"** mean any medical condition or Sickness for which medical advice, care, diagnosis, treatment, consultation, or medication was recommended by or received from a Doctor within the 5 years immediately prior to a Covered Person's Effective Date of Coverage. This does not apply to congenital birth defects or anomalies of newborn infants, foster children and adopted children when you have paid the additional premium within 30 days of acquiring such dependent.

**"Consultation"** means evaluation, diagnosis or medical advice was given with or without the necessity of a personal examination or visit.

## CLAIM PROVISIONS

**Notice of Claim:** When a claim arises, the claimant should notify Us or Our authorized administrator or Our authorized agent of the Loss in writing. This written notice of claim must be given within 20 days after commencement of any Loss, or as soon as reasonably possible.

**Claim Forms:** After receiving notice of claim, We or Our authorized administrator will furnish the claimant with a claim form for filing proof of Loss. If this form is not received within 15 days after notice has been given, the claimant should submit written proof which covers the occurrence, the character, and the extent of the Loss for which claim is made.

**Proof of Loss:** The claimant must furnish Us or Our authorized administrator with written proof of Loss within 180 days of the Loss. Where this Policy provides for payments contingent upon a period of Confinement, these 180 days shall begin at the end of the period for which We are liable. If the claimant does not furnish proof within 180 days as required, benefits shall still be paid for that loss if: (1) It was not reasonably possible to give proof within those 180 days; and (2) proof is furnished as soon as reasonably possible and, except in the absence of legal capacity no later than 1 year after the end of those 180 days.

**Time of Payment of Claims:** We will make payment within 30 days upon receipt of due written proof of loss.

**Payment of Claims:** Payment will be made directly to You or the provider of the service, as directed by You in writing at the time of submitting proof of Loss. If the claimant are incapable of giving a valid receipt for payment and if no claim has been made by a duly-appointed legal representative, We shall have the option of making payment to either: (1) the Hospital or the person who actually incurred the loss for which payment is due; or (2) Your surviving relative. Such a payment shall discharge Us from all further liability to the extent of the payment made. If any payment payable to Your estate or to a beneficiary who is a minor or otherwise not competent to give a valid release, the Company may pay an amount not exceeding $3,000 to any relative by blood or connection by marriage of the Insured or beneficiary deemed to be equitably entitled. Such a payment shall discharge the Company for all further liability to the extent of the payment made.

**Appeal of Claim Denial:** If a claim is denied, You will receive written notice giving the reason for the denial. If You wish to appeal the denial of the claim, such appeal must be submitted to us in writing within 60 days from the date of notice. You must clearly state the reason You believe the claim decision is incorrect.

**Right of Reimbursement:** If a Covered Person receives a benefit payment from a third party by judgment, settlement, compromise, or otherwise for an Injury or Sickness and we have paid benefits for the same Injury or Sickness, we reserve the right to be reimbursed from the third party in an amount equal to the amount we paid to the Covered Person, the Covered Person's parents (if the Covered Person is a minor), or the Covered Person's legal representative.

You must agree to furnish any information and assistance, or provide any documents that we may reasonably require in order for us to exercise our right of recovery, regardless of whether or not the third party admits liability. Any payment we make by mistake for a work-related Injury must be reimbursed to us when the Covered Person receives payment for such Injury from another source.

It will be assumed that the Covered Person is in receipt of the benefit payment unless such person gives us proof that payment of benefits was denied.

## GENERAL PROVISIONS

**Amendment:** We may amend or change the Policy at any time by giving written notification to the Policyholder. Insurance provided by the Policy may be amended changed or canceled without the consent of any Covered Person.

**Assignment and Claims of Creditors:** Except as provided below, benefits are not assignable. Except as otherwise provided by law, benefit payments may be exempt from legal process for debts or liabilities of a Covered Person. You may direct us to pay benefits to the person or

institution on whose charges any claim is based.  Any such payment that We make will fully discharge Us to the extent of the payment.

**Changes in Benefits:**  Changes in the benefits of a Covered Person will apply only to Covered Expenses or losses incurred after the effective date of the change.

**Clerical Error:**  Clerical errors that We or Our authorized administrator make in Your Schedule of benefits, the issuance of a Policy, or in record keeping will not afford You benefits or validate insurance for which You have not applied and paid the appropriate premium and been approved by Us.  We have the right to offset or recover from You any overpayment of benefits made due to such errors.

**Conformity With Statutes:**  Any provision of this Policy that is in conflict with the statutes of the jurisdiction in which the Policyholder is located on such date is hereby amended to conform to the minimum requirements of such statutes.

**Contract/Changes:** The effective time for any dates used shall be 12:01 A.M. Standard Time at the address of the Policyholder.

**Entire Contract:** The entire contract consists of the Policy, Your application form and any other documents requested and accepted by Us.  No change in the Policy or Your coverage is valid unless approved by Our Executive Officer. Such approval must be signed by Our Executive Officer and attached to the Policy.  No broker, agent or producer can change or waive any provision of the entire contract or any of Our requirements.

**Grace Period:**  You have a 31-day Grace Period for the payment of each premium due after the first premium.  Your coverage will continue in force during the Grace Period unless You have given Us prior written notice of termination.  If such a premium is not paid by the end of the Grace Period, all such insurance will end as of the due date of such premiums, and no expenses incurred during the Grace Period will be considered for benefits.

**Incontestability:**  All statements You make will, in the absence of fraud, be deemed representations and not warranties.  No such statement will be used in defense of any claim or in a contest unless You have been given a copy.  Any misstatement or omission of information made on Your application form or on any other materials on which We relied to issue, change or increase coverage will be considered a misrepresentation and may be the basis for later rescission of coverage.  After coverage for a Covered Person has been in force for 3 years during the Covered Person's lifetime, We do not have the right to contest coverage, except for fraud or non-payment of premium.

**Legal Proceedings:** No proceedings to obtain benefits may be brought against Us until 60 days after We have received proper written proof of Loss and any other documentation necessary to establish the benefits due.  No proceedings may be brought more than 3 years after proof is required to be filed.

**Physical Exam and Autopsy:** We may require, at Our expense, medical examinations of any person for whom claim is made when and as often as it may reasonably require during the pendency of a claim.  We may also make an autopsy, if not forbidden by law.

**Premium Payments:**  All premiums are paid to Us, or, if We direct, to Our authorized administrator. The first premium is due on the Effective Date.  Subsequent premiums are due monthly, in advance, on the anniversary day and month of the Effective Date. Except as otherwise provided herein, all such insurance will terminate on the premium due date, except as provided in the Grace Period provision, if premiums are not paid when due.

**Premium Changes:**  We will determine the premium for each Covered Person.  We have the right to change premium rates on any premium due date by giving You 45 days advance written notice of such change.  The premium rates will not be changed more often than once every 12 months after the first Policy anniversary date.

**Pronouns:**  Whenever a personal pronoun in the masculine gender is used, it will be deemed to include the feminine also unless the context clearly indicates to the contrary.

**Rescission:**  A misrepresentation or omission in the application form or other documents provided to Us may be the basis for later rescission of all coverage of all persons covered under the Policy.  Rescission voids all coverage as of the Effective Date and means that no benefits will be paid to any person for any claim submitted, whether or not such claim relates to the condition about which information was misrepresented or omitted.  We will refund to You premiums paid after deduction for any claims We paid.

**Workers' Compensation:**  This Policy is not a substitute for Workers' Compensation insurance and does not affect any requirement for Workers' Compensation coverage.

**Misstatement of Age:**  If a Covered Person's age has been misstated, premiums will be subject to an equitable adjustment.  If the amount of the benefit depends upon age, then the benefit will be that which would have been payable, based upon the person's correct age.

**Reinstatement:** If any renewal premium is not paid within the time granted the Covered Person for payment, a subsequent acceptance of premium by the Company without requiring in connection therewith an application for reinstatement, shall reinstate the policy; provided, however, that if the Company requires an application for reinstatement and issues a conditional receipt for the premium tendered, the policy will be reinstated upon approval of such application by the Company or, lacking such approval, upon the forty-fifth day following the date of such conditional receipt unless the Company has previously notified the Covered Person in writing of its disapproval of such application. The reinstated policy shall cover only loss resulting from such accidental injury as may be sustained after the date of reinstatement and loss due to such sickness as may begin more than ten (10) days after such date. In all other respects, the Covered Person and the Company shall have the same rights thereunder as they had under the policy immediately before the due date of the defaulted premium, subject to any provisions endorsed hereon or attached hereto in connection with the reinstatement.

**Refund of unearned premiums upon death of insured.** Upon the death of the Covered Person, the proceeds payable to the insured or his or her estate under the Policy shall include premiums paid for any period beyond the end of the Policy month in which the death occurred. The unearned premiums shall be paid in lump sum on a date no later than thirty (30) days after the proof of the Covered Person's death has been furnished to the Company.



**Starr Indemnity & Liability Company** FILED

Dallas, Texas
Administrative Office: 399 Park Avenue, 8th Floor, New York, NY 10022

FEB ~ 8 2013

AH-60001-AR-OOC INDIVIDUAL SHORT TERM MEDICAL EXPENSE COVERAGE

DONNA HART
CLERK

OUTLINE OF COVERAGE

Read Your Policy Carefully.  This outline of coverage provides a very brief description of the important features of your policy.  This is not the insurance contract and only the actual policy provisions will control.  The policy itself sets forth in detail the rights and obligations of both you and your insurance company.  It is, therefore, important that you READ YOUR POLICY CAREFULLY!

Individual short term medical expense coverage is designed to provide limited duration for hospital, medical, and surgical expenses incurred as a result of a covered accident or sickness.  Coverage is provided for daily hospital room and board, miscellaneous hospital services, surgical services, anesthesia services, in-hospital medical services, and out-of-hospital care, subject to any deductibles, copayment provisions, or other limitations that may be set forth in the policy.  Basic hospital or basic medical insurance coverage is not provided.

This Policy limits Covered Expenses to Usual, Reasonable and Customary charges which may be less than the billed charges.  This means that if a provider charges more than the Usual, Reasonable and Customary charge, you may be responsible for the difference. This plan pays an overall lifetime maximum of $2,000,000 for each insured.  However certain benefits have individual limitations as shown below and in the Policy, which are included in the overall lifetime maximum.

The following is a brief description of the Usual, Reasonable and Customary charges for Covered Expenses covered under the Policy.  You are responsible for your deductible and any coinsurance percentages up to an out of pocket maximum of $5,000. See your Policy for a complete list of all benefits.
- Hospital Charges —medical care and treatment.
- Ambulatory Surgical Center charges.
- Intensive Care — up to three times the average semi-private room rate.
- Physicians Services for diagnosis, treatment and surgery.
- Anesthesia, oxygen, casts, splints, crutches, braces, surgical dressings, artificial limbs or eyes, rental of necessary medical supplies.
- Blood or blood derivatives and their administration.
- X-ray exams, laboratory tests and analyses.
- X-ray and radioactive isotope therapy.
- Ambulance Services — $250 per trip
- Acquired Immune Deficiency Syndrome (AIDS), up to $10,000.
- Home Health Care
- Hospice
- Mammography/Pap Smear screens and exams
- Breast Reconstructive Surgery

Usual, Reasonable and Customary means:
1. With respect to fees or charges, fees for medical services or supplies which are:
   a.  Usually charged by the provider for the service or supply given; and
   b.  The average charged for the service or supply in the locality in which the service or supply is received, whichever is less; or
2. With respect to treatment or medical services, treatment which is reasonable in relationship to the service or supply given and the severity of the condition.

## PRE-ADMISSION CERTIFICATION NOTICE
This plan requires a Pre-Admission Certification by a Professional Review Organization prior to in-patient Hospitalization or surgery.  A Covered Person must call the Professional Review Organization:
1. For elective or non-emergency Hospitalization or surgery, at least 10-days prior to the date of proposed

Hospitalization;

2. Within 48-hours from the time the person is in stable condition following an emergency admission, or as soon as reasonably possible if the person's medical condition prevents or delays such notification; or

3. Within 48-hours of delivery (96 hours for cesarean section) for complicated childbirth or as soon as reasonably possible.

Non-compliance with the Pre-Admission Certification procedure will result in a reduction in benefits of 50%, unless the Covered Person is incapacitated and unable to contact Us In such cases, the Covered Person must contact Us as soon as possible.

**Exclusions and Limitations.**

We will not pay for loss or expense caused by or resulting from any of the following:

1. Expenses for the treatment of Preexisting Conditions, as defined in the Preexisting Conditions Limitation provision;

2. Expenses incurred prior to the Effective Date of a Covered Person's coverage or incurred after the Expiration Date, regardless of when the condition originated. except in accordance with the Extension of Benefits provision;

3. Expenses to treat complications resulting from treatment of conditions which are not covered under the Policy. This does not include Emergency Services as defined;

4. Experimental or Investigative services or treatment. "Experimental or Investigative" means services, supplies, devices, treatments, procedures, or drugs that have no been recognized as generally accepted medical treatments. Our determination of what constitutes Experimental or Investigative treatment will be based on, but not limited to, the approval of treatments from the American Medical Association, the U.S. Food and Drug Administration, and the Administrative Procedure Act. Experimental or Investigative includes treatments that have not been demonstrated through sufficient peer-reviewed medical literature to be safe and effective for the proposed use;

5. Expenses for purposes determined by Us to be educational, except when specifically covered;

6. Amounts in excess of the Usual, Reasonable and Customary charges made for covered services or supplies;

7. Expenses You or Your Covered Dependent are not required to pay, or which would not have been billed, if no insurance existed;

8. Expenses to the extent that they are paid or payable under other valid or collectible group insurance or medical prepayment plan;

9. Charges that are eligible for payment by Medicare or any other government program except Medicaid;

10. Costs for care in government institutions unless You or Your Covered Dependent are obligated to pay for such care;

11. Expenses for the treatment of an occupational Injury or Sickness which are paid under any Workers' Compensation Act only to the extent such services or supplies are the liability of the employee, employer, or workers' compensation insurance carrier according to a final adjudication under any Workers' Compensation ;

12. Medical expenses which are payable under any automobile insurance policy without regard to fault (does not apply in any state where prohibited);

13. Charges incurred by a Covered Person while on active duty in the armed forces. Upon written notice to Us of entry into such active duty, the unused premium will be returned to You on a pro rated basis;

14. Expenses resulting from a declared or undeclared war, or from voluntary participation in a riot or insurrection;

15. Expenses incurred while engaging in an illegal act or occupation or during the commission, or the attempted commission, of a felony or assault;

16. Expenses for the treatment of normal pregnancy or childbirth, except for Complications of Pregnancy;

17. Charges for a Covered Dependent who is a newborn child not yet discharged from the Hospital except as specifically covered under the Policy, This does not apply to charges that are Medically Necessary to treat premature birth, congenital Injury or Sickness, or Sickness or Injury sustained during or after birth;

18. Charges for voluntary termination of normal pregnancy, normal childbirth or elective cesarean section;

19. The cost of any drug, including birth control pills, supply, treatment or procedure that prevents conception or childbirth;

20. Expenses for the diagnosis and treatment of infertility, including but not limited to any attempt to induce fertilization by any method, artificial insemination or similar procedures, whether the Covered Person is a donor, recipient or surrogate;

21. Expenses for sterilization or reversal of sterilization;

22. Services, supplies or treatment related to sex transformation or sex dysfunction or inadequacies;

23. Costs for physical exams or other services not needed for medical treatment, except as specifically covered;

24. Expenses for prophylactic treatment, including surgery or diagnostic testing, except as specifically covered;

25. Expenses for the treatment of Mental Illness or Nervous Disorders, including, but not limited to, neurosis, psychoneurosis, psychopathy, psychosis, attention deficit disorder, autism, hyperactivity, or mental or emotional disease or disorder of any kind, unless specifically covered;

26. The costs of treatment of alcoholism or alcohol abuse, chemical dependency, substance abuse or drug addiction, unless specifically covered;

27. Expenses incurred in the treatment of Injury or Sickness sustained by voluntary use of alcohol, illegal drugs or hallucinogenics;

28. The cost of programs, treatment, or procedures for tobacco use cessation;

29. Expenses resulting from suicide or attempted suicide or intentionally self-inflicted Injury, whether while sane or insane;

30. The cost of dental treatment or care or orthodontia or other treatment involving the teeth or supporting structures, except as specifically covered;

31. Expenses incurred in the treatment by any method for jaw joint problems including temporomandibular joint dysfunction (TMJ), TMJ pain syndromes, craniomandibular disorders, myofacial pain dysfunction or other conditions of the joint linking the jaw bone and skull and the complex of muscles, nerves and other tissues related to the joint, except as specifically covered;

32. Expenses of radial keratotomy or correction of refractive error, eye refractions, vision therapy, routine vision exams to asses the initial need for, or changes to prescription eyeglasses or contact lenses, the purchase, fitting or adjustment of eyeglasses or contact lenses, or treatment of cataracts;

33. The costs for routine hearing exams to assess the need for or change to hearing aids, or the purchase, fittings or adjustments of hearing aids except as specifically covered;

34. The costs of cosmetic or reconstructive procedures, services or supplies, except as specifically covered;

35. Charges for breast reduction or augmentation or complications arising from these procedures;

36. Outpatient Prescription or Legend Drugs, medications, vitamins and mineral or food supplements, including pre-natal vitamins, or any over-the-counter medicines, whether or not ordered by a Doctor;

37. The cost of any drug or other item used to treat hair loss;

38. Expenses incurred in the treatment of weak, strained, flat, unstable or unbalanced feet, metatarsalgia, bunions, spurs, or the removal of corns, calluses or toenails, unless specifically for the treatment of a metabolic or peripheral vascular disease or for the prompt repair of an Injury sustained while coverage is in force for the Covered Person;

39. Expenses incurred in the treatment of acne or varicose veins;

40. The costs of weight loss programs, diets, or treatment of obesity;

41. Transportation charges, except as specifically covered;

42. Expenses for rest or recuperation cures or care in an extended care facility, convalescent nursing home, a facility providing rehabilitative treatment, Skilled Nursing Facility, or home for the aged, whether or not part of a Hospital, unless specifically covered;

43. Costs of services or supplies for personal comfort or convenience, including homemaker services or supportive services focusing on activities of daily life that do not require the skills of qualified technical or professional personnel, including but not limited to bathing, dressing, feeding, routine skin care, bladder care and administration of oral medications or eye drops, except as specifically covered;

44. Costs of services or supplies furnished or provided by a member of Your Immediate Family;

45. Expenses for diagnosis or treatment of a sleeping disorder;

46. Expenses incurred in the treatment of Injury or Sickness resulting from participation in skydiving, scuba diving, hang or ultra light gliding, riding an all-terrain vehicle such as a dirt bike, snowmobile or go-cart, racing with a motorcycle, boat or any form of aircraft, any participation in sports for pay or profit, or participation in rodeo contests;

47. Expenses for the purchase of a noninvasive osteogenesis stimulator (bone stimulator);

48. The costs of services or supplies of a common household use, such as exercise cycles, air or water purifiers, air conditioners, allergenic mattresses, and blood pressure kits;

49. Expenses for surgery during the first 6 months after the Effective Date of Coverage for a Covered Person for a total or partial hysterectomy, unless it is Medically Necessary due to a diagnosis or carcinoma (subject to all other coverage provisions, including but not limited to, the Pre-Existing Conditions exclusion); tonsillectomy, adenoidectomy, repair of deviated nasal septum or any type of surgery involving the sinus, myringotomy, tympanotomy, herniorraphy, or cholecystectomies;

50. Knee Injury or Disorder: Expenses do not include charges incurred to diagnose or treat an Injury or disorder of the knee including surgery in excess of the Knee Injury or Disorder Maximum shown in the schedule;

51. Gallbladder Surgery: Expenses do not include charges incurred in excess of the Gallbladder Surgery Maximum shown in the Schedule;

52. Participating in Interscholastic Intercollegiate Organized Competitive Sports;

53. Medical care, treatment, services, or supplies received outside of the United States or its possessions;

## PRE-EXISTING CONDITIONS LIMITATION

We will not provide benefits for any loss caused by or resulting from, a Pre-Existing Condition.

**"Pre-Existing Conditions"** mean any medical condition or Sickness for which medical advice, care, diagnosis, treatment, consultation, or medication was recommended by or received from a Doctor within the 5 years immediately prior to a Covered Person's Effective Date of Coverage.  This does not apply to congenital birth defects or anomalies of newborn infants, foster children and adopted children when you have paid the additional premium within 30 days of acquiring such dependent.

**"Consultation"** means evaluation, diagnosis or medical advice was given with or without the necessity of a personal examination or visit.

Renewability
THIS IS NON-RENEWABLE SHORT-TERM INSURANCE AND MAY NOT BE RENEWED AT THE END OF THE COVERAGE PERIOD.

Premium
The first premium is due on the Effective Date.  Subsequent premiums are due monthly, in advance, on the anniversary date and month of the Effective Date. Except as otherwise provided herein, all such insurance will terminate on the premium due date, except as provided in the Grace Period provision, if premiums are not paid when due.

The Company will determine the premium for each Covered Person. We have the right to change premium rates on any premium due date by giving you 45-days advance written notice of such change. The premium rates may also be changed at any time the terms of the Policy are changed.

18/08/2012  11:37   8707632646          TRACY DUNCAN DPM          PAGE  03

**Kennett Orthopaedic Center**
Edmund C. Landry, M.D., Ashish Anand, M.D., Taniya Carpenter, F.N.P.c
402 Recovery Road
Kennett, MO 63857

## PATIENT HISTORY

Name ___William Masterson___                Today's Date: _2-8-11_

SS- _____   Date Of Birth: _____   Pharmacy: _Railrack's_

Chief Complaint   _Blytheville, AR_

Why are you seeing the doctor today? _Back injury_

Current problem is the result of a fall: Check all that apply)

FILED

MAR 1 3 2013

DONNA HART
CLERK


EXHIBIT
C

## Patient History                                                          2

Name  _William Masterson_                  Today's Date _2-8-11_

SS#· ▮▮▮▮▮▮▮▮                              Date of Birth: ▮▮▮▮▮▮▮▮



Jonesboro Prosthetic & Orthotic Laboratory
820 PROFESSIONAL ACRES
JONESBORO AR 72401
8709326436

FAXED MAR 28 2011

PRESCRIPTION AND CERTIFICATE
OF MEDICAL NECESSITY FOR ORTHOTICS AND PROSTHETICS
DETAILED WRITTEN PRESCRIPTION

PATIENT : WILLIAM MASTERSON
          116 CHESTERFIELD
          BLYTHEVILLE AR 72315
          (870) 763-5041
          INSURANCE ID#: YKXC78995
          DATE OF BIRTH:

Start Date of Order : 03-23-11

Length of Need : 3    6   **9**   12   (months)   (Lifetime)

Diagnosis : 721.42 LUMBAR SPONDYLOLYSIS WITH MYELOPATHY

Orthosis/Prosthesis is necessary to:  Provide stability to the lumbar sacral
   region to promote healing and decrease inflammation

I certify that this orthosis/prosthesis is medically necessary
and is a part of my treatment plan for this patient.

X _____        Sign Date: X 3-29-11
          EDMUND C LANDRY MD
          402 RECOVERY RD
          KENNETT MO 63857
          Phone : (573) 888-2831
          Fax   : (573) 888-5408

## ATTENDING PHYSICIAN STATEMENT

RETURN TO:
Claims Department
Unum Life
One Riverfront Plaza

IMPORTANT: Additional information on the Attending Physician's Statement should only be requested by the physician or an authorized member of Unum's staff.

Name of patient: Masterson, William

Date of birth: 10-3-53

(a) When did symptoms first appear or accident happen?  3-17-10

(b) Date patient ceased work because of disability?

(c) Has patient ever had same or similar condition?

(d) Is condition due to injury or sickness arising out of patient's employment?  ☑ Yes  ☐ No  ☐ Unknown

(e) Names and addresses of other treating physicians: Dr Rebecca Tuck · 1118 Windover ; Jonesboro AR 72401

(a) Diagnosis (including complications) and ICD-9 Code: 721.3  722.10  719.45

(b) If pregnancy, est. date of delivery: N/A

(c) Subjective symptoms: back pain

(Limitations, Therapy, etc.): He has failed all conservative measures and is Not a Surgical candidate.

| Name (ATTENDING PHYSICIAN'S First) | Degree | Fax No. | Telephone No. |
|---|---|---|---|
| Edmund Landry MD | MD | ( 573 ) 888-5408 | ( 573 ) 888-2831 |
| Street Address  402 Recovery Rd  Kennet  M063857 | City or Town  Kennett | State or Province  MO | Zip Code  63857 |
| Signature | | | Date  2-6-12 |

C.L.'S (CLINIC) SEAL

Dr Landry,

My condition is unchanged. I have been terminated from my employment and am filing for my long term disability through my employer.

I need your help. Please fill out the physicians statement as much as you can. I greatly appreciate all you can do to help me out in this matter.

If you will have someone call me upon completion, I will come pick this up.

If you need to contact me

William Masterson
116 Chesterfield
Blytheville, AR  72315

Phone—

@ yahoo.com

Thank you so much for all that you do.

Respectfully

William Masterson

2-2-2012

P.S.  I am unable to work b/c of my Back injury.

# KENNETT ORTHOPAEDIC CENTER

EDMUND C. LANDRY, M.D.                                   **402 RECOVERY ROAD**
TANIYA CARPENTER, RN, FNPc, MSN                 KENNETT, MO  63857
Office: (573) 888-2831                                        Fax: (573) 888-5408

05/09/11

Erin Morris
Claims Adjuster
Hartford Insurance Company
Via fax 860-392-3083

RE:  William Masterson

Dear Ms. Morris,

I understand that you want to know whether or not my patient Mr. William Masterson has reached maximum medical improvement.

Mr. Masterson reaches maximal medical improvement at the time of his last visit with me April 25, 2011.

If any further information is needed please feel free to contact me.

Sincerely,

*Edmund C. Landry*

Edmund C. Landry, M.D.

# KENNETT ORTHOPAEDIC CENTER

EDMUND C. LANDRY, M.D.                              **402 RECOVERY ROAD**
TANIYA CARPENTER, RN, FNPc, MSN                **KENNETT, MO  63857**
Office: (573) 888-2831                                    Fax: (573) 888-5408

### General Message

**Patient:**    William Masterson                    **Date:**   05/04/11
**Patient ID #:**  ▮▮▮▮▮▮                           **Time:**

**Message:**    Erin Morris from the Hartford insurance company needs a MMI on Mr
                Masterson, since he is discharged from you care and cannot retuen to work. Her
                direct fax number is 1-860-392-3083 CW

**Reply:**

# KENNETT ORTHOPAEDIC CENTER

EDMUND C. LANDRY, M.D.                              402 RECOVERY ROAD
TANIYA CARPENTER, RN, FNPc, MSN                     KENNETT, MO  63857
Office: (573) 888-2831                                 Fax: (573) 888-5408

## Employee Injury Report

Date: 04/25/11

Patient: Masterson,William
Employer: Cobb Funeral Home

Date of Injury: March 17, 2010

---

Unable to return to work. His condition is stable, unimproving and precludes his current work activity level. He has failed all conservative treatment measures. I agree with Dr. Tuck that he should not return to his present job.

---

Diagnosis/Impression: Lumbar disc protrusion
Treatment:  Recommend pain management
Medication:
Physical Therapy: ( ) Scheduled   ( ) Continued
Xray:
Other:
Referred to: Dr. Hall
Recheck Appointment: None

Discharge Date: April 25, 2011

*Edmund C. Landry MD*

---

Edmund C. Landry, M.D.

# KENNETT ORTHOPAEDIC CENTER

EDMUND C. LANDRY, M.D.
TANIYA CARPENTER, RN, FNPc, MSN
Office: (573) 888-2831

**402 RECOVERY ROAD**
**KENNETT, MO  63857**
Fax: (573) 888-5408

### Follow Up Examination

**PATIENT:** William E Masterson   **AGE:** ███████   **EXAM DATE:** 04/25/11

**REFERRING PHYSICIAN:**   Mittal, Shalender,
**OTHER PHYSICIANS:**       Hall, Jeffrey,

**CHIEF COMPLAINT:**   Back injury at work March 17, 2010

**Report Date:** September 28, 2012 **Patient:** Masterson, William E ███████ **DOS:** 04/25/11

**X-rays:**                none

## MEDICAL DECISION MAKING:

Hall, Jeffrey - SPECIALTY: Pain Management
Mittal, Shalender - SPECIALTY: Internal Medicine

# KENNETT ORTHOPAEDIC CENTER

EDMUND C. LANDRY, M.D.                          402 RECOVERY ROAD
TANIYA CARPENTER, RN, FNPc, MSN                 KENNETT, MO  63857
Office: (573) 888-2831                          Fax: (573) 888-5408

## Employee Injury Report

Date: 04/04/11

**Patient:** Masterson, William
**Employer:** Cobb Funeral Home

**Date of Injury:** March 17, 2010

**Discharge Date:**

_Edmund C. Landry MD_

Edmund C. Landry, M.D.

# KENNETT ORTHOPAEDIC CENTER

EDMUND C. LANDRY, M.D.                                      402 RECOVERY ROAD
TANIYA CARPENTER, RN, FNPc, MSN                      KENNETT, MO  63857
Office: (573) 888-2831                                             Fax: (573) 888-5408

### Follow Up Examination

**PATIENT:** William E Masterson   **AGE:** ███████   **EXAM DATE:** 04/04/11

**REFERRING PHYSICIAN:**    Self, ,
**OTHER PHYSICIANS:**        Hall, Jeffrey,
                            Mittal, Shalender,

**CHIEF COMPLAINT:**  Back injury at work March 17, 2010

**Report Date:** September 28, 2012 **Patient:** Masterson, William E DOB: ▮▮▮▮ **DOS:** 04/04/11

*[signature]*

Edmund C. Landry, M.D.

Hall, Jeffrey - SPECIALTY: Pain Management
Mittal, Shalender - SPECIALTY: Internal Medicine

# KENNETT ORTHOPAEDIC CENTER

EDMUND C. LANDRY, M.D.
TANIYA CARPENTER, RN, FNPc, MSN
Office: (573) 888-2831

402 RECOVERY ROAD
KENNETT, MO 63857
Fax: (573) 888-5408

### Follow Up Examination

**PATIENT:** William E Masterson   **AGE:** ▇▇▇▇▇▇   **EXAM DATE:** 03/01/11

**REFERRING PHYSICIAN:**    Self, ,
**OTHER PHYSICIANS:**       Mittal, Shalender,

**CHIEF COMPLAINT:**  Back injury at work March 17, 2010

Report Date: September 28, 2012 Patient: Masterson, William E DOB: ███████ DOS: 03/01/11

Edmund C. Landry, M.D.

Mittal, Shalender - SPECIALTY:  Internal Medicine

# KENNETT ORTHOPAEDIC CENTER

EDMUND C. LANDRY, M.D.                                402 RECOVERY ROAD
TANIYA CARPENTER, RN, FNPc, MSN                       KENNETT, MO  63857
Office: (573) 888-2831                                     Fax: (573) 888-5408

### CONSULT/REFERRAL REQUEST

**PATIENT NAME:**           William E Masterson

**DATE:**                   02/09/11

**CONSULT/REFERRAL TO:**    Dr. Hall

**DIAGNOSIS:**              Chronic lumbar pain/spondylosis

**NOTES:**                  Worker's Compensation

**APPOINTMENT:**

_Edmund C. Landry MD_
_____
Edmund C. Landry, M.D.

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Approved w/c Danny

Patient needs to go to Dr. Hall's office and fill out paperwork. Once he has the paper work filled out they will give him an appointment time and date. they will also call us and give us the information for out records. CW

# KENNETT ORTHOPAEDIC CENTER

EDMUND C. LANDRY, M.D.
TANIYA CARPENTER, RN, FNPc, MSN
Office: (573) 888-2831

402 RECOVERY ROAD
KENNETT, MO  63857
Fax: (573) 888-5408

## Orthotics Request

**Patient Name: William Masterson**

Date: 02/09/11

Diagnosis: Lumbar spondylosis
Prescription: Warm and form lumbar orthosis

_(signature)_

_____
Edmund C. Landry, M.D.

I spoke with Kathy from jpo because we received approval she said she is waiting for approval from w/o themselves and patient has appt on 3-23-11 in Blytheville and patient has been notified.  jw

# KENNETT ORTHOPAEDIC CENTER

EDMUND C. LANDRY, M.D.
TANIYA CARPENTER, RN, FNPc, MSN
Office: (573) 888-2831

**402 RECOVERY ROAD**
**KENNETT, MO  63857**
Fax: (573) 888-5408

## Employee Injury Report

Date: 02/08/11

Patient: Masterson,William
Employer: Cobb Funeral Home

Date of Injury: March 17, 2010

Edmund C. Landry, M.D.

# KENNETT ORTHOPAEDIC CENTER

EDMUND C. LANDRY, M.D.                                    402 RECOVERY ROAD
TANIYA CARPENTER, RN, FNPc, MSN                          KENNETT, MO  63857
Office: (573) 888-2831                                     Fax: (573) 888-5408

## Initial Examination

PATIENT: Masterson, William E    AGE: ██████    EXAM DATE: 02/08/11

CHIEF COMPLAINT: Back injury at work March 17, 2010

REFERRING PHYSICIAN:    Self, ,
OTHER PHYSICIANS:        Mittal, Shalender,

10/08/2012  11:37    8707632646              TRACY  DUNCAN  DPM                    PAGE   23

**Report Date: September 28, 2012 Patient: Masterson, William E DOB:** ████ **DOS: 02/08/11**

Page 2

10/08/2012  11:37    8707632646                TRACY  DUNCAN  DPM                    PAGE   24

Report Date: September 28, 2012 Patient: Masterson, William E DOB: ▮▮▮▮▮ DOS: 02/08/11

*Edmund C Cambry MD*

Page 3

Report Date: September 28, 2012 Patient: Masterson, William E DOB: ███████ DOS: 02/08/11

Edmund C. Landry, M.D.

### Procedure X-Ray Studies

PATIENT:  William E Masterson   AGE: ███████   EXAM DATE:  02/08/11

*Edmund C. Landry*

Edmund C. Landry, M.D.

Mittal, Shalender - SPECIALTY:  Internal Medicine



# Masterson, William E

56 Y old Male, DOB: 10/03/1953
116 Chesterfield, Blytheville, AR-72315
Home: 870-763-5041
Guarantor: Masterson, William E   Insurance: Mercy
Health Plans Payer ID: 2746

---

06/02/2010                                   Progress Note:  Shalender Mittal, MD

**Current Medications**
Zocor (simvastatin) 40 mg 1 tab qd w/supper

**Past Medical History**
Hyperlipidemia 2000
H/O Nephrolithiasis 2004
LBP sec to DDD 2010

**Allergies**
codeine: stomach upset: Side Effects

**Reason for Appointment**
1. Lipid, CMP

**History of Present Illness**
Presents with:



---



Sign off status: Completed



CBP, LLC
AUG 1 3 2012
RECEIVED

Adult Medicine Clinic
519 North 6th Street

Patient: Masterson, William E    DOB: ████    Progress Note: Shalender Mittal, MD    06/02/2010

**FILED**

**IN THE CIRCUIT COURT FOR THE CHICKASAWBA DISTRICT** MAR 1 3 2013
**MISSISSIPPI COUNTY, ARKANSAS**
**GENERAL CIVIL DIVISION**

DONNA HART
CLERK

**WILLIAM MASTERSON**                                                    **PLAINTIFF**

**VS.**                          **NO. CV 2013-25 (JF)**

**STARR INDEMNITY & LIABILITY COMPANY**                      **DEFENDANT**

<u>**DEFENDANT'S RESPONSES TO PLAINTIFF'S**</u>
<u>**REQUESTS FOR ADMISSIONS**</u>

Defendant Starr Indemnity & Liability Company ("Defendant"), by and through its undersigned counsel, submits the following Objections and responses to Plaintiff William Masterson's (the "Plaintiff's") Requests for Admissions:

<u>**DEFINITIONS**</u>

In Defendant's Responses to these Requests for Admission, the use of the following terms or phrases shall include the following definitions:

1.      "Objection" or "Objects" means that Defendant Objects to the specific discovery request in addition and supplemental to those set forth in the General Objections below.

2.      "Privileged" means that the discovery request seeks information and/or documents which are subject to an attorney/client privilege, work product doctrine or any other applicable privilege and are not discoverable.

3.      "Without waiving" means that the answer given by Defendant is subject to, limited by, and without waiver of the Objections that are made to the specific discovery requests.

<u>**GENERAL OBJECTIONS**</u>

Defendant generally Objects to the requests for admission propounded by Plaintiff for the following reasons:

1.      By identifying and making information available in response to Plaintiff's Requests for Admission, Defendant does not waive and does not intend to waive any Objections which it may have about Plaintiff's use of this information and expressly reserves (1) all questions about the competency, privilege, relevance, materiality, authenticity and admissibility of all information produced and the contents thereof; (2) the right to Object to Plaintiff's use of any produced information and/or document, in whole or in part, or to the subject matter covered thereby in any later stage or proceeding in this litigation, on any or all grounds set forth herein; and (3) the right to Object on any and all proper grounds, at any time, to the discovery

procedures involving or relating to the subject matter of the information and/or documents hereby made available.

2.     Defendant generally Objects to Plaintiff's requests for admission on the grounds and to the extent that they are not limited in terms of relevant time frame and seek to impose obligations and burdens beyond those permitted by the Arkansas Rules of Civil Procedure.

3.     Defendant generally Objects to Plaintiff's requests for admission on the grounds and to the extent that they seek any information, the disclosure of which would violate rights of privacy and other judicially recognized protections and privileges, or result in disclosure of confidential trade secrets or proprietary information, materials prepared in anticipation of litigation, or confidential settlement discussions or conduct.

4.     Privileged information responsive to any discovery request is not being provided. Plaintiff does not waive, and intend to preserve and are preserving, the attorney/client privilege, the work product doctrine and every other privilege or doctrine with respect to any and all information and/or documents protected by same.

5.     These responses and Objections are based on information now known.  Defendant has not yet completed its investigation of the facts pertaining to this action and, therefore, reserves their right to amend, modify, or supplement the Objections, answers or responses stated herein.

Without waiver of, limited by, and subject to these Objections, Defendant has endeavored to respond to Plaintiff's discovery requests.  These responses are based upon information known or believed by Defendant at the time of answering.  Defendant will supplement these answers to the extent required under the Arkansas Rules of Civil Procedure.

## RESPONSES TO REQUEST FOR ADMISSIONS

### REQUEST FOR ADMISSION NO. 1:

Each statement set forth in the Complaint is true.

**RESPONSE:**

Denied – see Defendant's Answer for each individual response to Plaintiff's averments in the Complaint.

### REQUEST FOR ADMISSION NO. 2:

That each of the Exhibits attached to the Complaint is a true and accurate copy of the document it purports to be.

**RESPONSE:**

45352v.1

Denied.

## REQUEST FOR ADMISSION NO. 3:

The Defendant has no proof that there is any casual relationship between the throat cancer condition, for which claim is made in this case, and any condition referenced in question number 5 of the application for insurance.

**RESPONSE:**

Defendant Objects to this Request for Admission on the grounds that it calls for a medical opinion. Subject to and without waiving this Objection, Defendant responds: Admitted.

## REQUEST FOR ADMISSION NO. 4:

The Defendant has no proof that there is any causal relationship between William Masterson's throat cancer condition which is the subject of Plaintiff's Complaint and any condition for which Dr. Landry provided treatment to William Masterson in 2011.

**RESPONSE:**

Defendant Objects to this Request for Admission on the grounds that it calls for a medical opinion. Subject to and without waiving this Objection, Defendant responds: Admitted.

## REQUEST FOR ADMISSION NO. 5:

There is no factual basis to support the rescission of the policy as to William Masterson.

**RESPONSE:**

Denied – Plaintiff and Tracy Duncan answered question no. 5 on the application for insurance incorrectly, and the incorrect statement was material to the acceptance of the risk.

## REQUEST FOR ADMISSION NO. 6:

There is no factual basis to support the rescission of the policy as to Tracy Duncan.

**RESPONSE:**

Denied – Plaintiff and Tracy Duncan answered question no. 5 on the application for insurance incorrectly, and the incorrect statement was material to the acceptance of the risk.

**REQUEST FOR ADMISSION NO. 7**:

There is no legal basis to support the rescission of the policy as to Tracy Duncan.

**RESPONSE:**

Defendant Objects to this Request for Admission on the grounds that it requests information subject to the attorney-client privilege and seeks a legal opinion. Subject to and without waiving this Objection, Defendant responds: Denied – Plaintiff and Tracy Duncan answered question no. 5 on the application for insurance incorrectly, and the incorrect statement was material to the acceptance of the risk.

**REQUEST FOR ADMISSION NO. 8**:

The Defendant was aware of the provisions of Arkansas Code Annotated § 23-79-107 at the time it issued the policy in favor of William Masterson.

**RESPONSE:**

Defendant Objects to this Request for Admission on the grounds that it calls for a legal opinion. Subject to and without waiving this Objection, Defendant responds: Admitted.

**REQUEST FOR ADMISSION NO. 9**:

The Defendant was aware of the provisions of Arkansas Code Annotated § 23-79-107 at the time it issued the policy in favor of Tracy Duncan.

**RESPONSE:**

Defendant Objects to this Request for Admission on the grounds that it calls for a legal opinion. Subject to and without waiving this Objection, Defendant responds: Admitted.

**REQUEST FOR ADMISSION NO. 10**:

The Defendant was aware of the provisions of Arkansas Code Annotated § 23-79-107 on January 4, 2012.

**RESPONSE:**

Defendant Objects to this Request for Admission on the grounds that it calls for a legal opinion. Subject to and without waiving this Objection, Defendant responds: Admitted.

Respectfully submitted,

**FRIDAY, ELDREDGE & CLARK, LLP**
400 West Capitol Avenue, Suite 2000
Little Rock, AR  72201-3522
Telephone:   501-370-1564
Facsimile:   501-244-5380
Email:        wilson@fridayfirm.com

Attorneys for Defendant

By: _____
        DAVID D. WILSON, #90112


## CERTIFICATE OF SERVICE

I, David D. Wilson, certify that a copy of the foregoing pleading has been mailed, postage prepaid, to:

Robert L. Coleman, Esq.
Reid, Burge, Prevallet & Coleman
417 North Broadway Street
P.O. Box 107
Blytheville, AR  72316-0107

on this _____ 13 day of March, 2013.

_____
DAVID D. WILSON